IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEPHEN JONES,                                         )
                                                       )
                    Plaintiff,                         )
                                                       )
vs.                                                    )
                                                       )
MAYOR FRANCIS G. SLAY,                                 )
In his official capacity as Mayor and member of        )
The Board of Police Commissioners of the               )
St. Louis Metropolitan Police Department,              )
                                                       )
and                                                    )
                                                       )
BETTYE BATTLE-TURNER,                                  )
In her official capacity as a member of the            )
Board of Police Commissioners of the St. Louis         )
Metropolitan Police Department,                        )
                                                       )
and                                                    )
                                                       )
COL. RICHARD GRAY,                                     )
In his official capacity as a member of the            )          Case No.
Board of Police Commissioners of the St. Louis         )
Metropolitan Police Department,                        )
                                                       )          JURY TRIAL DEMANDED
and                                                    )
                                                       )
CHIEF JEROME D. LEE,                                   )
In his official capacity as a member of the            )
Board of Police Commissioners of the St. Louis         )
Metropolitan Police Department,                        )
                                                       )
and                                                    )
                                                       )
COL. THOMAS IRWIN,                                     )
In his official capacity as a member of the            )
Board of Police Commissioners of the St. Louis         )
Metropolitan Police Department,                        )
                                                       )
and                                                    )
                                                       )
                                                       )

1

VINCENT CARR,                                          )
in his official capacity as an officer of the          )
St. Louis Metropolitan Police Department               )
and individually,                                      )
                                                       )
and                                                    )
                                                       )
SHELL SHARP,                                            )
in his official capacity as an officer of the          )
St. Louis Metropolitan Police Department               )
and individually,                                      )
                                                       )
            Defendants.                                )

## COMPLAINT

**COMES NOW** Plaintiff Stephen Jones and for his cause of action against Defendants, jointly and severally, states as follows:

## PARTIES

1.     Plaintiff Stephen Jones is a resident and citizen of the City of St. Louis, State of Missouri, and he brings this action pursuant to 42 USC § 1983 et. seq.

2.     Defendant Francis Slay is a resident and citizen of the State of Missouri. At all relevant times herein Defendant Slay was acting in his official capacity as Mayor and as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

3.     Defendant Jerome D. Lee is a resident and citizen of the State of Missouri. At all relevant times herein Defendant Lee was acting in his official capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

4.     Defendant Bettye Battle-Turner is a resident and citizen of the State of Missouri. At all relevant times herein Defendant Turner was acting in her official

capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

5.      Defendant Col. Richard Gray is a resident and citizen of the State of Missouri. At all relevant times herein Defendant Gray was acting in his official capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

6.      Defendant Thomas Irwin is a resident and citizen of the State of Missouri. At all relevant times herein Defendant Irwin was acting in his official capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

7.      At all relevant times Defendants Slay, Lee, Turner, Gray and Irwin (referred to collectively herein after as "the Board"), or their predecessors in interest, acting in their official capacities as members of the Board of Police Commissioners, controlled all relevant activities, policies, rules, customs and training of the officers of the St. Louis Metropolitan Police Department. At all times relevant hereto the St. Louis Metropolitan Police Department, under the control of the Board of Police Commissioners, acted through its agents and employees Defendants Sharp and Carr and other unknown members of the St. Louis Metropolitan Police Department.

8.      Defendant Vincent Carr is a Missouri resident and at all relevant times was an officer with or agent of the St. Louis Metropolitan Police Department.

9.      Defendant Shell Sharp is a Missouri resident and at all relevant times was an officer with or agent of the St. Louis Metropolitan Police Department.

