UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-02109-CAS |
| | ) | |
| MAYOR FRANCIS G. SLAY, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS SLAY, BATTLE-TURNER, GRAY, LEE AND IRWIN'S MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF ANGELA WINGO**

Defendants Mayor Francis Slay, Jr., Bettye Battle-Turner, Richard Gray, Jerome D. Lee, and Thomas Irwin ("Board Defendants"), submit the following Reply Memorandum in support of their Motion to Exclude the Testimony and Report of Angela Wingo.

**I.   Introduction**

Plaintiffs Stephen Jones, Michael Holmes and Matthew Cox filed a joint response in the *Jones* case to separate motions filed by all Defendants in the *Jones*, *Holmes*, and *Cox* cases to exclude the testimony and report of Angela Wingo ("Wingo"). (Doc. 168). In his response, Plaintiff apparently concedes that Wingo was never properly disclosed to Defendants, and that her reports were untimely under the Court's scheduling order. However, Plaintiff argues Wingo is a "highly trained and experienced law enforcement professional," and should be permitted to testify

1

because the standard favors the admissibility of expert testimony over exclusion (Doc. 168 at 1-2); because any defects in Wingo's opinions should go to the weight of those opinions, not their admissibility (*id.* at 7); because defense counsel did not adequately explore the basis for Wingo's opinions (*id.*); because Wingo need not rely on admissible evidence (*id.* at 8); because the Court should "presume" Wingo's opinions are reliable (*id.*); and because experts are permitted to opine on an "ultimate issue" (*id.*). In the alternative, and as expected, Plaintiff argues that Wingo should be permitted to amend her reports and supplement her opinions. Doc. 168 at 13. Plaintiff's arguments lack merit, and the Court should strike Wingo's reports, and bar her from testifying.

## II. Argument

### A. Plaintiff's Memorandum in Opposition repeatedly misrepresents the evidence in the record

Plaintiff argues, for a variety of reasons, that Wingo's report and testimony should not be excluded. As a basis for this position, he repeatedly misrepresents evidence in these cases, specifically deposition testimony and documents produced by the Board Defendants. Plaintiff alleges that counsel for Defendants engaged only in "cross-examination" during Wingo's deposition and "generally failed to ask Wingo regarding the substantive opinions disclosed in her reports" and the basis for those opinions. (Doc. 168, p. 6-7). No citations are given in support of these broad statements. In reality, Wingo was painstakingly taken through her report page by

page and asked for the basis of all her opinions regarding all of the Defendants. (Ex. B to Defendants' Motion to Exclude (("Wingo Depo"), p. 64-185).

Plaintiff also alleges in his Response that Wingo believes that Defendant Sharp "had a sustained complaint in the year 2000 for attempting to steal $1,480.00 from a woman he had arrested." (Doc. 168 at 9). What Wingo actually testified to was that she could not tell from the available documents what charge was sustained against Defendant Sharp. "I don't know if it was a purposeful theft or a misplacing or how they believed—I can't get in their minds why they sustained it." (Wingo Depo., p. 143). The only evidence in the record indicates that the 2000 complaint was sustained due to Defendant's Sharp's failure to give out a property receipt. (Ex. A, Deposition of Shell Sharp, p. 80). Wingo herself testified that she could not tell if the sustained complaint was for theft or for failing to fill out proper paperwork. (Wingo Depo, p. 328).

The sustained allegation against Defendant Sharp in 2000 was for Improper Performance of Duty, (Ex. B, Deposition of John Hayden, p. 52). Plaintiff alleges the sustained charge was for theft. (Doc. 168, p.9). Allegations of theft are normally categorized as Conduct Unbecoming, not Improper Performance of Duty. (Ex. B, p.53). Plaintiff also attempts to put words in the mouths of both Captain Hayden and Lt. Col. Nocchiero, both former Internal Affairs Commanders. "…Lt. Col. Nocchiero and Captain Hayden have now testified that based on the available documentation, Officer Sharp should have been terminated if that complaint was sustained for theft." (Doc. 168 at 9). What Captain Hayden actually said was:

3

"There's nobody that has stolen or that the department has concluded that they stole $1500 from somebody and kept their job. You won't find that in the history of the department, that it was sustained." Similarly, Lt. Col. Nocchiero testified that he would only recommend termination, not retraining for any officer with a sustained allegation for theft. (Ex. C, Deposition of Lt. Col. Nocchiero, p. 76). He further testified that there was multiple times that an IAD investigation resulted in sustained charges for a violation of a departmental rule or policy that had no causal link to the substance of the initial citizen complaint. (Ex. C, p. 68).