## JURISDICTION

10.     Plaintiff brings this action for damages arising from the violation of his civil rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, which provide for this Court's jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343. Pursuant to Title 28 U.S.C. §§2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

11.     Plaintiff hereby requests supplemental jurisdiction of his state law claims pursuant to 28 U.S.C. §1367.

## ALLEGATIONS COMMON TO ALL COUNTS

12.     This is a civil action seeking damages against defendants Vincent Carr and Shell Sharp in their official and individual capacities, and the members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department acting in their official capacities. Plaintiff seeks damages for the Defendants' actions, under color of state law, which deprived Stephen Jones of rights secured to him under the Constitution of the United States of America and the laws of the United States, including the right not to be deprived of his liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

13.     Plaintiff Stephen Jones' civil rights were violated by Defendants, as found by this Court in ruling that Plaintiff had spent twelve years, eight months and nine days in numerous Federal holding facilities and prisons for a crime he did not commit. Plaintiff has now been freed and has been declared innocent by this Honorable Court. The Court issued its Certificate of Innocence pursuant to 28 U.S.C. §2513 on May 12, 2011, finding that "it is hereby certified that movant Stephen Jones is actually innocent of the charge of

4

possession of cocaine base with intent to distribute[.]" Plaintiff's innocence of the crime alleged has therefore been judicially decreed and established, including for purposes of the doctrines of issue preclusion, res judicata and collateral estoppel in this case.

14. Petitioner was imprisoned based on the false testimony of a convicted felon, St. Louis narcotics detective Vincent Carr, and Detective Shell Sharp, who left the department under charges. Each of the acts of Defendants Carr and Sharp, as well as the acts of other police officers, agents and employees of the Metropolitan St. Louis Police Department, including officers of the Department whose identity is currently unknown to Plaintiff, were made under color and pretense of the statutes of the State of Missouri and the regulations, practices, customs, policies and usages of the Metropolitan St. Louis Police Department.

## FACTS OF WRONGFUL ARREST, CONVICTION AND IMPRISONMENT

15. On October 29, 1997 officers of the St. Louis Metropolitan Police Department, lead by St. Louis narcotics detectives Vincent Carr and Shell Sharp, went to an apartment located at 2802 Missouri Ave. in the City of St. Louis, pursuant to a search warrant obtained by Carr and Sharp. The detectives had with them Sherrod Greenlaw, the actual target of the search warrant, who was in handcuffs.

16. Detective Carr's affidavit formed the basis for the search warrant that resulted in Plaintiff's arrest. On information and belief, Carr and Sharp had a long history of fraudulently concocting affidavits in support of search warrants. In this case Carr, as he and Sharp have done on many other occasions, alleged as the basis for probably cause that a confidential informant had provided information that had proven reliable and resulted in three prior arrests. The confidential informant allegedly stated he had been

inside the Jones' apartment within 18 hours of the execution of the affidavit and had observed a "large amount of cocaine base" inside the residence being sold by one Sherrod Greenlaw. Sherrod Greenlaw was the sole subject of the search warrant, and was the individual allegedly in possession of the cocaine base that formed the basis for the warrant. According to the affidavit, the officers had also previously seen Greenlaw in front of the building using his cell phone, but had never seen Plaintiff at the residence or anywhere else prior to the execution of the search warrant.

17. Detective Carr falsely testified that - after knocking and identifying himself, waiting for Plaintiff's sister to look through the curtain of the large glass pane on the front door, showing his identification and indicating that he had a search warrant - Ms. Jones finally opened the front door and, as Detective Carr entered the apartment, Stephen Jones was allegedly standing still 6 feet away with a large freezer bag containing $15,000.00 worth of crack cocaine in his right hand. Detectives Sharp and Carr falsely testified that Stephen Jones then ran down the hall away from the officers and "threw down" the bag of crack cocaine in the kitchen.

18. On the date of Stephen Jones' arrest, his father Samuel Jones had $5,200.00 hidden under the insulation/lining of a winter boot in the back of his closet. During the search of the Jones apartment Carr found and, without reporting it, took $5,200.00 from the closet of Mr. Jones' father, Samuel Jones. The theft was reported to the police, the media and Mr. Jones' attorney.

19. The false testimony implicating Plaintiff allowed Det. Carr to shift the investigation away from the confidential informant and Sherrod Greenlaw and allowed Det. Carr to use the prosecution of Stephen Jones to prevent any complaints as to his theft

of Samuel Jones' $5,200.00 from his closet. This is essentially the same scenario Carr pled guilty to in the United States District Court for the Eastern District of Missouri in *United States v. Vincent Carr, et al.*, Case No. 4:08CR00703CAS. Just as in the case which led to his conviction for corruption, Detective Carr seized money from the scene which was never disclosed in the Police Report or at trial. In both cases Carr wrongfully accused a third party in order to deflect any investigation from his theft.