An expert who fails to reliably apply principles and methods to reach her conclusions are subject to exclusion by the Court. *Firemen's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057-60 (8th Cir. 2005). Plaintiff attempts to bolster Wingo's opinions stating that she relied on a variety of sustained allegations against other SLMPD officers across a 15 year period that Wingo claims to have relied on to reach her conclusion that the Department "systemically failed to enforce its own disciplinary policies where officers were found to have improperly performed their duties." (Ex. 168, p. 11). Plaintiff's Response lists 12 examples from 1994 to 2006 in which the discipline from a sustained allegation does not seem to be appropriate to the allegations that initiated the IAD investigation. (Doc. 168, p. 11-12). The documents provided by the Board in regards to these IAD complaints, consisted only of a single face sheet per complaint, per the Department's document retention policy. For every prior IAD complaint Wingo was questioned about, she

4

was unable to state whether or not a full investigation took place or what that investigation entailed. (Wingo Depo., p. 144, 147-148, 159-161).

### B. Wingo lacks the qualifications to testify as an expert

An expert is only permitted to testify within the bounds of her qualifications, and may not offer opinions outside her area of expertise. *American Auto Insurance Co. v. Omega Flex, Inc.*, 4:11-cv-305-AGF, 2014 WL 859760, at *3 (E.D. Mo. Mar. 5, 2014) (citing *Weisgram v. Marley Co.*, 169 F.3d 514, 520-21 (8th Cir. 1999)). "The test is whether the witness' training and experience demonstrate a knowledge of the subject matter." *Id.* (citing *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 858 (8th Cir. 1975) (internal quotations omitted)). "[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009).

In his opposition to Defendants' motions to strike, Plaintiff argues that "Wingo is a highly trained and experienced law enforcement professional," and is "well-qualified to opine regarding police practices and procedures." (Doc. 168, p. 4-5). In support, Plaintiff argues that Wingo has worked with more than forty public safety agencies; that Wingo has conducted training for "ethics, administration, supervision, and policy construction;" that Wingo is a certified CALEA assessor; that Wingo created the security department at Lindenwood University's satellite campus in Belleville, Illinois; that Wingo has taught introductory criminal justice courses to college students; and that Wingo has never, to date, been stricken as an

5

expert by a court. (*Id.* at 5-6.1). Plaintiff fails to mention that Wingo has never had the opportunity to be stricken as an expert by a court because she has never been offered as an expert to a court. (Wingo Depo., p.29). None of these qualifications are relevant, and the Court should strike Wingo's reports and bar her testimony.

Wingo testified in her deposition that she was retained to determine "what happened" in these cases. (Wingo Depo., p.251:6-20). Wingo explained that she evaluated the "veracity" of the plaintiffs' complaints, and "decided that the plaintiffs' accounts are accurate and true, also utilizing information from other pieces or other sources, that from my perspective, implicate these officers in wrongdoing." (*Id.*, p. 81:7-11).

Wingo is a psychologist by training, and her work with law enforcement has focused almost entirely on performing psychological assessments and providing hiring advice. (Wingo Depo., p. 49:22-52:23). However, such qualifications are irrelevant here. Plaintiff has not alleged a negligent hiring claim against the police department in these cases, and the Defendants' psychological assessments are not at issue. Although Wingo has lectured on policy and is generally familiar with CALEA's voluntary ethical standards, such experience is likewise irrelevant. Indeed, the question in these cases is not whether Defendants are *alleged* to have violated departmental policies and behaved unethically, but rather, whether Defendants *actually committed* the unethical policy violations alleged by Plaintiffs. Given that nothing in Wingo's training and experience permits her to resolve these

6

factual questions and determine "what happened" in these cases, the Court should strike Wingo's reports, and bar her from testifying. *Cf. Schmidt*, 557 F.3d at 570.

**C.    Wingo's opinions intrude upon the role of the jury and the Court and would not be helpful to the jury.**

Wingo explained in her deposition that she was retained to determine "what happened" in these cases. (Wingo Depo., p. 251:6-20). Wingo claimed that she reviewed all of the documentation, and "decided that the plaintiffs' accounts are accurate and true." *Id.* at 81:7-11. However, "[i]t is the exclusive province of the jury to determine the believability of the witness . . . [and] [a]n expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story." *Bachman v. Leapley*, 953 F.2d 440, 441 (8th Cir. 1992); *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010); *Nichols v. American National Insurance Co.*, 154 F.3d 875, 883 (8th Cir. 1998); *see also Petersen v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (expert may not offer legal conclusions). Consequently, Wingo's opinions intrude upon the roles of the jury and the Court, would not aid the jury, and the Court should strike Wingo's reports and bar her from testifying.