20.     Without the manufactured testimony provided by Carr and Sharp there was no evidence of Stephen Jones's guilt of the crime charged. Without this violation of due process Stephen Jones would not have been charged or convicted.

21.     Detective Sharp at trial explicitly disavowed that the case against Stephen Jones had been his investigation, and testified that he was merely "assisting" Carr and that it was "Detective Carr's investigation." Sharp also disavowed any responsibility for the facts included in the police report prepared by Carr.

22.     At the scene of the search and Plaintiff's arrest, unknown officers told Mr. Jones, his father, sister Kiihandra Jones, and her boyfriend Curtiz Pargo that they had found the cocaine while searching in a bedroom. Plaintiff was not a resident of the premises and the cocaine did not belong to him. Photographs were taken of the cocaine in the bedroom in accordance with department policy. Because the photographs contradicted their story, Detectives Carr and Sharp asserted at trial that these photographs were "somehow lost."

23.     On February 27, 1998, based on the false testimony and corrupt practices of Defendants, Stephen Jones was convicted by a jury of one count of possession with intent to distribute 79.49 grams of cocaine base. Pursuant to sentencing guidelines,

7

Plaintiff was sentenced to 240 months (20 years) in prison, a punishment that the Court stated at the time of sentencing was "a draconian sentence, considering the facts of this case."

24.     During Plaintiff Stephen Jones' incarceration, The FBI and United States Attorney's Office began investigating Detectives Vincent Carr and Detective Shell Sharp for the same illegal activities that resulted in Mr. Jones' wrongful conviction and imprisonment. In February of 2009 this Federal investigation led to Detective Vincent Carr pleading guilty to and being sentenced to prison on five felony charges in the United States District Court for the Eastern District of Missouri, for activities almost identical to Det. Carr's actions in framing and wrongfully convicting Plaintiff Stephen Jones. As set forth in the underlying indictment in the action styled United States v. Vincent Carr, et al., Case No. 4:08CR00703CAS, Carr stole money and drugs from a drug dealer, and then did not prosecute the dealer and in exchange kept some of the seized funds. In addition, Carr admitted that he and another officer planted evidence in order to frame an innocent person for the crime, lied in the police report and on evidence forms, lied to FBI agents about their actions and destroyed notes taken during the investigation.

25.     Due to the foregoing corrupt activities, Detective Carr pled guilty to wire fraud, wire fraud conspiracy, two counts of lying to Special Agents of the Federal Bureau of Investigation and one count of obstruction of justice. The investigation also lead to Detective Sharp ultimately leaving the St. Louis Metropolitan Police Department "under charges" in June of 2009 for fraudulently concocting affidavits in support of search warrants.

26.     Based on the conviction of Vincent Carr for these corruption charges, Petitioner requested permission from the Eighth Circuit to file a successive habeas corpus seeking relief in his case. The United States acquiesced in Plaintiff's request and the Court of Appeals entered an order authorizing Stephen Jones to proceed with his Motion to Vacate, Set Aside or Correct Sentence.

27.     After reviewing the evidence presented at trial in support of Plaintiff's original conviction, along with the new evidence regarding Vincent Carr's habitually corrupt practices, the Federal Government joined Plaintiff's Motion to Vacate. In doing so, the Government admitted that **there was no credible evidence that Plaintiff committed the crime of which he was convicted, and for which he spent 12 years and 9 months in prison**:

> **[T]he movant's position from the outset has been that the crack cocaine was neither his nor in his possession.** The Government's case against movant was based on the testimony of Vincent Carr who, armed with a search warrant, entered the residence and claimed to have observed the movant to drop a freezer bag containing the illegal drugs as the movant fled towards the kitchen. While other police officers were in the vicinity, they were outside the residence and **there is no credible independent evidence corroborating Carr's testimony. Movant's contention is that Vincent Carr lied about the movant's possession of the drugs just as he (Vincent Carr) lied concerning the 2008 drug raid which resulted in Carr's conviction. Whether true or untrue, it is a contention that the Government is unable to refute.**
>
> ...
>
> [B]ecause of the subsequent convictions related to his official duties by the police officer on whose testimony movant's conviction rests, the Government has lost confidence in the probity of movant's conviction. As observed by the United States Supreme Court in *Berger v. United States,* 295 U.S. 78, 88 (1935), **it is as much a prosecutor's duty to prevent a wrongful conviction as it is to bring about a just one.**
>
> ...
>
> **The movant's conviction was based on Vincent Carr's testimony that he saw the movant drop the freezer bag containing the crack cocaine. The Government can no longer vouch for that testimony nor corroborate that testimony by independent credible evidence.** Consequently, the Government