In their response to Defendants' motions, Plaintiff admits that Wingo's opinions "are based primarily on Plaintiffs' testimony." (Doc. 168, p.10). Plaintiff is unapologetic, however, and argues that Wingo was justified in disregarding the "assertions made by these corrupt police officers." *Id.* Plaintiff further argues that experts, unlike lay witnesses, can rely on inadmissible evidence and opine on "ultimate issues." Doc. 168 at 8, 10. Plaintiff compares Wingo's testimony to that of

7

an expert permitted by the Eighth Circuit in *Alumbaugh v. Union Pacific Railroad Co.* to opine that a railroad crossing was not in a state of good repair. Doc. 168 at 8 (citing *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 525 (8th Cir. 2003)). However, Plaintiff's argument comparing *Alumbaugh* to this case is similar to comparing apples and oranges. "Although an expert opinion is not inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact, not all expert opinions are admissible. . . . Opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury . . . and thus, are not admissible under Rule 702." *U.S. v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (internal citations and punctuation omitted).

Unlike the *Alumbaugh* case cited by Plaintiff, the central question in the *Jones* case goes directly to the credibility of the parties and their witnesses. Defendants Carr and Sharp claim to have witnessed Stephen Jones holding a large bag of cocaine on October 29, 1997, and Jones claims the officers are lying. In her deposition, Wingo purported to expertly resolve this credibility question, and opined that it was "[her] expert opinion . . . that [Jones] was not holding a bag of cocaine in his hand" on October 29, 1997. (Wingo Depo., p.262:19-21; *see also id.*, p. 62:17-24) (Wingo's opinion is that Jones's "complaint was sound and that his constitutional rights were violated"); *but see id.*, p. 192:13-193:2 ("How the drugs got there and whose drugs they were, I don't know."). Such opinions are improper, but not merely because they go to the ultimate issues in this case. *Cf. Whitted*, 11 F.3d at 785.

8

Rather, Wingo's opinions are improper because they "create a serious danger of confusing or misleading the jury . . . causing it to substitute the expert's credibility assessment for its own common sense determination." *Nichols*, 154 F.3d at 883 (citing Fed.R.Evid. 403 and *U.S. v. Kime,* 99 F.3d 870, 884–85 (8th Cir.1996)); *see also Whitted*, 11 F.3d at 785-86; *Bachman*, 953 F.2d at 441; *Lee*, 616 F.3d at 809; *Petersen*, 60 F.3d at 475. As such, the Court should strike Wingo's reports and bar her from testifying.

      **D.**     **Wingo should not be allowed to amend her report.**

As expected, Plaintiff has requested the Court to give Wingo an opportunity to supplement her report and update her opinions. However, the Court should reject Plaintiff's request for a do-over. Plaintiff claims there is outstanding discovery which would bolster Wingo's report. (Doc. 168, p. 14). Plaintiff did not file discovery requests for these documents until February 7 and 28, 2014 which was after the deadline for Wingo's deposition to be taken. Defendants have already spent significant time and resources discovering Wingo's inadmissible opinions and unreliable methods, and there is no compelling reason or justification to force Defendants to spend additional time or to throw good money after bad. Defendants should not be punished because Plaintiff did not propound his full written discovery requests before his expert was to be deposed. Wingo was never properly disclosed, her reports were late, and she was not made available for deposition until April 3, 2014. Plaintiff has already had more than enough time to complete expert discovery

9

in these cases. Therefore, the Court should deny Plaintiff's request for additional extensions.

## II. Conclusion

Angela Wingo is not qualified in the areas in which she has rendered her opinions. Her testimony and report amounts to no more than an attempt to bolster the credibility of Plaintiff and contains legal conclusions. Based on the foregoing, the Board Defendants respectfully requests that this Court enter an Order excluding the testimony and report of Angela Wingo and for such other relief as is deemed appropriate.

Respectfully submitted,

CHRIS KOSTER
Attorney General

*/s/ Chris Hoell*
Chris Hoell, #MO54011
Assistant Attorney General
Old Post Office Building
815 Olive Street, Suite 215
St. Louis, Missouri 63101
(314) 340-7861 telephone
(314) 340-7029 facsimile
*Attorneys for Defendants Francis Slay, Jr., Bettye Battle-Turner, Richard Gray. Jerome Lee, and Thomas Irwin*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 8, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties.

                                      */s/ Christopher R. Hoell*
                                      Assistant Attorney General