would not seek a retrial of the movant. Under the unique circumstances presented by this case, then, the Government joins the movant's request for the vacation of the judgment entered in *United States v. Stephen Jones*, EDMO No. 4: 98 CR12 CEJ, and an order that the movant be discharged. *United States' Motion and Response to Motion to Vacate, p. 3*

28.     The Government also admitted that Detective Sharp's testimony was not reliable or credible, stating "While there was another officer inside the residence who might corroborate Carr's testimony, **the Government is similarly unable to vouch for that officer's credibility.**"

29.     As reported by the St. Louis Post-Dispatch, Det. Sharp retired from the St. Louis Metropolitan Police Department "under charges" in June of 2009 after widespread allegations (substantiated by the Office of the Circuit Attorney and the St. Louis Metropolitan Police Department) that Sharp was fraudulently concocting affidavits in support of search warrants. *Confidential Informers Spur Inquiry*, August 19, 2009, http://www.stltoday.com/news/ article_ abad9fa4-50ff-597e-8040-231644313552.html.

30.     During Plaintiff's incarceration, Plaintiff repeatedly sought relief through post-conviction filings setting forth both his innocence and the perjury of officers Carr and Sharp. Plaintiff also repeatedly wrote letters from prison to the Federal District Court, for the Eastern District of Missouri, the FBI, and the United States Attorney's Office. On February 22, 2010 Stephen Jones filed his Application for Motion to File a Successive Writ of Habeas Corpus with the Eighth Circuit Court of Appeals based on newly discovered evidence. On August 3, 2010 the Writ was granted by the Eighth Circuit, transferring the case back to this Court for consideration of Plaintiff's writ.

31.     On September 16, 2010 Plaintiff filed his Motion To Vacate, Set Aside, or Correct Sentence in this Court pursuant to 28 U.S.C. Section 2255. On November 10,

2010 The United States government filed its Motion and Response to Movant's 2255 Motion, joining in Stephen Jones's allegations and legal position as set forth in his successive Writ of Habeas Corpus and Motion to Vacate.

32.     On November 10, 2010, this Honorable Court entered its Memorandum and Order vacating Stephen Jones' conviction and ordering that the United States Bureau of Prisons immediately release Stephen Jones from custody upon receipt of the Court' Order.

33.     Plaintiff subsequently sought a Certificate of Innocence from this Honorable Court pursuant to 28 U.S.C. §2513. The Court issued its Certificate of Innocence on May 12, 2011, finding that Plaintiff was actually innocent of the crime for which was imprisoned for 12 years and 8 months.

34.     From the beginning, and throughout his trial and incarceration, Stephen Jones has continuously asserted that the cocaine base found at his parent's apartment did not belong to him and was never in his possession. Prior to any public knowledge of Vincent Carr's corruption, Stephen Jones informed his attorney of Carr's theft of his father's money, and repeatedly stated to various persons, including the FBI and the news media, that Carr was corrupt and had lied in his testimony. As found by this Honorable Court, Plaintiff Stephen Jones spent almost 13 years in prison for a crime he did not commit.

### ALLEGATIONS COMMON TO ALL COUNTS REGARDING PLAINTIFF'S DAMAGES

35.     As a result of Plaintiff's wrongful conviction, Plaintiff was imprisoned in various federal correctional facilities from February 27, 1998 to November 11, 2010, a period of **12 years, 8 months, and 15 days**.

11

36.     As a result of the illegal and wrongful acts of Detectives Carr and Sharp, Stephen Jones was originally arrested and incarcerated for three days before being able to post bond. He was taken into custody again immediately after the verdict on February 27, 1998 as a result of the perjured testimony of Detectives Carr and Sharp. He was thereafter transferred to the St. Genevieve County Jail in southern Missouri where he was locked up from February 1998 until July of 1998. In July of 1998 he was transferred from the St Genevieve County Jail to St. Clair County Jail in Southern Illinois. From St Clair County Jail he was transferred to The Federal Correctional Institution of rural Greenville, Illinois where he was incarcerated until January of 2004.

37.     In January of 2004 Stephen Jones was transferred to The United States Medical Center for Federal Prisons (MCFP) in Springfield, Missouri. MCFP houses some of the country's most dangerous felons due to their suffering from mental illnesses of all descriptions. Stephen Jones was incarcerated at MCFP from January of 2004 through August of 2006 in spite of never having suffered from any illness be it mental or otherwise of any kind. In August of 2006 he was transferred to the Federal Correctional Institution of Sandstone Minnesota and thereafter to FCI Yazoo Mississippi. He was not released until November 11, 2010. At the time of each transfer from facility to facility Mr Jones was shackled and treated like an animal, unable for hours on end to so much as scratch his own nose.

38.     Throughout his incarceration Stephen Jones was confined in cells that ranged in size from 6 x 8 to 8 x 12 feet. The 6 x 8 cells generally housed two prisoners whereas the 8 x 12 cells housed up to four prisoners utilizing bunk beds. Each Federal Correction Facility warehoused thousands of inmates.

39.     Throughout his imprisonment Stephen Jones was repeatedly subjected to assaults, and Mr. Jones saw and was made aware of numerous assaults, stabbings, homosexual rapes and sodomies.

40.     During his incarceration in the Federal Correctional Institution Greenville, 320 additional inmates were transferred into the facility as a result of the closing of FCI Washington, D.C. For reasons unknown, these inmates were more violent than Stephen Jones had previously been subjected to, and had a culture whereby homosexual rape and assaults were more acceptable.

41.     Every second of every day of the 12 years and eight months Stephen Jones was wrongfully imprisoned, he was deprived of the love, daily physical and social contact and companionship of his mother, Doris Jones and his father Samuel Jones, who raised Stephen and his brothers and sisters. On May 31, 2003 Doris Jones, Plaintiff's mother, passed away. In spite of numerous requests Plaintiff was denied the opportunity to attend and participate in his mother's funeral.

42.     Most damaging to Plaintiff was being deprived of his children. As set forth in the Pre-Sentence Investigation Report "Mr. Jones and his family members enjoy a very close relationship". When Stephen Jones was taken away from his children, his daughter Tarina was 4 years old and his daughter Sharina was 5 years old.

43.     Throughout each day of Stephen Jones' imprisonment he lived with the knowledge that, but for the corrupt practices of the St. Louis Metropolitan Police Department, he would have been free to live his God-given life with his family and friends, and not incarcerated with dangerous and violent criminals, including his exposure to numerous mentally ill criminals during his time at the MCFP.

13

## COUNT I - § 1983 CLAIM FOR VIOLATION OF CIVIL RIGHTS
## BY VINCENT CARR AND SHELL SHARP IN THEIR
## OFFICIAL AND PERSONAL CAPACITIES

COMES NOW Plaintiff Stephen Jones, and for his cause of action against Defendants Vincent Carr and Shell Sharp, in their official and personal capacities, and states as follows:

44.     Plaintiff incorporates paragraphs 1 through 43, supra, the same as if fully set forth herein.

45.     Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

46.     On information and belief, Defendants Carr and Sharp, under color of state law, violated Plaintiff's civil rights and deprived him of rights, privileges, and/or immunities secured by the Constitution and laws of the United States, as set forth and, *inter alia*, by the following acts:

a)     Preparing a false affidavit in support of a search warrant for the 2802 Missouri Ave. premises, when Defendants lacked probable cause to search the premises;

b)     Planting evidence at the scene and suppressing relevant evidence during the search of the premises and thereafter during the time period leading up to Plaintiff's trial, including the suppression and destruction of photographs and the failure to obtain fingerprints on the bag of crack cocaine;

14

c) Providing false information in the police report and in other documents and reports prepared pursuant to their duties with the Department;

d) Providing false testimony to federal prosecutors and testifying falsely against Plaintiff at trial, in order to wrongfully, illegally and unconstitutionally deprive Plaintiff of his freedom;

e) Framing Plaintiff for a crime he did not commit and obtaining his conviction in order to cover up the theft of $5,200 belonging to Plaintiff's father; and

f) Allowing Plaintiff to languish in prison for almost 13 years, despite Defendants' knowledge that Plaintiff did not commit the crime alleged.

47. As a direct result of Defendants Carr and Sharp's unlawful and unconstitutional acts, performed under color of state law, Plaintiff was damaged, by being deprived of his right to be free from the unreasonable seizure of his person and by being incarcerated without due process of law in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and other applicable laws.

48. The acts of Vincent Carr and Shell Sharp as set forth above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants Carr and Sharp in order to punish and to deter them and others similarly situated from like conduct in the future.

49. Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants Carr and Sharp for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants Carr and Sharp and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, his attorney's fees, and for such other and further relief as the Court deems proper under the circumstances.

**COUNT II – PLAINTIFF'S CAUSE OF ACTION
AGAINST THE BOARD OF POLICE COMMISSIONERS
OF THE CITY OF ST. LOUIS FOR VIOLATION OF CIVIL RIGHTS
THROUGH ITS POLICY, CUSTOM AND PRACTICE OF RELIANCE
ON FALSE AFFIDAVITS AND FALSE TESTIMONY
COGNIZABLE UNDER 42 U.S.C. § 1983**

COMES NOW Plaintiff Stephen Jones, and for his cause of action against The Board of Police Commissioners of the City of St. Louis, in their official and personal capacities, states as follows:

50. Plaintiff incorporates paragraphs 1 through 49, supra, the same as if fully set forth herein.

51 Defendants The Board of Police Commissioners are vested with the authority to establish policies or customs, practices and usages of the Metropolitan St. Louis Police Department. There exists within the Metropolitan St. Louis Police Department policies or customs, practices and usages that are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Plaintiff as have been set forth herein.

52. Namely, prior to the search of the 2802 Missouri Ave. premises and the arrest, prosecution, and imprisonment of Plaintiff, and continuing thereafter, customs,

practices and usages existed within the St. Louis Metropolitan Police Department of officers employing false testimony to obtain search and arrest warrants, in police reports, and by testifying falsely at trial, in order to ensure the conviction of suspects regardless of their guilt or innocence, and particularly with regard to those purportedly suspected of being involved in the sale and distribution of illegal narcotics.

53.     This pervasive practice of reliance on false testimony resulted in the widespread deprivation of due process rights afforded to Plaintiff and others under the Fifth and Fourteenth Amendments.

54.     The use of false testimony constituted misconduct so pervasive among the officers of the Department as to constitute a custom or usage with the force of law.

55.     Evidence of these widespread customs, practices and usages within the Department available to Defendants The Board of Police Commissioners of the City of St. Louis included a large number of nearly identical, pro forma affidavits being created by officers in support of warrants.

56.     Furthermore, on information and belief, the members of the Board of Police Commissioners of the City of St. Louis and other officials of the Department with policy-making authority were aware of the ongoing misconduct and corruption of the officers of the Department in their use of false testimony in affidavits and at trial, theft of property and in framing individuals for crimes they did not commit.

57.     In the alternative, the misconduct was so widespread that the ignorance of the Board and any other policy-making officials of the Department constituted willfully turning a 'blind eye' to the ongoing deprivation of citizens' civil rights, such that

Defendants are charged with knowledge of said customs, practices and usages within the Department.

58.     As a direct result of Defendants' unlawful and unconstitutional acts, performed under color of state law, Plaintiff was damaged, including by being deprived of his right to be free from the unreasonable seizure of his person and by being incarcerated without due process of law in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America, 42 U.S.C. § 1983, and other applicable laws.

59.     The acts of The Board of Police Commissioners of the City of St. Louis as set forth above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants in order to punish and to deter them and others similarly situated from like conduct in the future.

60     Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants The Board of Police Commissioners of the City of St. Louis for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants The Board of Police Commissioners of the City of St. Louis and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, his attorney's fees, and for such other and further relief as the Court deems proper under the circumstances.

**COUNT III – PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO TRAIN, SUPERVISE, CONTROL, INSTRUCT OR DISCIPLINE AGAINST DEFENDANTS THE BOARD OF POLICE COMMISSIONERS COGNIZABLE UNDER 42 U.S.C. § 1983**

COMES NOW Plaintiff Stephen Jones, and for his cause of action against The Board of Police Commissioners of the City of St. Louis, in their official and personal capacities, states as follows:

61.    Plaintiff incorporates paragraphs 1 through 60, supra, the same as if fully set forth herein.

62.    The members of the Board of Police Commissioners have exclusive management and control of the policies and practices of the Metropolitan St. Louis Police Department, including with regard to (1) the method and manner of preparing affidavits in support of search and arrest warrants; (2) executing warrants; (3) preserving and not destroying or suppressing evidence obtained at the scene of arrests and searches; (4) properly preparing and providing accurate and truthful information in police reports; (5) providing accurate and truthful testimony in affidavits and when testifying at trial; (6) preventing illegal and corrupt practices by officers; (7) not framing suspects for crimes they did not commit; and (8) in otherwise insuring that members of the Metropolitan St. Louis Police Department conduct themselves in a lawful manner in undertaking and performing their duties. Defendants The Board of Police Commissioners are vested with the authority to establish policies or customs, practices and usages of the Metropolitan St. Louis Police Department through training, supervision, discipline and otherwise controlling the officers of the Metropolitan St. Louis Police Department.

63.    Defendant the Board of Police Commissioners violated the Plaintiff's rights by custom and practice of failing to train, instruct, supervise, control and discipline

19

the police officers of the Metropolitan St. Louis Police Department in (1) the method and manner of preparing affidavits in support of search and arrest warrants; (2) executing warrants; (3) preserving and not destroying or suppressing evidence obtained at the scene of arrests and searches; (4) properly preparing and providing accurate and truthful information in police reports; (5) providing accurate and truthful testimony in affidavits and when testifying at trial; (6) preventing illegal and corrupt practices by officers; (7) not framing suspects for crimes they did not commit; and (8) in otherwise ensuring that members of the Metropolitan St. Louis Police Department conduct themselves in a lawful manner in undertaking and performing their duties. Said customs, practices and usages caused the deprivation of plaintiff's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, other laws of the United States, and the laws of the State of Missouri.

64.     The St. Louis Metropolitan Police Department's policies or customs, practices and usages of failing to train, instruct, supervise, control and discipline the police officers of the Department are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Plaintiff as have been set forth herein.

65.     The failure to train, discipline or supervise defendant Officers and others at the Metropolitan St. Louis Police Department has resulted in members of the Metropolitan St. Louis Police Department violating the civil rights as a matter of custom in violation of clearly established law.   Defendants' failure to train, supervise or discipline its officers is not objectively reasonable.

66     As a result of the Board of Police Commissioners' failure to train, discipline or supervise the officers of the department, they deprived Plaintiff of his right to be free and not to be wrongfully, illegally and unconstitutionally imprisoned in violation of the Fourth, Fifth and Fourteenth Amendments and other provisions of the Constitution of the United States, remediable under 42 U.S.C. § 1983.

67.    The acts of Defendants as described above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of the plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants The Board of Police Commissioners of the City of St. Louis, in their official capacities as members of the Board of Police Commissioners.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants The Board of Police Commissioners of the City of St. Louis in their official capacities, for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

### COUNT IV – PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS PROSECUTION UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

COMES NOW Plaintiff Stephen Jones, and for his cause of action against all defendants, states as follows:

68.    Plaintiff incorporates paragraphs 1 through 67, supra, the same as if fully set forth herein.

69.    Defendants Carr and Sharp testified falsely regarding Plaintiff's supposedly improper and criminal behavior in the underlying proceedings without

probable cause in law or fact to do so. Defendants lacked such facts and circumstances as to warrant a prudent person having the honest belief that the actions and the means taken in the criminal prosecution against Plaintiff were just, legal, and proper.

70.     The facts known to Defendants (including pertinent facts that could have been ascertained by Defendants through the exercise of due diligence prior to instituting the judicial proceeding against Plaintiff) did not support any allegation that Plaintiff had possessed the crack cocaine for which he was convicted.

71.     The underlying litigation terminated in Plaintiff's favor when the Court granted its Certificate of Innocence pursuant to 28 U.S.C. §2513 on May 12, 2011.

72.     In the alternative, the underlying litigation terminated in Plaintiff's favor when the Court granted Plaintiff's successive Writ of Habeas Corpus, vacated Plaintiff's prison sentence, and ordered that Plaintiff immediately be released from prison.

73.     In instigating, commencing and continuing the judicial proceeding against Plaintiff described above, Defendants Carr and Sharp acted maliciously. Defendants intentionally engaged in wrongful acts and conduct without just cause or excuse in pursuing and taking affirmative steps to have Plaintiff wrongfully convicted, without any probable cause to do so and for improper purposes.

74.     At all relevant times, Defendants Carr and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they maliciously prosecuted Plaintiff.

75.    As a result of Defendants' malicious prosecution of Plaintiff, Plaintiff was damaged, as set forth herein including by being wrongfully imprisoned for almost 13 years.

76.    Defendants' malicious prosecution, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Plaintiff and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT V - PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL IMPRISONMENT UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

COMES NOW Plaintiff Stephen Jones, and for his cause of action against all defendants, states as follows:

77.    Plaintiff incorporates paragraphs 1 through 76, supra, the same as if fully set forth herein.

78.    As a result of Defendants Carr and Sharp's wrongful acts, as well as the acts of officers of the Department currently unknown to Plaintiff, Plaintiff was restrained against his will when he was arrested and then subsequently imprisoned for 12 years and 9 months.

79.   The restraint was unlawful in that Defendants Carr and Sharp framed Plaintiff for a crime he did not commit, and obtained his arrest and conviction by suppressing evidence and providing false and misleading information to other officers of the Department, to federal prosecutors, and to the judge and jury at Plaintiff's criminal trial, all as set forth above.

80.   Defendants intended to cause this false imprisonment and wrongful confinement of Plaintiff.

81.   At all relevant times, Defendants Carr and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they wrongfully imprisoned Plaintiff.

82.   As a result of Defendants' wrongful imprisonment of Plaintiff, Plaintiff was damaged, including by being wrongfully imprisoned for 12 years and 9 months.

83.   Defendants' wrongful imprisonment, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Plaintiff and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like

24

conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT VI - PLAINTIFF'S CAUSE OF ACTION FOR ABUSE OF PROCESS UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

COMES NOW Plaintiff Stephen Jones, and for his cause of action against all defendants, states as follows:

84.    Plaintiff incorporates paragraphs 1 through 83, supra, the same as if fully set forth herein.

85.    Defendants Carr and Sharp's acts in falsely implicating Plaintiff in criminal activity as set forth above constituted an improper use of process that was neither warranted nor authorized by the process. Among other things, Carr and Sharp abused legal process by preparing a fraudulent affidavit in support of their application for a search warrant, by providing false or misleading information in the police report, by suppressing relevant evidence including photographs, by providing false or misleading information to federal prosecutors, and by testifying falsely at trial.

86.    Defendants abused legal process as set forth in paragraph 85 for an unlawful purpose and with an illegitimate and collateral objective, and have acted willfully and with an ulterior motive in their use of legal process, in that Defendants used legal process through their authority as police officers for purposes other than legitimately investigating and prosecuting criminal acts. Among other things, Defendants abused legal process as set forth above to cover up and deflect attention from Defendants' theft of $5,200 belonging to Plaintiff's father.

87.    At all relevant times, Defendants Carr and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis

Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they wrongfully imprisoned Plaintiff.

88.     As a result of Defendants' wrongful imprisonment of Plaintiff, Plaintiff was damaged, including by being wrongfully imprisoned for more than 12 years.

89.     Defendants' abuse of process, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Stephen Jones prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

Respectfully submitted,

DOWD & DOWD, P.C.

By: _____
RICHARD K. DOWD (33383)
ALEX R. LUMAGHI (56569)
100 North Broadway, Suite 1600
St. Louis, Missouri 63102
(314) 621-2500 - telephone
(314) 621-2503 - facsimile

*Attorneys for Plaintiff Stephen Jones*