# Case: Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

4:12-cv-02333HEA

# Transcript of:  Shell Sharp

**Date:** April 9, 2014

This transcript is printed on 100% recycled paper



GORE PERRY
REPORTING & VIDEO

515 Olive Street, Suite 300
St. Louis, MO  63101
(314) 241-6750
1-800-878-6750
Fax: (314) 241-5070
Email: schedule@goreperry.com
Internet: <<www.goreperry.com>>



DEFENDANT'S EXHIBIT
A
PENGAD 800-631-6989

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL HOLMES,

    Plaintiff,

    vs.            No. 4:12-cv-02333HEA

BOARD OF POLICE COMMISSIONERS OF
THE CITY OF ST. LOUIS, et al.,

    Defendants.

Deposition of SHELL SHARP
Taken on Wednesday, April 9, 2014

FAX 314-241-6750                Gore Perry Reporting and Video              www.goreperry.com
                                      314-241-6750

---

**3**

```
 1    APPEARANCES OF COUNSEL:
 2
 3      FOR THE PLAINTIFF:
 4        Richard K. Dowd, Esq.
 5        Dowd & Dowd, P.C.
 6        211 North Broadway - Suite 4050
 7        St. Louis, Missouri  63102
 8        (314) 621-2500
 9        rdowd@dowdlaw.net
10
11      FOR DEFENDANT SHELL SHARP:
12        Philip Sholtz, Esq.
13        State of Missouri
14        Attorney General's Office
15        815 Olive Street - 2nd Floor
16        P.O. Box 861
17        St. Louis, Missouri  63188
18        (314) 340-7827
19
20      FOR DEFENDANT VINCENT CARR:
21        H. Anthony Relys, Esq.
22        State of Missouri
23        Attorney General's Office
24        815 Olive Street - 2nd Floor
25        P.O. Box 861
```

FAX 314-241-6750                Gore Perry Reporting and Video              www.goreperry.com
                                      314-241-6750

---

**2**

```
 1         IN THE UNITED STATES DISTRICT COURT
 2         FOR THE EASTERN DISTRICT OF MISSOURI
 3                  EASTERN DIVISION
 4
 5    MICHAEL HOLMES,
 6
 7      Plaintiff,
 8
 9      vs.            No. 4:12-cv-02333HEA
10
11    BOARD OF POLICE COMMISSIONERS OF
12    THE CITY OF ST. LOUIS, et al.,
13
14      Defendants.
15
16
17
18         Deposition of SHELL SHARP, taken on behalf
19    of the Plaintiff, at the State of Missouri Attorney
20    General's Office, 815 Olive Street, Suite 210, in the
21    city of St. Louis, State of Missouri, on the 9th day
22    of April 2014, before Heather L. Shallow, Certified
23    Court Reporter, Registered Professional Reporter,
24    Registered Merit Reporter.
25
```

FAX 314-241-6750                Gore Perry Reporting and Video              www.goreperry.com
                                      314-241-6750

---

**4**

```
 1        St. Louis, Missouri 63188
 2        (314) 340-7827
 3        Tony.Relys@ago.mo.gov
 4
 5    FOR DEFENDANT BOARD OF POLICE COMMISSIONERS
 6    OF THE CITY OF ST. LOUIS:
 7        Christopher Hoell, Esq.
 8        State of Missouri
 9        Attorney General's Office
10        815 Olive Street - 2nd Floor
11        P.O. Box 861
12        St. Louis, Missouri 63188
13        (314) 340-7827
14
15
16
17
18
19
20
21
22
23
24
25
```

FAX 314-241-6750                Gore Perry Reporting and Video              www.goreperry.com
                                      314-241-6750

673dff41-cd10-417a-8877-77706b0cb81f

5

1    CERTIFIED QUESTIONS
2
3    Page No.  59  Line No. 4
4        Q.  Who was the confidential informant that gave
5    you this information about Cates?
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7

1                    SHELL SHARP,
2    of lawful age, having been first duly sworn to testify
3    the truth, the whole truth, and nothing but the truth
4    in the case aforesaid, deposes and says in reply to
5    oral interrogatories propounded as follows, to wit:
6                    EXAMINATION
7    QUESTIONS BY MR. DOWD:
8        Q.  Can you state your name for the record.
9        A.  Shell Sharp.
10       Q.  Mr. Sharp, my name's Richard Dowd.  As you
11   know, I'm gonna be asking you some questions this
12   afternoon.  If I at any time ask you a question you
13   don't both hear and understand would you ask me to
14   repeat until you do both hear and understand it?
15       A.  Yes.
16       Q.  Have you ever had your deposition taken
17   before?
18       A.  I don't think so.
19       Q.  Okay.  There's some basic rules.  One is you
20   have to answer verbally.  You can't shake your head no
21   or yes.
22       A.  Okay.
23       Q.  And the other thing is uh-uh and uh-huh does
24   not come out well in a transcript.  It's hard to
25   determine whether it's a positive or negative

6

1            INDEX              PAGE
2    Examination by Mr. Dowd              7
3
4
5            EXHIBITS
6    (No exhibits marked.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

8

1    response.  Is that all fair enough?
2        A.  Yes.
3        Q.  Okay.  And if I remind you of those things
4    I'm not being rude, I just want to make sure the
5    record is clear.
6        A.  Okay.
7        Q.  Where do you live?
8            MR. SHOLTZ:  Object.  You represent
9    convicted felons and it's a closed record in the
10   Missouri statutes right now.  I represent Officer
11   Sharp.  If at any time I withdraw and he's not
12   represented by counsel we can work that out at that
13   point.
14           MR. DOWD:  Okay.  You're instructing him not
15   to answer the question?
16           MR. SHOLTZ:  I am.
17           MR. DOWD:  Okay.
18       Q.  (By Mr. Dowd)  What do you do for a living
19   at this time?
20       A.  I'm a hospital tech.
21       Q.  A hospital tech?
22       A.  Yes, sir.
23       Q.  What kind of technician are you?
24       A.  Just like -- we provide equipment to the
25   hospital, like IV pumps, SCDs, beds.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

9

```
1        Q.  You work for a company that sells that
2    equipment to hospitals?
3        A.  They rent them like.
4        Q.  I gotcha.  Okay.  How long you been doing
5    that?
6        A.  A year.
7        Q.  What did you do before that?
8        A.  I moved jobs.
9        Q.  Okay.
10       A.  I worked at the workhouse for about a year.
11       Q.  As a CO?
12       A.  Yes, sir.  I worked security for Allied
13   Barton for like three years.
14       Q.  How about before that?
15       A.  That was it.  I was a police officer.
16       Q.  Okay.  And what year did you leave the
17   police department?
18       A.  2009.
19       Q.  Okay.  Let's go back to the beginning.
20   Where were you born and raised?
21       A.  St. Louis, Missouri.
22       Q.  Okay.  And what neighborhoods did you grow
23   up in?
24           MR. SHOLTZ:  Object to relevance.  Go ahead.
25       Q.  (By Mr. Dowd)  You can answer.
```

FAX 314-241-6750              Gore Perry Reporting and Video              www.goreperry.com
                                    314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

11

```
1        Q.  And what did you do when you graduated
2    college?
3        A.  I applied for the police force but they
4    wasn't hiring at the time so I joined the Marine
5    Corps.
6        Q.  Okay.  How many years did you serve in the
7    Marines?
8        A.  I did two years.  I got out on a hardship
9    discharge.  My mother became ill.
10       Q.  What rank did you attain?
11       A.  Corporal.
12       Q.  What was your specialty in the Corps?
13       A.  I was an administration clerk.  Admin.
14       Q.  Honorably discharged?
15       A.  Yes, sir, I was.
16       Q.  What did you do when you left the Marine
17   Corps?
18       A.  I worked security for Wells Fargo for a year
19   I guess then I got on the police department.
20       Q.  Can you tell us why you were rated at Wells
21   Fargo as "fair" with regard to honesty?
22           MR. SHOLTZ:  Objection.  Speculation.
23   Foundation.  You can answer if you know.
24       A.  I never knew.
25       Q.  (By Mr. Dowd)  Okay.
```

FAX 314-241-6750              Gore Perry Reporting and Video              www.goreperry.com
                                    314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

10

```
1        A.  South St. Louis.  We lived on North Grand,
2    Sullivan and Grand for a little while.
3        Q.  Okay.
4        A.  Then we --
5        Q.  Where'd you go to grade school?
6        A.  L'Ouverture.  South St. Louis.
7        Q.  Okay.  And high school?
8        A.  Sumner.  Well, I went one year at McKinley,
9    then I went three years at Sumner.
10       Q.  What'd you do when you left high school?
11   Did you -- you graduated from high school?
12       A.  Yes, I did.
13       Q.  Yeah.
14       A.  I had a scholarship to Missouri Southern
15   State to play football.
16       Q.  Missouri Southern State?
17       A.  Down in Joplin.
18       Q.  Oh, okay.
19       A.  Joplin, Missouri.
20       Q.  How long did you attend Missouri Southern?
21       A.  Five years.
22       Q.  And you got your degree?
23       A.  Yes, sir, I did.
24       Q.  Was that in criminal justice?
25       A.  Yes, sir, it was.
```

FAX 314-241-6750              Gore Perry Reporting and Video              www.goreperry.com
                                    314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

12

```
1        A.  I never knew nothing about that.
2        Q.  Okay.  You didn't see where they sent a
3    document to the police department stating that you
4    were ranked as "fair" with regard to honesty?
5            MR. SHOLTZ:  Same objections.
6        A.  No, I never --
7        Q.  (By Mr. Dowd)  Is this the first you've
8    heard of it?
9        A.  Yeah.  First.
10       Q.  Okay.  Did you have any problems at Wells
11   Fargo?
12       A.  No.  I was a supervisor there.
13       Q.  Okay.
14       A.  I was evening shift supervisor.
15       Q.  How many people did you supervise?
16       A.  Approximately ten people.
17       Q.  And what facilities were they providing
18   security?
19       A.  I was at Deaconess Hospital.
20       Q.  All right.  And who were your supervisors at
21   Wells Fargo?
22       A.  Dennis Wilkerson was the immediate
23   supervisor.
24       Q.  Anyone else that you can recall from when
25   you worked there?
```

FAX 314-241-6750              Gore Perry Reporting and Video              www.goreperry.com
                                    314-241-6750

673dff41-cd10-417a-8877-77706b0cb81f

**13**

```
 1        A.  There was a guy named Les.  I don't remember
 2   his last name.  But Dennis was the -- was the boss.
 3        Q.  Okay.  And what -- how long were you with
 4   Wells Fargo?
 5        A.  About a year.
 6        Q.  Then you got on the department?
 7        A.  Yes, sir.
 8        Q.  And were you at Deaconess the entire year?
 9        A.  I was on the parking lot for a little while.
10        Q.  Right.
11        A.  It was a truck lot and I was set at the gate
12   where the trucks entered and exited the lot.
13        Q.  Okay.  And you went on the department in
14   '90?
15        A.  '89.
16        Q.  '89.  As a probationary officer?
17        A.  Yes, sir, I was.
18        Q.  What district were you assigned to?
19        A.  First District.
20        Q.  And who was your partner?
21        A.  I didn't have a partner.
22        Q.  No partner?  Why was that?
23        MR. SHOLTZ:  Speculation.  Go ahead.
24        Q.  (By Mr. Dowd)  You were a patrolman; right?
25        A.  Yes.
```

**14**

```
 1        Q.  Okay.  And you were in a patrol car and --
 2        A.  Yes.
 3        Q.  And you patrolled alone?
 4        A.  Yes.
 5        Q.  Do you know why that was?
 6        MR. SHOLTZ:  Speculation.  Go ahead.
 7        A.  I don't want to say nothing bad or negative
 8   towards the department; so...
 9        Q.  (By Mr. Dowd)  Well, that's okay.  You have
10   to.
11        A.  I have to?
12        Q.  Yeah.  You're here to tell -- you're here to
13   answer my questions and tell the truth so even if it's
14   painful --
15        A.  Back then it was --
16        MR. SHOLTZ:  Hold on a second.  Let him ask
17   a question.
18        Q.  (By Mr. Dowd)  Why was it that you weren't
19   assigned a partner as a probationary officer in '89 --
20        MR. SHOLTZ:  Objection.  Speculation.
21        Q.  (By Mr. Dowd)  -- in the First District?
22        A.  Back then it was a little racist, little
23   prejudiced.
24        Q.  Okay.
25        A.  I was assigned to, like, a foot beat.  Me
```

**15**

```
 1   and the other young black recruits that were over
 2   there, we patrolled the parks at First.
 3        Q.  Okay.  What park were you patrolling in the
 4   First?
 5        A.  We patrolled all the Parks in the First
 6   District.
 7        Q.  Okay.
 8        A.  We went from park to park.
 9        Q.  Okay.  I'm just -- I'm trying to find out
10   what parks.
11        A.  It was Carondelet Park, it was -- man, I
12   can't remember the names.  Bellerive Park right there
13   off Broadway.
14        Q.  Okay.
15        A.  And there was -- I forget the park off of
16   Gravois, just --
17        Q.  Who was your supervisor back then?
18        A.  Oh, man.  I don't recall his name.  I really
19   don't.  I know --
20        Q.  Was he white?
21        A.  Yes.  I know his face but I can't recall his
22   name.
23        Q.  So you had a foot beat where you just walked
24   from -- walked the parks and then you would drive to
25   the next park?
```

**16**

```
 1        A.  We didn't have a car.
 2        Q.  Okay.
 3        A.  We caught the bus or we walked from -- on
 4   the foot beat.
 5        Q.  You had a radio?
 6        A.  Yes.
 7        Q.  And what was your primary detail at that
 8   time?
 9        A.  I mean, make sure everybody was safe and
10   securing the parks, and there was a lot of
11   homosexuality going on in the parks.  We cleared out
12   the bathrooms and stuff like that.
13        Q.  I gotcha.  Was there drug dealing going on
14   in the parks?
15        MR. SHOLTZ:  Objection.  Speculation.
16        A.  I'm not sure.  Probably was.  I'm not --
17        Q.  (By Mr. Dowd)  None that you became aware of
18   during your patrols?
19        A.  No, sir.
20        Q.  What was your next -- well, how long did you
21   remain in that assignment, in the foot patrol?
22        A.  I'm guesstimating six months, you know,
23   like...
24        Q.  What was your next assignment?
25        A.  I was in the car, patrolling the First
```

17

```
 1    District.
 2       Q.  Were you still a probationary officer?
 3       A.  You know, after one year I became a PO.
 4       Q.  Okay.  But that six months that you were on
 5    foot patrol --
 6       A.  Yeah, I was PO.
 7       Q.  Okay.
 8       A.  PPO.  Probationary officer.
 9       Q.  Okay.  So you had six months more to go?
10    It's a year that you're a probationary officer?
11       A.  I think so, yes, sir.
12       Q.  Okay.  So when you were put in a -- in a
13    patrol car, who was your partner?
14       A.  I didn't have a partner.
15       Q.  Still no partner?
16       A.  We was -- I rode with a older guy named
17    Jimmy Smith for a while and he was like -- I'd say he
18    was a older guy.  He was probably 60.  He didn't -- he
19    don't want to do too much, just write tickets.
20       Q.  Speeding and that type of thing?
21       A.  Yeah.  We sit at the red light or the no
22    right on red turn.
23       Q.  Okay.
24       A.  You know, answer radio assignments.
25       Q.  How long did you do that?
```

18

```
 1       A.  A few months I think.
 2       Q.  And what was your next assignment?
 3       A.  I still was in the district but --
 4       Q.  Still in the First?
 5       A.  Yes, sir.
 6       Q.  And what did they assign you to?
 7       A.  I was like in a radio car, just -- we
 8    rotated areas like --
 9       Q.  I see.
10       A.  Yes.
11       Q.  Assigned to different areas to patrol?
12       A.  Yes, like -- like, you know, you do three
13    days on this area, like on this end of the district
14    and then the other platoon would be off or come on,
15    then we would switch to the other end of the district
16    for like three days.
17       Q.  Okay.  And was Officer Smith your partner
18    throughout that time?
19       A.  No, sir, he wasn't.
20       Q.  Okay.  Who was your next partner?
21       A.  It was mostly I rode by myself but sometimes
22    I rode with Julius Conners.
23       Q.  Was he an African-American officer?
24       A.  Yes, sir, he was.
25       Q.  And how long were you with Officer Conners?
```

19

```
 1       A.  It wasn't -- we wasn't partners per se.
 2    Like when the shift start if they needed a two-man car
 3    they would put, you know, two people in the car.  You
 4    know what I mean?
 5       Q.  Yeah.
 6       A.  Like each platoon had a couple of two-man
 7    cars so they would say "you and you ride."  I was
 8    speaking with a white officer once and he told me he
 9    wanted to be my partner -- that's why I said it was
10    prejudice -- and he was told by the sergeant that --
11    that the blacks stay with the blacks and the whites
12    stay with the whites.  So when -- when it was paired
13    up I would ride with a black officer and when it
14    wasn't, you'd be a one-man car.
15       Q.  Okay.  At what point does the department
16    actually assign two officers as partners?
17       MR. SHOLTZ:  Objection.  Speculation.
18       Q.  (By Mr. Dowd)  Or how does that work?
19       MR. SHOLTZ:  Vague as to time period.  You
20    can go ahead.
21       A.  I'm not sure.  It's like -- like you -- you
22    friends with this guy and you go to the supervisor and
23    say "I want to ride with him," I guess.
24       Q.  (By Mr. Dowd)  Okay.  Did you ever do that?
25       A.  No, sir.
```

20

```
 1       Q.  Did you ever have somebody you would
 2    classify as a partner?
 3       A.  Not in the First, no, sir.
 4       Q.  Okay.  What did you do after the First?
 5       A.  I went to -- I was detached to the SCAT
 6    unit.
 7       Q.  The SCAT?
 8       A.  Street Corner Apprehension Team.
 9       Q.  Okay.
10       A.  Like in '91.
11       Q.  And who did you work with there?
12       A.  Different people.  It was -- Sergeant Ron
13    Klein was the supervisor and --
14       Q.  How long were you there?
15       A.  18 months.
16       Q.  Where'd you go next?  Do you know
17    approximately what year that was?
18       A.  '92.  I went back to the -- I went back to
19    the First for about a -- about a couple weeks, then I
20    was transferred into Narcotics.
21       Q.  You requested that transfer to Narcotics?
22       A.  They transferred me.
23       Q.  But you did file the request; correct?
24       A.  I'm not sure.  I'm not sure.  They just --
25    they liked what I did in SCAT and they -- the colonel
```

673dff41-cd10-417a-8877-77706b0cb81f

**21**

1    called and asked me to -- did I want to come down.
2        Q.  Who was it?  Colonel who?
3        A.  Oh, man.  I can't remember his name.
4        Q.  I thought -- oh, you just said "colonel"?
5        A.  Yeah, it was a colonel.
6        Q.  Okay.
7        A.  When I was in First District a friend of
8    mine that was in the academy class with me, Pernell
9    Witherspoon, was assaulted while he was in the SCAT
10   unit.  The colonel -- man, I can't think of the name.
11   He asked Pernell -- because it was said that he didn't
12   have the proper protection and backup.  He asked him
13   to pick some guys he wanted to be down there so he
14   picked me and a couple other guys and I was in the
15   SCAT unit and it's usually like a 60-day detail,
16   whatever --
17       Q.  Okay.
18       A.  -- and then they rotate people in and out of
19   there so if they want to get fresh -- fresh people in
20   there, but I ended up staying like 18 months.  And
21   then when a opening became available they transferred
22   me to Narcotics.
23       Q.  You were asked to come to Narcotics?
24       A.  I think so.
25       Q.  By this colonel?

**22**

1        A.  No.  He was in charge of the detectives at
2    the time but I'm not sure.  Joachimstaler was the
3    captain of Narcotics and I think he helped get me down
4    there.
5        Q.  In Narcotics are you assigned a partner?
6        A.  At first I wasn't.  I was -- when I was
7    assigned to Narcotics I was a member of the undercover
8    crew.  We didn't have partners.
9        Q.  And what did you do in the undercover crew?
10       A.  I bought dope.
11       Q.  How would you -- how would you locate the
12   sellers of dope?
13       A.  How would I locate them?
14       Q.  Yeah.
15       A.  We would go off informants and actually guys
16   from jail would call and give up information that
17   people was trying to work off cases and different
18   detectives who had informants that wanted to introduce
19   you to narcotic dealers.
20       Q.  They would introduce you to these -- the
21   detectives would introduce you to the confidential
22   informants?
23       A.  Yes, sir.  Then the informant would
24   introduce me to the drug dealers.
25       Q.  What were your procedures for documenting

**23**

1    informants?
2            MR. SHOLTZ:  Objection.  Vague as to time
3    period.
4        Q.  (By Mr. Dowd)  We're talking about 1992;
5    correct?
6        A.  Yes, sir.
7        Q.  Okay.
8        A.  Yes, when I went to Narcotics.  Yes.
9        Q.  Okay.  What was -- what was the procedure
10   for documenting informants?
11       A.  I'm not really sure because, like I said, I
12   was -- I was buying dope and I never really had an
13   informant and then I think -- the procedure I think --
14   I think you --
15       Q.  Well, let me --
16       A.  -- put the person --
17       Q.  Let me ask you this:  What training did you
18   receive with regard to the use of confidential
19   informants and their information?
20       A.  What training?
21       Q.  Yeah.
22           MR. SHOLTZ:  Object as to vague.
23       Q.  (By Mr. Dowd)  You can answer.
24       A.  You would get them and as -- there's really
25   no training per se.  Hopefully that the person is

**24**

1    telling the truth, you get a reliable informant, but
2    you had people that would tell you there's kilos of
3    dope in this house and then you go in there, you don't
4    find kilos.  It's -- you have to work with them to see
5    how reliable they are and truthful.
6        Q.  Okay.  Did you have any training with regard
7    to documenting informants?
8        A.  Well, you would get a -- they had a book
9    where you get the person's name and everything and
10   then they would give them a informant number.
11       Q.  Did you do that?
12       A.  Sometimes.
13       Q.  How often?  If you can give me a percentage,
14   you know, out of five informants that you used, how
15   many would you -- would you put in the book?
16           MR. SHOLTZ:  Relevance.  Compound.  Go
17   ahead.
18       A.  I'm not sure.  It's like some guys didn't
19   like drug dealers and they wasn't per se called
20   informants; they would just give you information and
21   they didn't want to be tied down to where people think
22   like you give me information, the police gonna tell
23   that you did it and then somebody years ago --
24       Q.  (By Mr. Dowd)  I understand.
25       A.  -- put information out that they could get

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

25

1    ahold of the informant book and find out who's telling
2    on who.
3         Q.  Okay.
4         A.  And people -- a lot of people didn't want to
5    be -- their name written down.
6         Q.  Documented?
7         A.  Yes, sir.
8         Q.  Okay.  Can you give us your best estimate as
9    to out of five or ten, whatever, whatever's a good
10   number for you, you would -- you would document?
11        MR. SHOLTZ:  Speculation.  If you can come
12   up with it.
13        A.  I can't -- I can't give you a number.  Like
14   some guys, like I said, you would meet guys that's
15   working off a case but they don't -- they're not your
16   informant.  Is that what you said?
17        Q.  (By Mr. Dowd)  I understand.  No, I'm
18   talking about yours.
19        A.  Like my informants --
20        Q.  Yeah.
21        A.  -- if -- if I had an informant I would
22   document them if they wanted to be documented.
23        Q.  Okay.  And do you have any idea how many you
24   documented as opposed to not?  Was it 50/50?
25        MR. SHOLTZ:  Asked and answered and

FAX 314-241-6750
Gore Perry Reporting and Video
314-241-6750
www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

27

1    classified as informants.
2         Q.  I see.  Okay.  I'm sorry.  Who was your
3    supervisor at the time that you went undercover?
4         A.  In Narcotics?
5         Q.  Yeah.
6         A.  Sal Cira.
7         Q.  How do you spell -- C-E-R-O?
8         A.  I think --
9         MR. SHOLTZ:  C-I-R-A.
10        A.  Yeah, C-I-R-A.
11        Q.  (By Mr. Dowd)  And he was the one who kind
12   of gave you your training in the unit?
13        A.  We went to different training classes with
14   like the DEA and we did stuff with the FBI and DEA.
15   It was like a two-week -- two-week training course
16   with the DEA officers and they have different
17   instructors.
18        Q.  And where would you go for that?
19        A.  Different places like Westport Plaza, like
20   hotels and --
21        Q.  Gotcha.
22        A.  -- and we stay there.  We go there for two
23   weeks at a time.
24        Q.  But with regard to documenting your CIs,
25   that would be up to -- was it Sergeant Cira?

FAX 314-241-6750
Gore Perry Reporting and Video
314-241-6750
www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

26

1    speculation.
2         Q.  (By Mr. Dowd)  -- type of thing?  Do you
3    understand what I'm asking?
4         A.  How many out of the --
5         Q.  Was it 50/50 that you documented or 25/75
6    that you -- that you documented --
7         MR. SHOLTZ:  Same objections.
8         Q.  (By Mr. Dowd)  -- by putting them in the
9    book?  Just your best estimate.
10        MR. SHOLTZ:  Same objections.  If you can't
11   give him a number...
12        A.  I can guesstimate 50/50.  I'm not sure
13   though.
14        Q.  (By Mr. Dowd)  Okay.  And you left that up
15   to them whether or not they wanted to be documented?
16        MR. SHOLTZ:  Misstates prior testimony.
17   Argumentative.
18        A.  For the most part.  Like I said, if a guy
19   was working off a case they really wasn't per se --
20   there's guys that used to call the Narcotic office and
21   say "I want to be an informant"; so those guys would
22   be documented.
23        Q.  (By Mr. Dowd)  Okay.
24        A.  And I'm not sure if the guys that got caught
25   with something and worked off a case, if they were

FAX 314-241-6750
Gore Perry Reporting and Video
314-241-6750
www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

28

1         A.  Yes, sir.
2         Q.  That would be up to Sergeant Cira?
3         A.  Well, I mean, it would be up to the
4    detective once he talked to the guy and then you --
5    Sal would keep the book with the informants' names and
6    stuff.
7         Q.  Okay.  But with regard to whether you
8    documented them or not, that was up to him?
9         MR. SHOLTZ:  Objection.  Speculation.  Asked
10   and answered.
11        Q.  (By Mr. Dowd)  He instructed you that, you
12   know, if --
13        MR. HOELL:  Misstates his testimony.
14        MR. DOWD:  I'm asking a question.
15        Q.  (By Mr. Dowd)  With regard to not
16   documenting a CI, that was -- that was up to him?
17        MR. SHOLTZ:  Argumentative.
18        Q.  (By Mr. Dowd)  Ultimately.
19        MR. SHOLTZ:  Argumentative.  Speculation.
20   Misstates testimony.
21        MR. HOELL:  Join.
22        Q.  (By Mr. Dowd)  Do you understand what I'm
23   saying?
24        A.  Sal would kind of let you handle -- handle
25   the situation.  Like I said, if the guy didn't want to

FAX 314-241-6750
Gore Perry Reporting and Video
314-241-6750
www.goreperry.com

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                    Shell Sharp
                                                                                                    April 9, 2014

29

1    be documented -- and there's guys out here that want
2    to be the police so they feel that getting their foot
3    in the door they could tell on bad guys.
4        Q.   Right.
5        A.   But they don't want to be known in the
6    neighborhood as a snitch so they won't give their name
7    and stuff so --
8        Q.   Okay.
9        A.   -- we would never press, but like I said,
10   there's so many people calling the office every day
11   wanting to be documented informants.
12       Q.   Okay.  But I don't think I've got an answer
13   to my question yet with regard to -- Sergeant Cira
14   allowed you to document the ones that you wanted to
15   document?
16           MR. SHOLTZ:  Same objections.
17           MR. HOELL:  Join.
18       A.   Sal left it up to you to make the decision.
19       Q.   (By Mr. Dowd)  That's what I'm asking.
20       A.   Yes, sir.
21       Q.   And what was the different -- you've already
22   said there were people that just wanted to be police
23   and so they were trying to get their foot in the door.
24   What were the other types of informants?
25       A.   Mad females that's mad at their dope dealer

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                    Shell Sharp
                                                                                                    April 9, 2014

31

1        A.   Well, like I said, we would -- if it was a
2    location -- like they would say -- just giving a
3    nickname, "Ray-Ray is selling dope out of 5010
4    Hodiamont," we would go conduct a surveillance.  First
5    of all, we would obtain a photograph of the guy to
6    verify who -- if he knows his first and last name but
7    a lot of guys out here only know by street name,
8    nicknames; so we would take the photograph.  If he
9    knew first and last name, show it to them.  "Yeah,
10   yeah, that's him right there," you know, then we would
11   go to that location that they gave and conduct
12   surveillance at a house or on a street corner --
13       Q.   Okay.
14       A.   -- to try to verify the information.
15       Q.   Gotcha.  And would you ever compensate
16   informants by paying them money?
17       A.   There was some informants paid.
18       Q.   Can you give us your best estimate as to
19   what percentage that would be?
20           MR. SHOLTZ:  Objection.  Vague as to time
21   period.
22       Q.   (By Mr. Dowd)  Well, let's -- we're talking
23   about in the nineties.  Well, let's do this:  How long
24   were you with the Narcotics Unit?
25       A.   Two --

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                    Shell Sharp
                                                                                                    April 9, 2014

30

1    boyfriend who they might have found out they had
2    another girlfriend or family they was providing the
3    drug money to.  They would call and tell on the guys.
4        Q.   Okay.
5        A.   Guys that feel that dope dealer shorted them
6    on their purchases.  If they purchased a quantity of
7    drugs from them, they got shorted --
8        Q.   Okay.
9        A.   -- they would tell on the guys.
10       Q.   Okay.
11       A.   It's just different type --
12       Q.   And you would use them to -- to -- to arrest
13   the person that had done that to them, or investigate?
14           MR. SHOLTZ:  Objection.  Relevance.  Go
15   ahead.
16       A.   Once given the information we would conduct
17   investigation to see if the guy was reliable, you
18   know.  If he's saying Richard Dowd's a dope dealer, we
19   have to go verify it.  You know what I mean?  We
20   wouldn't just jump and go arrest a guy.  We would go
21   conduct a investigation after getting information from
22   different type of people.
23       Q.   (By Mr. Dowd)  Okay.  And then if you -- if
24   you got some evidence as to that person's involvement
25   in drugs, what would you do?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                    Shell Sharp
                                                                                                    April 9, 2014

32

1        Q.   From '91 I think it was?
2        A.   '92.
3        Q.   From '92 to --
4        A.   I was with SCAT in '91.  I guess it was part
5    of Narcotics, you know.
6        Q.   Okay.  Gotcha.
7        A.   But I wasn't assigned.  I was still -- I was
8    detached to SCAT but I was assigned to the First
9    District.
10       Q.   Okay.
11       A.   Up until '92 I was transferred in till I
12   think 2000.
13       Q.   And it was called the Narcotics Unit at that
14   time?
15       A.   At that time it was called -- like I said,
16   it was called the Street Undercover Unit.
17       Q.   Okay.  Was that a subdivision of Narcotics?
18       A.   They had three parts.  They had the guys
19   that do the buses and trains, you know, the packages
20   at the UPS --
21       Q.   Mm-hmm.
22       A.   -- then we have the Undercover Unit which I
23   was a part of, then we had the street -- Street Unit
24   that did the search warrants and stuff like that,
25   street arrests.

33

1    Q. Okay. Street Unit did the warrants?
2    A. Yes, sir.
3    Q. So if you were undercover and you had
4  information you would pass it on to the Street Unit?
5    A. Yes, sir.
6    Q. What was the procedure that you were to
7  follow from there, from the time you conveyed
8  information to the Street Unit?
9    A. What was the procedure?
10    Q. Yeah. What were you supposed to do with
11  regard to your training as to how to convey this
12  information to the Street Unit from Undercover? Does
13  that make sense?
14    A. I guess you would call them and have them
15  meet you somewhere and basically introduce you to the
16  informant so they could get the information.
17    Q. And then you would provide them with
18  information as well?
19    A. Whatever the information you gave and
20  whatever information I obtained while doing an
21  investigation, yes, sir.
22    Q. Okay. And did you do a report that you
23  would provide to the Street Unit?
24    A. No, we didn't do the report. Not just from
25  information.

34

1    Q. Who would document these -- these transfers
2  of information?
3    A. Document?
4    Q. Yeah. In the form of a police report.
5    A. No -- no report was necessary.
6    Q. Okay. So there was no documentation done up
7  until the time there was an arrest?
8    A. I mean, people would take notes and stuff
9  but it was not a police report though.
10    Q. All right. So what did they do with the
11  information and the notes?
12    A. I'm not sure. I've seen people burn -- burn
13  their information. I've seen people --
14    Q. What I mean --
15    A. -- throw it away because they didn't want
16  nobody else getting it.
17    Q. How long were you undercover? '92 till...
18    A. I'm not sure. About three years, then they
19  disbanded the -- the Street Unit and they made just
20  the Narcotics division.
21    Q. So until approximately '95?
22    A. Yes.
23    Q. And they disbanded the street --
24    A. They short -- they shortened it. It was
25  like 21 people in there at first, you know what I

35

1  mean, like the Street Unit to --
2    Q. Was 21 officers?
3    A. I think it was approximately like
4  20-something officers down there.
5    Q. Okay.
6    A. So they shortened it and made it like 14 or
7  13, something like that. It may be less than that.
8    Q. Why'd they do that?
9    A. To put more people on the street, like --
10    Q. In uniform?
11    A. Yes, sir. New chief took over or whatever
12  and he dis -- not disbanded but --
13    Q. Reduced the size?
14    A. Reduce -- yes, sir.
15    Q. Who was that chief?
16    A. I'm not sure. Might have been Henderson or
17  Harmon. I'm not sure at that time.
18    Q. So as the undercover agent officer with
19  regard to a CI who's giving you information that
20  you're passing on to the Street Unit, you didn't --
21  you did no documentation on it?
22    MR. SHOLTZ: Objection. Misstates
23  testimony. Go ahead.
24    A. Like I said, if I had information I would
25  pass it on and I wouldn't keep no paperwork and stuff.

36

1    Q. (By Mr. Dowd) Okay.
2    A. But most --
3    Q. So the answer's no, you didn't document it?
4    A. No, I didn't.
5    Q. Okay. And did you ever move to the Street
6  Unit anytime?
7    A. Yes, sir, I did.
8    Q. What year was that?
9    A. I think like -- like I said, I think it was
10  '95. I'm not sure on the year.
11    Q. Yeah, that's fine. Just your best estimate.
12    A. Whenever they reduced the size of the --
13    Q. That's when you moved --
14    A. Yes, sir.
15    Q. -- to the Street Unit?
16    A. But I still -- I still bought dope but I
17  was --
18    Q. Doing both?
19    A. -- doing both. Yes, sir.
20    Q. Gotcha. How long were you on the Street
21  Unit?
22    A. Till I think 2000.
23    Q. And were you still buying as of 2000?
24    A. If somebody had an informant and -- depends
25  on where the -- where the dealer was at. If it was a

37

1    area that I did a lot of work at I couldn't buy.
2        Q.  Right.
3        A.  But it was -- yeah, I probably was up until
4    2000.  It wasn't as much as it was when I was
5    undercover but I still -- like if somebody had
6    somebody to introduce I would -- nine times out of ten
7    I'd be the one to try to buy from them.
8        Q.  So you were strictly undercover for about
9    three years and then thereafter you did both some
10   undercover but mostly Street Unit?
11       A.  Street.  Yes.
12       Q.  Which was applying for warrants and
13   executing warrants?
14       A.  Street arrests.  Yes, sir.
15       Q.  What do you mean by "street arrests"?
16       A.  Like you riding down the street and you see
17   somebody selling dope, set up surveillance and go try
18   to apprehend them.  So we didn't just do search
19   warrants.  We did...
20       Q.  Do you know between '95 and -- well, let's
21   say from '92 to 2000 how many arrests you were
22   responsible for?
23       A.  How many arrests I made?
24       Q.  Yeah.
25       A.  I'm not sure.

39

1        Q.  Okay.  So while you were with the Narcotics
2    Unit in either capacity or any capacity were you ever
3    up in the Cates area, north -- north side little bit?
4        A.  I don't recall but I'm sure I may have been.
5        Q.  Okay.  All right.  Did you have areas that
6    you concentrated in?
7        A.  At one point Sal would give everybody a
8    neighborhood that they was responsible for --
9        Q.  Okay.
10       A.  -- and like -- they would set up like
11   neighborhood meetings where the different
12   neighborhoods would come and complain on certain
13   individuals.
14       Q.  All right.  And you would attend those
15   meetings?
16       A.  Yes, sir.
17       Q.  Were you ever on -- were you ever assigned a
18   neighborhood in north St. Louis?
19       A.  I can't remember.  I'm not sure.
20       Q.  You know where the Cates neighborhood is?
21       A.  Yes.
22       Q.  Okay.  Were you ever assigned to that area?
23       A.  I'm not sure.  I'm really not.  I don't
24   remember.
25       Q.  So the first time you heard of Michael

38

1        Q.  Can you give us an estimate?
2        A.  I couldn't estimate.  I made a lot of
3    arrests.  I'm not sure of the number.
4        Q.  Okay.  Do you know how many search warrants
5    you applied for?
6        A.  No, sir, I don't.
7        Q.  No idea?
8        A.  No, sir.
9        Q.  Any idea how many CIs you had working for
10   you?
11       A.  No, sir.
12       Q.  When did Michael Holmes -- when did you
13   first hear something about Michael Holmes?
14       A.  I was in Mobile Reserve then.
15       Q.  What year would that have been that you went
16   to Mobile Reserve?
17       A.  I think I was in mobile from 2000 to 2005.
18       Q.  So with regard to '92 to 2000 you never had
19   any information about Michael Holmes?
20       A.  Not that I recall.
21       Q.  Were you -- during that time period were you
22   ever -- well, it's my understanding with regard to the
23   Narcotics Unit you traveled citywide and into the
24   county?
25       A.  Yes, sir.

40

1    Holmes was on this occasion that you executed the
2    warrant on Cates?
3        A.  There wasn't a warrant.  It was a consent to
4    search.
5        Q.  I'm sorry.
6        A.  The best I can recall, yes, sir.
7        Q.  Okay.  And if I told you that was on
8    October 29 of '97, does that sound right to you?
9        MR. SHOLTZ:  Objection.  Misstates facts.
10   Foundation.  I believe that's the date for Stephen
11   Jones.
12       MR. DOWD:  Ah.
13       Q.  (By Mr. Dowd)  Do you recall the first thing
14   that you did with regard to this -- this alleged
15   consent search at Cates?
16       MR. SHOLTZ:  Objection.  Argumentative.
17   Vague.  Go ahead.
18       A.  The first thing?
19       Q.  (By Mr. Dowd)  Yeah.
20       A.  I mean, I'm not sure what you --
21       Q.  What brought it to your attention?  Did you
22   get a call on the radio?
23       A.  I got a call.
24       Q.  So Mobile Reserve is -- is sort of backup to
25   the Narcotics Unit when they're going to execute a

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                Shelli Sharp
                                                                                                 April 9, 2014

41

1    search warrant? Is that a fair statement?
2         A. I think at that time Mobile Reserve did some
3    of the search warrants for the different units --
4         Q. Okay.
5         A. -- and sometimes Narcotics would call for
6    the -- you know, to do the execution of a warrant.
7         Q. Okay. But they'd call who?
8         A. Mobile.
9         Q. Okay. And do you recall who called Mobile
10   Reserve for the Cates residence?
11        A. It was an informant.
12        Q. I'm sorry?
13        A. It was an informant.
14        Q. That called the Mobile Reserve?
15        A. They called me.
16        Q. What did he say to you? Was it a he or a
17   she?
18        A. It was a he.
19        Q. What did he tell you?
20        A. Told me he was at a location and this guy
21   had a large amount of crack cocaine, told me the guy's
22   name, and told me what the guy had on.
23        Q. What name did he tell you?
24        A. I think they called him Big Mike or
25   something.

FAX 314-241-6750                  Gore Perry Reporting and Video                  www.goreperry.com
                                       314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                Shelli Sharp
                                                                                                 April 9, 2014

42

1         Q. What did you do with that information?
2              MR. SHOLTZ: Objection. Vague. Go ahead.
3         A. I tried to get the guy to tell him to meet
4    him at a location. The guy wanted -- wanted the money
5    to do the drug deal. We didn't have any money so I
6    contacted Bobby Garrett. I knew they was in plain --
7    plain clothes. Well, I advised my sergeant what I was
8    gonna do.
9         Q. (By Mr. Dowd) Is that Cira?
10        A. No. That was Silas Hardison.
11        Q. What's the last name?
12        A. Hardison.
13        Q. Hardison?
14        A. Yeah.
15        Q. Okay. He was a sergeant?
16        A. Yes.
17        Q. What did you tell him?
18        A. I told him we had this guy over there and
19   the informant was up there with him and -- but the guy
20   wanted to do the drug deal right there but we didn't
21   have no money.
22        Q. He wanted money to go buy drugs from the
23   Cates residence?
24        A. The guy -- Big Mike had the drugs right
25   there. He wanted him to give him -- provide him money

FAX 314-241-6750                  Gore Perry Reporting and Video                  www.goreperry.com
                                       314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                Shelli Sharp
                                                                                                 April 9, 2014

43

1    but he didn't have no money.
2         Q. Big Mike had the drugs where?
3         A. Right there with him.
4         Q. On the street?
5         A. I believe so.
6         Q. This is what the confidential informant told
7    you?
8         A. Yes, sir.
9         Q. He said, "I think he's got money in his car"
10   -- I mean -- I'm sorry -- "I think he's got drugs in
11   his car"?
12        A. He told me he saw a guy with a brown paper
13   bag full of crack cocaine.
14        Q. And did he say where he was located?
15        A. Yes.
16        Q. Where?
17        A. Right -- right outside the Cates house.
18        Q. What description did he give you?
19        A. I think heavyset black male with a gold
20   sweatsuit on or a yellow sweatsuit.
21        Q. Anything else?
22        A. I think that was it.
23        Q. With a gold sweatsuit?
24        A. I think it was gold. I'm not sure.
25        Q. Okay. What else did he tell you?

FAX 314-241-6750                  Gore Perry Reporting and Video                  www.goreperry.com
                                       314-241-6750

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.                Shelli Sharp
                                                                                                 April 9, 2014

44

1         A. He just said he had a big bag of dope and he
2    wanted him to do the drug deal, but like I said, we
3    didn't have no money.
4         Q. How much was he talking about buying?
5         A. I'm not sure of the amount.
6         Q. Did he want a lot of money or...
7         A. He wanted in thousands. Yes.
8         Q. Okay. What happened then?
9         A. I contacted Bobby Garrett and used his car
10   to conduct surveillance of the guy.
11        Q. What guy?
12        A. Big Mike. Michael Holmes.
13        Q. So you got in a car with Bobby Garrett?
14             MR. SHOLTZ: Objection. Misstates
15   testimony.
16        Q. (By Mr. Dowd) You said you used Garrett's
17   car.
18        A. Yes.
19        Q. Was he undercover?
20        A. I guess they was. They was in plain
21   clothes. I'm not sure of the title.
22        Q. Okay. And what kind of car did he have?
23        A. I'm not sure of the make and model of the
24   car.
25        Q. Was it one of those white unmarked police

FAX 314-241-6750                  Gore Perry Reporting and Video                  www.goreperry.com
                                       314-241-6750

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

45

1       cars?
2           A. It was a civilian car. It wasn't a police
3       car. No, it was probably a rental car. I'm not sure
4       of the make and model.
5           Q. Okay. So you undertook surveillance with
6       Bobby Garrett?
7               MR. SHOLTZ: Objection. Misstates
8       testimony.
9           A. I was in there with Allen Ray.
10          Q. (By Mr. Dowd) So you used Garrett's car but
11      did it with Allen Ray?
12          A. Yes, sir.
13          Q. What happened?
14          A. We observed what we believed to be several
15      drug deals conducted by Michael Holmes.
16          Q. Describe those to me, please.
17          A. I'm not sure. Car pulled up, you see them
18      exchange something and he did currency in exchange for
19      whatever he gave the person.
20          Q. And you decided that there had been a drug
21      deal?
22          A. Appeared to be a drug deal.
23          Q. Okay. Did you report that to anybody?
24          A. Report it?
25          Q. Yeah. You had a radio with you; correct?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

47

1           A. We never -- like I said, we never tried to
2       alert the dealer. Some people got cell phones and
3       once the car's pulling over they could just call and
4       tell them, "Hey, man, police must be up there, they
5       pulled me over" or whatever. So we didn't want
6       anybody stopping them to alert them and usually we
7       didn't even try for the buyer's information because
8       we wanted the dealer.
9           Q. (By Mr. Dowd) But this person who had, in
10      your opinion, just purchased drugs had just committed
11      a crime; correct?
12              MR. SHOLTZ: Objection. Argumentative.
13      Relevance.
14          A. Yes, sir.
15          Q. (By Mr. Dowd) And aren't you required to
16      investigate and arrest where crimes have been
17      committed?
18              MR. SHOLTZ: Objection. Argumentative.
19      Calls for a legal conclusion.
20              MR. RELYS: Join.
21              MR. HOELL: Join.
22          A. At that time we was trying to get the drug
23      dealer. We was gonna make an arrest.
24          Q. (By Mr. Dowd) What did you do -- how many
25      vehicles?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

46

1           A. Yes.
2           Q. Did you report it to anybody that there was
3       a vehicle leaving the Cates area --
4           A. No, sir.
5           Q. -- who appeared to just make a narcotics
6       buy?
7           A. No, sir. They may have warned Michael
8       Holmes that we were in the area to conduct
9       surveillance of him.
10          Q. Did you get any information from the
11      vehicle, ask anyone to get the license plate or
12      anything on the vehicle?
13          A. No, sir. We didn't want to alert the drug
14      dealer.
15          Q. You couldn't see the car from where you were
16      sitting?
17          A. I'm not sure of the make and model cars.
18      That was awhile ago.
19          Q. Well, I know. I'm not asking you today but
20      you were close enough at the time that you could see
21      the vehicle --
22              MR. SHOLTZ: Objection. Argumentative.
23          Q. (By Mr. Dowd) -- and get the make and
24      model.
25              MR. SHOLTZ: Argumentative.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

48

1           A. I think it was approximately three.
2           Q. Did you get any identification on any of
3       those vehicles?
4           A. No, sir, I didn't.
5           Q. Or -- or the individuals --
6           A. No, sir, I didn't.
7           Q. -- that made these alleged purchases?
8           A. No, sir, I did not.
9           Q. How long did you observe the Cates
10      residence?
11          A. I'm not sure. Just -- we saw the
12      transactions and we left.
13          Q. So you have no idea how long you watched the
14      house?
15          A. I'm not sure how long we watched it.
16          Q. What'd you do then?
17          A. Went back and told the supervisor what we
18      observed.
19          Q. Back to the precinct?
20          A. No. We met somewhere on the street.
21          Q. Where did you meet?
22          A. I'm not sure where we met at.
23          Q. Who was -- was this the same supervisor?
24          A. Yes, sir, it was.
25          Q. What was his name?

**49**

1      A.  Silas Hardison.
2      Q.  Then what did you do?
3      A.  We decided we was gonna try to do a consent
4    to search the residence.
5      Q.  And who did that?
6      A.  Who did that?
7      Q.  Yes.
8      A.  Me along with members of the Mobile Reserve.
9      Q.  I'm sorry?
10     A.  Me along with members of the Mobile Reserve
11   Unit.
12     Q.  Okay.  What about Bobby Garrett?
13     A.  I'm not sure if Bobby went.  I don't
14   think -- he may have been there but we -- Mobile
15   Reserve did the -- did everything in there.
16     Q.  What exactly did you do?
17     A.  Approached the residence and informed a lady
18   of the information we received and got her to sign
19   consent to search.
20     Q.  Who was the lady?
21     A.  I guess a lady determined to had been his
22   grandmother.
23     Q.  Did you ask her if she owned the residence?
24     A.  I believe she said she did.
25     Q.  Do you remember asking her?

---

**51**

1      A.  Allen Ray.  Maury.
2      Q.  Officer Maury?
3      A.  Yes.
4      Q.  M-A-U-R-Y?
5      A.  I'm not sure of the spelling of his name.  I
6    think Tambo may have been there.  Ernst.  Ernst.
7    Tambo.  I'm not sure who all was there.
8      Q.  How many do you think were there?
9      A.  Seven, eight.  I'm not sure.
10     Q.  Then what'd you do?  You said you entered
11   the residence.  Through the front door?
12     A.  Yes, sir.
13     Q.  Okay.  Then what happened?
14     A.  Went in the residence and saw a black male
15   coming down the steps, the same one we had saw outside
16   with the gold sweatsuit on.
17     Q.  How far -- were you in the front of this
18   group of officers?  Were you the first one to enter?
19     A.  I might have been in second going up the
20   steps after talking with the lady.
21     Q.  Okay.  So your recollection is there was one
22   officer in front of you?
23     A.  I believe so.  I'm not sure.
24     Q.  And do you know who that was?
25     A.  It was Allen Ray.

---

**50**

1      A.  Yes, sir.
2      Q.  Then what'd you do?  Well, where -- where
3    did you talk to her?  Did she come out on the front
4    porch?
5      A.  I believe she was on the front porch when we
6    came up.
7      Q.  Okay.  And what did she -- what did she
8    actually say to you?  Did you say, "Can I search your
9    house?" and she said, "Yeah, go ahead"?
10     A.  She signed a consent first and she said -- I
11   don't recall exactly what she said, but she gave us
12   consent to go in there and search.
13     Q.  Do you have information as we sit here today
14   whether or not she owned that house?
15         MR. SHOLTZ:  Objection.  Legal conclusion.
16   Relevance.  Speculation.
17     A.  I'm not sure who owned it.
18     Q.  (By Mr. Dowd)  Okay.  What did you do then?
19     A.  Entered the residence.
20     Q.  Who entered the residence?
21     A.  Me along with other members of the Mobile
22   Reserve.
23     Q.  Who was that?
24     A.  I'm not sure everybody that was there.
25     Q.  Do you remember anybody?

---

**52**

1      Q.  You said you saw an individual coming down
2    the stairs?
3      A.  Yes, sir.
4      Q.  Where were you located at the time when you
5    saw him?
6      A.  We was coming up the stairs.
7      Q.  What stairs?
8      A.  There was rear stairs inside house that lead
9    to the upstairs.
10     Q.  So you had -- you had gone how far when you
11   saw this individual?
12     A.  I'm not sure.  We was coming up the steps,
13   he was coming down.
14     Q.  Okay.  But how far had you traveled inside
15   the house to get to the stairs?
16     A.  I don't -- man, I can't recall where the --
17   how the house --
18     Q.  I mean were you just inside the house?
19     A.  No.  We was at the stairwell.  Wherever the
20   stairs that lead upstairs is, we were coming up the
21   steps, he was coming down.
22     Q.  How many steps away -- how many steps had
23   you gone up before you saw someone?
24     A.  I'm not -- I'm not sure of the -- how many
25   steps but we saw the guy coming, he saw us.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

53

```
1        Q.  Well, I know.  I know.  But where were you?
2        A.  We were on the steps.  I don't know -- we
3    were --
4        Q.  Had you gone up three flights of steps?
5        A.  No, we didn't go --
6        Q.  Had you gone up 20 steps?  Or had you gone
7    up two or three?
8        A.  We didn't go up that many.
9        MR. SHOLTZ:  Compound.  Let him ask you.
10       Q.  (By Mr. Dowd)  How many steps had you gone
11   up before you saw this individual?
12       A.  I'm not sure.  I'm not sure the amount of
13   steps.
14       Q.  You have no idea?
15       A.  No, sir.
16       Q.  How far away was he when you saw him?
17       MR. SHOLTZ:  Objection.  Asked and answered.
18       A.  I'm not sure.
19       Q.  (By Mr. Dowd)  You don't remember that
20   either?
21       A.  No, sir.
22       Q.  You can't picture that in your mind's eye?
23       MR. SHOLTZ:  Objection.  Argumentative.
24   Asked and answered.
25       Q.  (By Mr. Dowd)  You can answer.
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

54

```
1        A.  I can't picture where he was at.  He saw us,
2    we saw him.
3        Q.  You have no idea where he was on the stairs?
4        A.  No.
5        MR. SHOLTZ:  Asked and answered.
6    Argumentative.  Badgering.
7        Q.  (By Mr. Dowd)  That's a no?
8        A.  No, sir, I don't.
9        Q.  And you have no idea where you were on the
10   steps?
11       MR. SHOLTZ:  Same objection.  Richard, are
12   you gonna listen to his answer this time?
13       A.  No, sir.
14       Q.  (By Mr. Dowd)  Do you know whether or not
15   you can see those stairs from the front door?
16       MR. SHOLTZ:  Objection.  Argumentative.
17   Relevance.
18       Q.  (By Mr. Dowd)  You can answer.
19       A.  I don't recall.  We was on the stairwell
20   leading up the steps.
21       Q.  So you don't remember anything about the
22   inside of the house?
23       MR. SHOLTZ:  Objection.  Argumentative.
24   Misstates prior testimony.
25       Q.  (By Mr. Dowd)  You can answer.
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

55

```
1        A.  No, sir.
2        Q.  What did you do after that?
3        A.  After he observed us he dropped the bag,
4    went back up the steps, I retrieved the bag and Allen
5    Ray went and got him.
6        Q.  Everybody else stayed with you?
7        A.  No.  They went up the steps too.
8        Q.  I'm sorry?
9        A.  I believe they went up there too.
10       Q.  Did they tell you where they found him?
11       A.  It was the third floor, I believe.
12       Q.  Did you do anything else with regard to that
13   arrest?
14       A.  I don't understand the question.
15       Q.  So you stayed on the stairs with the bag?
16       A.  No.  I went up there and placed him under
17   arrest, advised him of his rights.
18       Q.  So it was your arrest?
19       A.  Yes, sir, it was.
20       Q.  Did he agree to make a statement?
21       A.  I don't recall.
22       Q.  What'd you do next?
23       A.  We searched the rest of the residence.
24       Q.  What did you find?
25       A.  Found a Thompson machine gun -- I believe it
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

56

```
1    was Thompson machine gun; some currency; shotgun; and
2    some heroin.
3        Q.  How much heroin?
4        A.  I think it was approximately an ounce.  I'm
5    not sure of the amount exactly.
6        Q.  Anything else?
7        A.  No, that was it that I recall.
8        Q.  Okay.  What did you do with those items?
9    Were you the seizing officer?
10       A.  Yes, sir, I was.
11       Q.  What did you do with those items?
12       A.  Took them to the lab and I took to the
13   others to the property.
14       Q.  Took them to the lab and did what with them?
15       A.  Gave them to the lab.
16       Q.  Okay.
17       A.  Gave the money to forfeiture, the guns go to
18   the firearms, and the dope go to the laboratory.
19       Q.  Okay.  Did you have these items dusted for
20   finger -- well, let me ask you this first:  Were any
21   of those items found on Mr. Holmes' person?
22       A.  When I saw him drop the bag nothing else was
23   on him, no, sir.
24       Q.  Okay.  These items you just described, none
25   of those were on his person?
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

14  (Pages 53 to 56)

673dff41-cd10-417a-8877-77706b0cb81f

57

1       **A.** No, sir.
2       **Q.** Did you have them all tested for
3   fingerprints?
4       MR. SHOLTZ: Objection. Foundation. Calls
5   for a legal conclusion. Speculation.
6       **Q.** (By Mr. Dowd) You were the seizing officer;
7   correct?
8       **A.** Yes, sir.
9       **Q.** So it would be your job to ask that they be
10  fingerprinted?
11      MR. SHOLTZ: Calls for a legal conclusion.
12  Argumentative. Speculation.
13      **Q.** (By Mr. Dowd) Would that be your job if
14  somebody was gonna ask for that?
15      MR. SHOLTZ: Same objections.
16      **A.** Yes.
17      **Q.** (By Mr. Dowd) Did you?
18      **A.** I'm not sure.
19      **Q.** Why wouldn't you?
20      MR. SHOLTZ: Argumentative. Calls for a
21  legal conclusion. Relevance.
22      **Q.** (By Mr. Dowd) Why wouldn't you have them
23  fingerprinted if they weren't on his person?
24      MR. SHOLTZ: Same objections.
25      **A.** We didn't charge him with nothing but the

59

1       **Q.** What else did you do with regard to Michael
2   Holmes?
3       **A.** I took him to the station and booked him in.
4       **Q.** Who was the confidential informant that gave
5   you this information about Cates?
6       MR. SHOLTZ: Objection. That's a closed
7   record.
8       **Q.** (By Mr. Dowd) Are you gonna answer?
9       **A.** I don't want to give up his name because his
10  family may be harmed.
11      **Q.** Okay. I'll certify it.
12          What else did you do with regard to the
13  arrest of Michael Holmes?
14      **A.** I took him to the station and see would he
15  provide information and he wouldn't. Booked him in
16  and he was transported to prisoner processing.
17      **Q.** Anything else?
18      MR. SHOLTZ: Objection. Vague.
19      **Q.** (By Mr. Dowd) You can answer.
20      **A.** Anything else like what?
21      **Q.** Yeah. You took him in and turned him over
22  to prisoner processing?
23      **A.** I'm not sure if I did or the cruiser driver
24  took him downtown.
25      **Q.** Okay.

58

1   dope. I mean, the other stuff was just recovered, I
2   believe.
3       **Q.** (By Mr. Dowd) Did you have the dope tested
4   for fingerprints?
5       **A.** I'm not sure. I don't recall.
6       **Q.** Is there any reason that you wouldn't?
7       **A.** I mean, I saw him drop it. I mean, if I
8   didn't see him drop it we would probably tested it,
9   I'm not sure, but if you saw him drop it why would you
10  have to have them -- have it fingerprinted?
11      **Q.** To establish that it was actually in his
12  hands.
13      MR. SHOLTZ: Objection. Is that a question?
14  It's not a question. Don't answer it.
15      **Q.** (By Mr. Dowd) Did you ever take
16  fingerprints off of drug bags?
17      MR. SHOLTZ: Objection. Relevance.
18      **Q.** (By Mr. Dowd) Ever asked that the lab test
19  drug bags for fingerprints?
20      MR. SHOLTZ: Same objection.
21      **A.** Yes.
22      **Q.** (By Mr. Dowd) Was there any department
23  policy that required you to have items tested for
24  fingerprints?
25      **A.** Not that I know of, no, sir.

60

1       **A.** Yes.
2       **Q.** Did you do anything else?
3       **A.** I think that's it.
4       **Q.** Okay. You never -- you never questioned him
5   at the station?
6       **A.** I stated that earlier. He didn't want to
7   talk so --
8       **Q.** So at the station you didn't talk to him?
9       **A.** Yeah, at the station. Yes, sir.
10      **Q.** Okay. Where did that take place?
11      **A.** I guess it's like the -- a little area of
12  the office, the Mobile Reserve office.
13      **Q.** Okay. And he refused to talk to you?
14      **A.** Yes. He didn't want to say anything.
15      **Q.** Okay. What did -- what did you -- did you
16  do anything else with regard to that arrest?
17      **A.** That was it.
18      **Q.** Okay. What did you review before coming to
19  your deposition here?
20      **A.** What did I review?
21      **Q.** Yeah.
22      **A.** I had a copy of the report. I didn't -- I
23  didn't really review that though.
24      **Q.** What report?
25      **A.** Michael Holmes.

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

61

1      Q.  Okay.  Anything else?
2      A.  Stephen Jones.
3      Q.  Okay.  So you looked at the police report
4   that was generated with regard to the arrest of
5   Michael Holmes and that's it?
6      A.  Stephen Jones too.  Not today.  I didn't --
7   I haven't looked at it.
8      Q.  What about in the months leading up to your
9   deposition?  What did you review?
10     A.  Nothing.
11     Q.  No transcripts, no -- of your testimony?
12     A.  I believe I had that but I -- I didn't want
13  to read it actually so I viewed the two police reports
14  and I came here today.
15     Q.  Did you see in the report where you stated
16  that when you entered the house you saw Mr. Holmes
17  coming down the stairs?
18     A.  I believe that's what I stated.
19     Q.  Your report was closest to the time of the
20  incident?
21     A.  Approximately.  Yes, sir.
22     Q.  Not approximately.  It was closer to the
23  time of the incident to your testimony at trial?
24     A.  I'm not sure.
25     Q.  In time.  You did the report within a matter

62

1   of days of the arrest; correct?
2      A.  Yes, sir.
3      Q.  Okay.  So that would be the most accurate
4   description of the events?
5      MR. SHOLTZ:  Objection.  Argumentative.
6      A.  Yes, sir, what I wrote, yes.
7      Q.  (By Mr. Dowd)  Did you have a partner at the
8   time of the Holmes arrest?
9      A.  Allen Ray.
10     Q.  It was Allen Ray?
11     A.  Yes, sir.
12     Q.  And how long was he your partner?
13     A.  I'm not sure.
14     Q.  Were you ever partners with Bobby Garrett?
15     A.  Never.
16     Q.  How about Vincent Carr?
17     A.  Yeah, I was partners with Vincent.
18     Q.  How long?
19     A.  About four or five years.
20     Q.  What years were those?
21     A.  I think like '95 to 2000 I think.
22     Q.  Was Bobby Garrett on the scene at the time
23  of the Holmes arrest?
24     MR. SHOLTZ:  Objection.  Asked and answered.
25     A.  I think he was but it was -- it was all

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.
Shell Sharp
April 9, 2014

63

1   Mobile Reserve.  It was my investigation, it was my
2   unit that did everything.
3      Q.  (By Mr. Dowd)  He lent you his car and he
4   stuck around?
5      A.  He did?  Bobby knew?
6      Q.  Yeah.  Bobby Garrett.
7      A.  Yeah.  I think so.  I think they were there.
8   They were standing around.
9      Q.  Did you ever talk to Bobby Garrett about --
10  about gambling?
11     A.  Gambling?
12     Q.  Yeah.
13     A.  No.
14     Q.  Did you know he gambled?
15     A.  Bobby?
16     MR. SHOLTZ:  Objection.
17     Q.  (By Mr. Dowd)  Yeah.
18     MR. SHOLTZ:  Relevance.  Misstates --
19     Q.  (By Mr. Dowd)  You can answer.
20     MR. SHOLTZ:  -- prior testimony.
21  Foundation.  Assumes facts not in evidence.
22     A.  I'm not sure.
23     Q.  (By Mr. Dowd)  You never heard that he liked
24  to gamble?
25     MR. SHOLTZ:  Objection.  Same objections.

64

1      A.  I'm not sure what Bobby did.  Me and Bobby
2   worked together and we wasn't running buddies, like I
3   wouldn't go to bars with him and he -- we worked
4   together.  I don't know what he did with his private
5   life.
6      Q.  (By Mr. Dowd)  Okay.  Did you ever hear that
7   though?
8      MR. SHOLTZ:  Same objections.
9      A.  I'm not sure.
10     Q.  (By Mr. Dowd)  That maybe he had a gambling
11  problem?
12     A.  Bobby?
13     Q.  Yeah.
14     MR. SHOLTZ:  Same objection.  Asked and
15  answered.
16     Q.  (By Mr. Dowd)  You're saying you never heard
17  that?
18     MR. SHOLTZ:  Richard, that's what he said.
19     MR. DOWD:  No, I haven't heard an answer.
20     A.  I haven't heard that.
21     Q.  (By Mr. Dowd)  I'm sorry?
22     A.  I haven't heard he had a gambling problem.
23     Q.  You never gambled with him?
24     MR. SHOLTZ:  Objection.  Asked and answered.
25  Badgering.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

65

1    MR. DOWD:  No, it's not asked and answered.
2  If you'd stop objecting we could get this done.
3    MR. SHOLTZ:  Same objections.
4  Argumentative.  Move to strike Counsel's sidebar.
5    Q.  (By Mr. Dowd)  You can answer.
6    A.  I'm not sure.  I think I gambled with Bobby
7  one time.
8    Q.  Okay.  Have you talked to Bobby Garrett
9  since -- during or since his incarceration?
10    A.  Yeah, I talked to him since he -- since he
11  came out.  Not during.
12    Q.  How long ago was that?
13    A.  I'm not sure.  Bobby called me couple months
14  ago I guess we talked several times since.
15    Q.  What did he say?
16    MR. SHOLTZ:  Objection to relevance.
17  Hearsay.
18    Q.  (By Mr. Dowd)  What did he say?
19    MR. SHOLTZ:  Same objections.
20    Q.  (By Mr. Dowd)  You can answer.  The
21  objections are for the Court.
22    A.  Okay.
23    Q.  You can just ignore those.
24    MR. SHOLTZ:  Object to sidebar of Counsel.
25  Go ahead.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

66

1    A.  Basically probably about these lawsuits and
2  he just asked how I was doing and, you know, what I
3  was doing and I asked him general conversation, how he
4  was doing, what he was doing.
5    Q.  (By Mr. Dowd)  About these cases?
6    A.  No, not much about these.  He's just, like,
7  what are you doing in life, working or not working.
8    Q.  But you testified he said -- he called and
9  you called and you talked several times and that you
10  talked about these cases.
11    A.  I said -- you asked me what did we talk
12  about.
13    Q.  Okay.
14    A.  I said he talked some about these lawsuits,
15  then he talked general conversation about --
16    Q.  I understand.
17    A.  -- how I was doing and how he was doing.
18    Q.  That's what I heard you say.  What did he
19  say about these lawsuits?
20    A.  He said it was a bunch of BS.
21    Q.  Anything else?
22    A.  No.
23    Q.  That's all he said, they're a bunch of BS?
24    A.  Yeah.
25    Q.  That's all you can remember?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

67

1    MR. SHOLTZ:  Asked and answered.
2    A.  Yes, sir.
3    MR. SHOLTZ:  You doing okay?  You need a
4  break or anything?
5    THE DEPONENT:  No.  I was just thinking I
6  got a ticket.  Too late now.
7    Q.  (By Mr. Dowd)  Have you a chance to look at
8  your IAD file?
9    A.  No, sir.  I got a copy of it but I haven't
10  looked at it.
11    Q.  Okay.  Do you remember a complaint filed by
12  a Harold White in 1995?
13    A.  Yes, sir.
14    Q.  What was that complaint about?
15    MR. SHOLTZ:  Object to relevance.
16    A.  I'm not sure of the exact nature of it.  I
17  think I got a reprimand for letting him stay in our
18  house.
19    Q.  (By Mr. Dowd)  Do you remember filling out a
20  memo as to the complaint?
21    A.  That's procedure.  Yes, sir.
22    Q.  I'm sorry?
23    A.  That's probably procedure.  Yes, sir.
24    Q.  Okay.  Do you actually remember filling one
25  out?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

68

1    A.  I don't know what I wrote.
2    Q.  No idea?
3    A.  IAD usually have you write a memo.
4    Q.  Okay.  But do you specifically remember
5  writing one on Harold White?
6    A.  They normally have you write a memo on IAD
7  complaint.  I'm not sure what I wrote.
8    Q.  And you don't remember what the complaint
9  was?
10    MR. SHOLTZ:  Objection.  Misstates
11  testimony.  Go ahead.
12    Q.  (By Mr. Dowd)  Do you remember what the
13  complaint was?
14    A.  Like I said, I beat him up or assault him.
15    Q.  Okay.  Anything else?
16    A.  That was it.
17    Q.  Was Harold White an African-American?
18    A.  Yes, sir.
19    Q.  How old a guy is he?
20    A.  I'm not sure.  He's probably in his fifties
21  now.  I'm not sure exact age.
22    Q.  So are you saying you got a written
23  reprimand for beating him up?
24    MR. SHOLTZ:  Objection.  Misstates
25  testimony.  Go ahead.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

69

1   A. I got a written reprimand for letting him
2   stay in the house.
3   Q. (By Mr. Dowd) So you do remember that part
4   of it. What was he convicted of?
5   A. I'm not sure what he was convicted of.
6   Q. You got no idea what he was -- what his
7   felony conviction was?
8   A. No, sir.
9   Q. What about a complaint by a Philanda
10  Jamison? Do you remember anything about that?
11  A. Yes, sir.
12  Q. What was that?
13  A. I believe he said he got beat up but he said
14  that person or persons unknown put a bag over his head
15  and beat him; so that was thrown out or unfounded.
16  Q. Do you know who Philanda Jamison is?
17  A. I don't know. I don't know who he is.
18  Q. Did you ever arrest him?
19  A. I think I did. That was the day of the
20  incident.
21  Q. Do you recall a complaint by Captain David
22  Heath in 1999, September 24th, 1999?
23  A. What was the complaint?
24  Q. I'm asking you if you remember it.
25  A. No, sir.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

71

1   A. We had stopped him and I believe somebody
2   had searched him prior to me searching him but I
3   searched his hatband I believe and the dope was in his
4   hatband. He said it was planted on him by I guess me
5   or another officer.
6   Q. So it was a stop of a motor vehicle?
7   A. I don't -- I don't recall the -- we had
8   frequent contact with him. He was like the
9   neighborhood drug dealer. I don't know if we was on
10  foot or in the car.
11  Q. You don't remember whether it was a
12  vehicle --
13  A. I stopped a lot of cars.
14  Q. -- or a residence?
15  A. I'm not sure. It was 2000. 14 years ago.
16  Q. How about a complaint by Sergeant John
17  Carnaghi of July 12, 2001?
18  A. I don't know about that one.
19  Q. Complaint by Deshawn Jones, January 12th of
20  2006?
21  A. Deshawn Jones?
22  Q. Do you remember anything about that
23  complaint?
24  A. No.
25  Q. What about executing a search warrant at the

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

70

1   Q. So you don't remember writing a memo or
2   anything on it?
3   A. I don't know. Heath -- I'm trying to
4   remember if I didn't do a report on time or something.
5   Q. Do you remember writing a memo in response
6   to the complaint?
7   A. Yes, sir.
8   Q. You do remember writing it?
9   A. I don't remember what I wrote but I had to
10  write a memo. Each time you get a complaint you got
11  to write a memo.
12  Q. I'm asking you if you specifically remember.
13  You keep saying, you know, I didn't -- it was
14  department policy to write a memo.
15  A. I don't remember what I wrote.
16  Q. Do you remember specifically you sitting
17  down and writing the memo?
18  A. No, sir, I don't.
19  Q. You don't remember anything that would have
20  gone in the memo?
21  A. I don't remember. No, sir.
22  Q. How about Gilbert Davis, a complaint from
23  July 25 of 2000?
24  A. Yes, sir, I remember.
25  Q. What was that about?

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

72

1   residence?
2   A. Deshawn.
3   Q. Took some pictures he had of his girlfriend?
4   A. I didn't take no pictures. He said I took
5   pictures. If you would have seen his girlfriend you
6   wouldn't have took no pictures. Everybody seen them
7   pictures. He was mad at me because I locked him up.
8   This girl was (witness indicates).
9   Q. What about the complaint by Earnest Moore
10  Jr.?
11  A. Earnest Moore?
12  Q. From March 22 of 2008.
13  A. I don't remember that.
14  Q. Okay. You don't remember writing a report
15  on it?
16  A. If you tell me what it was it might bring my
17  memory but...
18  Q. With regard to a complaint by Earl Ganaway
19  and Laterryl Saddler?
20  A. Laterryl Saddler? Some of them complaints
21  wasn't on me. I was with the officer and I had to
22  write a memo but they wasn't directed towards me so I
23  don't know particularly, I mean, what they were.
24  Q. This was, as you say, Officer Matthews --
25  A. Yes, sir.

**73**

```
 1        Q. -- threatened Mr. Ganaway?
 2        A. He --
 3        Q. Do you remember it?
 4        A. I don't remember him threatening him.  We
 5    stopped the guy several times and one time I was
 6    explaining that the guy had the dope hidden in his
 7    mother's Escalade in the center console and Matthews
 8    went to get it and broke something in the console so
 9    he made up a lie that Matthews put dope on -- I think
10    they -- his mama made a complaint that he broke the
11    interior of her car.  And this guy, we saw him -- we
12    saw a vehicle like maybe two weeks later, tinted
13    windows, getting off the highway driving erratic or
14    something.  We stopped the car.  It's Earl Ganaway in
15    there.  We arrested him again.  He said we was
16    harassing him.  How would we know he was in that car?
17    And the guy told me in the background, "Oh, man, I
18    went down there.  I didn't say nothing on you.  I just
19    told on the white boy."
20        Q. How about the complaint by Captain John
21    Hayden, April 14, 2009?
22        A. That was unfounded.  It should have been.
23        Q. I'm sorry?
24        A. That was unfounded.  It should have been.
25        Q. And what was the nature of that charge?
```

**75**

```
 1    answered every memo they gave me.  They did
 2    investigation.  I had people calling me for
 3    information I gave trying to find the informant.
 4        Q. You were never told by the St. Louis Police
 5    Department that the investigation into the affidavits
 6    would be terminated if you resigned?
 7        A. I'm not -- I'm not sure what you're saying.
 8        Q. Were you ever told by anyone at the
 9    St. Louis Metropolitan Police Department that the
10    investigation into the affidavits, the falsification
11    of affidavits in support of search warrants, would be
12    terminated if you resigned?
13        MR. SHOLTZ:  Objection.  Argumentative.  Go
14    ahead.
15        A. I was told that --
16        Q. (By Mr. Dowd)  Was that -- did anybody ever
17    tell you that?
18        MR. SHOLTZ:  Same objection.
19        Q. (By Mr. Dowd)  Are you denying that they
20    told you that?
21        MR. SHOLTZ:  Same objection.
22        A. John Hayden, he practically begged me to
23    retire.  He said, "We don't have nothing on you.
24    Jennifer Joyce don't have nothing on you."
25        Q. (By Mr. Dowd)  Okay.  So you're telling us
```

**74**

```
 1        A. What month was that?
 2        Q. April 19th of 2009.
 3        A. I don't know what they charged me with.  I
 4    know they didn't never find I did anything wrong.
 5        Q. That you falsified search warrant
 6    affidavits.
 7        A. That was never --
 8        Q. You don't remember that?
 9        A. I remember John Hayden telling me they
10    didn't see nothing that I did wrong.
11        Q. But you refused to talk to --
12        A. I talked -- I provided every information
13    that they needed and they told me in the end, "We
14    don't have nothing on you."
15        Q. And that's why you left the department under
16    charges?
17        A. I wasn't under charges.  I was under
18    allegation that they can't prove.  I was never charged
19    with anything internally or criminally.  Never.  John
20    Hayden did what Jennifer Joyce wanted him to do.
21        Q. Is it your testimony that you didn't refuse
22    to answer questions when you were questioned by the
23    department?
24        A. I answered every question.  Who would say
25    that?  I answered every question they gave me.  I
```

**76**

```
 1    -- your testimony here today is that nobody ever told
 2    you "If you resign we will terminate this
 3    investigation into your false affidavits"?
 4        MR. SHOLTZ:  Objection.  Argumentative.
 5    Assumes facts not in evidence.  Legal conclusion.
 6    Relevance.
 7        Q. (By Mr. Dowd)  Nobody ever told you that?
 8        MR. SHOLTZ:  Same objections.
 9        A. I don't recall.  Only thing I recall is him
10    telling me --
11        Q. (By Mr. Dowd)  The answer's no, you don't
12    remember anybody ever telling you that?
13        MR. SHOLTZ:  Same objections.
14        Q. (By Mr. Dowd)  That "If you retire we will
15    stop our investigation into false affidavits"?
16        MR. SHOLTZ:  Same objections.
17        A. No, sir.
18        Q. (By Mr. Dowd)  Why'd you retire?
19        A. Well, first of all, whoever was leaking that
20    stuff to the Post-Dispatch was giving out bad
21    information and they put my name in the paper 13
22    times.  They had criminals in there that committed
23    crime with more times -- less times in the paper than
24    me.  How could I go out here and be a police officer
25    again with all this -- nothing.
```

77

1    **Q.** So is it your testimony that you never used
2 old affidavits and just changed the names and the
3 dates and the locations?
4    **A.** No. You had to change everything other than
5 that. You had to change the description of the guy.
6    **Q.** Okay. So that's your testimony, that you
7 never used the same information other than the
8 address, the name, and the dates on the affidavits?
9    **A.** Description of the guy, description of the
10 building, how many times, what you saw --
11   **Q.** Mr. Sharp --
12   **A.** -- during the surveillance.
13   **Q.** We can talk about that but the question is:
14 Is it your testimony that you never used affidavits,
15 old affidavits, and just changed the name of the
16 individual, the location, and the dates?
17   **A.** Sir, I provided everything with Jennifer
18 Joyce office required and the search warrant
19 affidavit, the surveillance of the residence,
20 description of the guy, description of the house, and
21 how many days -- the three days of surveillance.
22   **Q.** So you never used the same search warrant --
23   **A.** How could I?
24   **Q.** -- affidavit and only changed those three
25 items?

78

1          MR. SHOLTZ: Objection.
2    **Q.** (By Mr. Dowd) That's the question.
3          MR. SHOLTZ: Objection. Argumentative.
4          MR. DOWD: And I'm gonna answer it -- I'm
5 gonna ask it till I get an answer.
6          MR. SHOLTZ: He's given you an answer. Same
7 objections. Badgering.
8    **A.** Whatever Jennifer Joyce office required I
9 put in the --
10   **Q.** (By Mr. Dowd) If you want to just say "no,"
11 that's fine if that's your answer.
12         Did you ever use the same information in
13 affidavits and only change the name of the individual,
14 the location, and the date?
15   **A.** If I had the same informant, which they
16 found out I did, why would I change that?
17   **Q.** Because there's a lot more information in
18 the affidavit than those three items.
19   **A.** What's the other stuff? What's the other
20 items?
21   **Q.** Well, there's a lot of other items that
22 you're supposed to include in an affidavit; correct?
23   **A.** Which I did. They were signed by
24 attorney --
25   **Q.** Is the answer --

79

1    **A.** -- and signed by a judge.
2    **Q.** -- no, that you never did that? You never
3 used the same affidavits and just changed the name,
4 the location, and the date?
5          MR. SHOLTZ: Objection. Argumentative.
6 Asked and answered.
7    **Q.** (By Mr. Dowd) You're telling me no. Is
8 that your answer?
9          MR. SHOLTZ: Same objections.
10   **Q.** (By Mr. Dowd) You never did that?
11   **A.** No.
12   **Q.** Thank you. Do you remember a complaint by
13 Vernita Bruce from January 3rd of 2000?
14   **A.** Yes, sir.
15   **Q.** Okay. And what was that complaint?
16   **A.** She said I took some money from her.
17   **Q.** Do you remember how much?
18   **A.** No, sir.
19   **Q.** If your IAD file stated that it was $1500
20 taken from her and only 20 returned, does that --
21   **A.** That's what she said, yes, sir.
22   **Q.** Okay. And that complaint was sustained?
23         MR. SHOLTZ: Objection. Misstates facts.
24 Assumes facts not in evidence. Foundation.
25 Argumentative.

80

1          MR. HOELL: Join.
2    **Q.** (By Mr. Dowd) Do you remember that
3 complaint being sustained?
4          MR. SHOLTZ: Same objections.
5    **Q.** (By Mr. Dowd) It's just a simple question.
6 Do you remember that complaint being sustained?
7          MR. SHOLTZ: Same objections.
8    **A.** They sustained it for me not getting a
9 written proper receipt from her after I returned the
10 money to her.
11   **Q.** (By Mr. Dowd) You did return the $1500?
12   **A.** Yes, sir.
13   **Q.** Where was it?
14   **A.** Where was it?
15   **Q.** Yeah. When she was saying she didn't get it
16 back.
17   **A.** I don't know where it was.
18   **Q.** I'm sorry?
19   **A.** I don't know where it was.
20   **Q.** But she didn't get it back when she was
21 released; correct?
22         MR. SHOLTZ: Argumentative. Misstates
23 facts. Assumes facts not in evidence.
24   **Q.** (By Mr. Dowd) If you remember.
25         MR. SHOLTZ: Same objections.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

81

1      **Q.** (By Mr. Dowd) That's why she filed the
2  complaint?
3         MR. SHOLTZ: Same objections. Would you
4  give him a chance to answer?
5      **A.** She said she didn't get it back.
6      **Q.** (By Mr. Dowd) Right. And then you --
7      **A.** They investigate -- huh?
8      **Q.** And then you gave it back to her once she
9  filed the complaint?
10     **A.** No. I gave it back before she filed the
11  complaint. I locked her brother up twice. Her
12  brother, I just locked him up for traffic --
13     **Q.** That's nonresponsive to the question. The
14  question is did you initially not return the money to
15  her until a complaint was filed?
16         MR. SHOLTZ: Objection. Argumentative.
17  Relevance. Misstates facts. Assumes facts not in
18  evidence.
19         MR. HOELL: Join.
20         MR. RELYS: Asked and answered.
21     **Q.** (By Mr. Dowd) You can answer.
22         MR. SHOLTZ: Same objection.
23     **A.** I returned the money to her.
24     **Q.** (By Mr. Dowd) Do you remember when?
25     **A.** That day.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

83

1  way this works is you ask a question, we can object,
2  and then he answers. Give him a chance to answer
3  after I object instead of --
4         MR. DOWD: If you'd stop interrupting him
5  with your silly objections.
6         MR. SHOLTZ: I can sit here and object,
7  Richard.
8         MR. DOWD: They're silly and you know it.
9         MR. SHOLTZ: Richard, I'm not gonna debate
10  you. The way it works, you ask a question, I object,
11  and then he answers.
12         MR. DOWD: Don't tell me how it works.
13         MR. SHOLTZ: I had assumed you would have
14  learned that by now.
15         MR. DOWD: Don't --
16     **Q.** (By Mr. Dowd) You can answer.
17         MR. SHOLTZ: Same objections. Go ahead.
18     **A.** I'm not sure. I thought we had. I'm not
19  sure.
20     **Q.** (By Mr. Dowd) You don't specifically
21  remember --
22     **A.** No, sir, I don't.
23     **Q.** -- ever getting any? Do you know an Officer
24  William Noonan?
25     **A.** Yes, sir.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

82

1      **Q.** So why did she file a complaint?
2         MR. SHOLTZ: Speculation. Argumentative.
3  Relevance.
4         MR. HOELL: Join.
5      **A.** I've had drug dealers say I shot at them.
6  They filed complaints. They make up lies. They had
7  sisters go lie, mothers, fathers, cousins.
8      **Q.** (By Mr. Dowd) Did you ever receive any
9  ethics training while you were with the St. Louis
10  Metropolitan Police Department?
11     **A.** I'm sure I did, yes, sir.
12     **Q.** When was that?
13     **A.** I'm not sure of the dates.
14     **Q.** Do you remember how often?
15     **A.** I'm not sure, sir.
16     **Q.** If your personnel file reflects that you
17  never had any ethics training --
18     **A.** I never had any?
19     **Q.** -- would that surprise you?
20     **A.** I thought we did.
21         MR. SHOLTZ: Objection. Assumes facts not
22  in evidence. Misstates facts.
23         MR. HOELL: Join.
24     **Q.** (By Mr. Dowd) That would surprise you?
25         MR. SHOLTZ: Same objections. Richard, the

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

84

1      **Q.** And where do you know him from? A
2  particular unit?
3      **A.** We were assigned to the First District
4  together.
5      **Q.** What years were those?
6      **A.** That was, like I said, '89, '91.
7      **Q.** Do you know why Officer Noonan left the
8  department?
9         MR. SHOLTZ: Objection. Relevance.
10     **A.** Search warrants.
11     **Q.** (By Mr. Dowd) Did they ever bring him up
12  when the department was discussing your search
13  warrants?
14     **A.** Did they bring him up?
15     **Q.** Yeah.
16     **A.** I think so.
17     **Q.** You think so?
18     **A.** Like -- I don't understand what you mean,
19  "bring him up."
20     **Q.** Did they talk to you about the fact that
21  Officer Noonan was doing the same thing that you
22  allegedly did?
23         MR. SHOLTZ: Objection. Argumentative.
24     **A.** I'm not sure. They wouldn't tell me what
25  his investigation was.

85

1    **Q.** (By Mr. Dowd)  Did you know that they told
2    him that "If you retire we won't continue this
3    investigation"?
4        **A.** I believe they found him in a lie.  They
5    never found me in one and he had to retire.
6        **Q.** What was that lie?
7        **A.** I'm not sure.
8        **Q.** You have no idea?
9        **A.** No.  I just heard rumors through the
10   department.
11       **Q.** Who else were you partners with in your
12   career with the St. Louis Metropolitan Police
13   Department?
14       **A.** I'm not sure.  What year?
15       **Q.** I'm sorry?
16       **A.** What year?
17       **Q.** I'm just asking you.  Doesn't matter what
18   year.  Who were your partners?
19       **A.** I don't know.
20       **Q.** That's -- that's pretty important to an
21   officer who their partner is.
22       **A.** The last one was Matthews.
23       **Q.** Okay.
24       **A.** And I'm not sure who it was before that.
25   Lot of times you rode by yourself, one-man cars.

87

1        **A.** I'm not sure.  Like I said, when Mobile was
2    changing over they would switch us up and that's
3    basically it.  The other -- like when I was in the
4    district I was mostly by myself, like when I left, but
5    I wasn't there long.  I was in Narcotics, I left, then
6    for a few months I was in the Third, then I went to
7    Mobile.  When I left Mobile I was in Third again for a
8    few months, then I went to the Seventh.
9        **Q.** Is that -- does that help your recollection
10   as to anybody else that you might have been partners
11   with?
12       **A.** Yeah because like when you're in the
13   district, mostly you're by yourself.  Like I said, if
14   they need a two-man car but you're not, per se,
15   partners, you might ride with this guy today and
16   tomorrow you'd be in a one-man car.
17       **Q.** So as you sit here today the ones you
18   remember as your partners are Officer Matthews,
19   Officer Roger Patterson, Officer Allen Ray, and
20   Officer Antoine Gordon?
21       **A.** And I rode with Vincent back in Narcotics.
22       **Q.** How long?
23       **A.** I told you, about five years.
24       **Q.** Anybody else?
25       **A.** I told you earlier --

86

1        **Q.** I understand.  But the question is who were
2    you partners with?  How long were you partners with
3    Matthews?
4        **A.** I think approximately three years.
5        **Q.** Okay.  Who else were you partners with?
6        MR. SHOLTZ:  Objection.  Asked and answered.
7        MR. DOWD:  Not answered.
8        **A.** Roger Patterson.
9        **Q.** (By Mr. Dowd)  How long?
10       **A.** I'm not sure.  Year or two years.
11       **Q.** Who else?
12       **A.** Allen Ray.
13       **Q.** How long?
14       **A.** I'm not sure.  Year maybe.  When we was in
15   Mobile they was switching to hostage-trained and
16   non-hostage-trained --
17       **A.** Mm-hmm.
18       **A.** -- and I wasn't hostage-trained; so...
19       **Q.** Teamed you up with somebody who was?
20       **A.** Yeah.  Different -- different guys.
21       **Q.** Anybody else?
22       **A.** I rode with Antoine Gordon a little while.
23       **Q.** Antoine what?
24       **A.** Gordon.
25       **Q.** How long?

88

1        **Q.** I'm just trying to get --
2        **A.** -- Jimmy Smith.  Like I said, he was a older
3    guy when I first started.
4        **Q.** Yeah.
5        **A.** I rode with Julius Conners.  That was like
6    off and on, like I said, and the best I can recollect
7    that's it.  Most of the other time I was -- I was a
8    one-man car.
9        **Q.** Okay.  I'm gonna take a quick break.  Five
10   minutes.
11       MR. DOWD:  Any objections?
12       MR. RELYS:  No objection.
13       (A brief recess was had.)
14       **Q.** (By Mr. Dowd)  Excuse me.  One more Holmes
15   question.  You had a lawyer represent you with regard
16   to the investigation of your search warrant
17   affidavits; correct?
18       **A.** Yes, sir.
19       **Q.** And you maintain that you did nothing wrong
20   but you resigned under -- under internal charges?
21       **A.** No charges.  Under -- what is that? --
22   allegation but they never brought charges because,
23   like I said, I talked to Hayden before I left, Captain
24   Hayden, and --
25       **Q.** Who else was -- who --

89

1    A.  Who else was present there?  Sergeant Von
2  Malottke, Sergeant -- he was white.
3    Q.  Is this at that meeting before you resigned?
4    A.  Yes.  Before I retired.  I told Von
5  Malottke, the sergeant, that --
6    Q.  What position was he?
7    A.  He was the IAD investigator.
8    Q.  Okay.
9    A.  I was sitting there four months.  I was
10  tired of everything going -- I knew I had done nothing
11  wrong so I asked him could I speak to his superior,
12  and Captain Hayden came in there.
13    Q.  Okay.  And your lawyer was there?
14    A.  Brison, Ken Brison.
15    Q.  And you had a discussion with Captain
16  Hayden?
17    A.  Yes, sir.
18    Q.  And after that discussion you said, "I'm not
19  answering any questions"?
20    A.  I never said that.  That's a lie.  I
21  answered every question they asked.
22    Q.  Did you see in the paperwork where they say
23  you refused to answer questions?
24    A.  No.
25    Q.  You didn't know that?

91

1  they couldn't prove.  I sat there four months for them
2  to prove.
3    Q.  What I'm trying to understand is how -- you
4  just said there were -- they didn't charge you until
5  April.
6    A.  They didn't charge me -- well, I mean they
7  didn't tell me about why I was there, the allegation,
8  until April.  I was never charged with anything.
9    Q.  And nobody ever told you that if you -- if
10  you retire we will halt any investigation?
11    A.  No.  I was talking to Hayden.  Hayden was
12  trying to be my buddy.  He said, "Hey, Shell, man, go
13  ahead and retire, man.  You can still get your pension
14  plus you could get another job."  Like I was doing
15  them a favor.
16    Q.  And you did -- you did keep your pension?
17    A.  Yes, sir.  I was never charged with
18  anything.
19    Q.  Were you eligible for re-hire?
20    A.  I'm not sure.  I got a -- I still got my
21  police certification.
22    Q.  Far as you know you weren't eligible for
23  re-hire?
24    MR. SHOLTZ:  Objection.  Misstates
25  testimony.

90

1    A.  No.  That was a lie.  They told lies like
2  the newspaper told lies.  Every question Von Malottke
3  asked me -- I wrote like four or five different memos.
4  I'm sitting there for four months.  Every other week
5  -- they didn't charge me until April.  I was taken off
6  the street in February.  They didn't charge me with
7  anything until two months later.  I sat in
8  communications doing nothing.  And that was my
9  accusation, whatever, the search warrants.  Once they
10  investigated, they found out who my informant was,
11  they found out everything I told was the truth -- I
12  was tired of going through them putting the newspaper
13  articles in there.  My family was in there suffering
14  because I had done nothing wrong and the guys that is
15  out there, when it came to them and I told Hayden,
16  "Let me talk to my lawyer a minute."  He told me that
17  Jennifer Joyce was pushing the issue but she said she
18  didn't have no charges on me.  So Hayden --
19    Q.  No criminal charges.
20    A.  No.
21    Q.  You just testified that there were charges
22  within the department.
23    A.  There was no charges.  It was an allegation.
24  I was never charged with anything.  There's a
25  difference from being charged and a allegation that

92

1    A.  I'm not sure.  I was never charged with
2  anything.
3    Q.  (By Mr. Dowd)  Did you file any kind of an
4  appeal?
5    A.  I went to the EEOC to file a complaint.  I
6  was told there that -- the lady told me that she felt
7  on the basis of my complaint that she wouldn't accept
8  it.  She said that Chief Isom was a black male,
9  approximately my age, and Bill Noonan was a white male
10  so she felt that I didn't have a complaint.
11    Q.  Complaint based on race?
12    A.  Yes.
13    Q.  With regard to the arrest of Michael Holmes,
14  did you fingerprint the items seized?
15    MR. SHOLTZ:  Objection.  Argumentative.
16  Asked and answered.
17    A.  I did not.  I'm not sure if they were.
18    Q.  (By Mr. Dowd)  You were the seizing officer;
19  correct?
20    A.  Yes, sir, I was.
21    Q.  You would have had to request them; right?
22    MR. SHOLTZ:  Objection.  Legal conclusion.
23  Misstates facts.  Go ahead.
24    Q.  (By Mr. Dowd)  You can answer.
25    A.  Not unless the federal prosecutor asked.

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

93

```
1     MR. DOWD:  Okay.  Now I'm going to move on
2  to Jones --
3     MR. SHOLTZ:  I think --
4     MR. DOWD:  -- Stephen Jones.
5     MR. SHOLTZ:  So we're ending this transcript
6  and we're gonna start a new one?
7     MR. DOWD:  Yeah.
8     MR. SHOLTZ:  Do either of you have any
9  questions.
10    MR. RELYS:  No questions.
11    MR. HOELL:  No questions.
12    MR. SHOLTZ:  We'll read.
13
14    (Whereupon, deposition was concluded and
15       will be signed by the witness.)
16
17
18
19
20
21
22
23
24
25
```

FAX 314-241-6750                Gore Perry Reporting and Video                www.goreperry.com
                                    314-241-6750

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

95

```
1  propounded by counsel and remarks and objections of
2  counsel thereto, and is in all respects a full, true,
3  correct and complete transcript of the questions
4  propounded to and the answers given by said witness,
5  that signature of the deponent was not waived by
6  agreement of counsel and of witness.
7     I further certify that I am not of counsel or
8  attorney for either of the parties to said suit, not
9  related to nor interested in any of the parties or
10  their attorneys.
11    Witness my hand at St. Louis, Missouri, this 21st
12  day of April 2014.
13
14
15  _____
16  Heather L. Shallow, CCR, RPR, RMR
17  CCR No. 0442
18
19
20
21
22
23
24
25
```

FAX 314-241-6750                Gore Perry Reporting and Video                www.goreperry.com
                                    314-241-6750

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

94

```
1          C E R T I F I C A T E
2
3     I, Heather L. Shallow, Certified Court Reporter
4  within and for the State of Missouri, duly
5  commissioned, qualified and authorized to administer
6  oaths and to certify to depositions, do hereby certify
7  that pursuant to notice/agreement in the cause now
8  pending and undetermined in the United States District
9  Court for the Eastern District of Missouri, to be used
10  in the trial of said cause in said court, I was
11  attended at the State of Missouri Attorney General's
12  Office, 815 Olive Street, Suite 210, in the city of
13  St. Louis, State of Missouri, by the aforesaid
14  witness, and by the aforesaid attorneys, on the 9th
15  day of April 2014.
16    That the said witness, being of sound mind and
17  being by me first carefully examined and duly
18  cautioned and sworn to testify the truth, the whole
19  truth, and nothing but the truth in the case
20  aforesaid, thereupon testified as is shown in the
21  foregoing transcript, said testimony being by me
22  reported in shorthand and caused to be transcribed
23  into typewriting, and that the foregoing pages
24  correctly set forth the testimony of the
25  aforementioned witness, together with the questions
```

FAX 314-241-6750                Gore Perry Reporting and Video                www.goreperry.com
                                    314-241-6750

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

96

```
1  GorePerry Reporting & Video
2  Monday, April 21, 2014
3
   Philip Sholtz
4  Assistant Attorney General
   815 Olive Street, Suite 200
5  St. Louis, MO, 63101
6  Re: Deposition of Shell Sharp
   Date:Wednesday, April 09, 2014
7  Case:Michael Holmes vs. Board of Police
   Commissioners of the City of St. Louis, et al.
8
9  Philip Sholtz
10  Your witness did not waive the right to read and sign
   his/her deposition in the above referenced matter.
11  Enclosed is the copy of the deposition you ordered,
   together with errata sheets and additional signature
12  page.  Please instruct your witness to read the
   transcript, list any corrections (including page and
13  line number) on the errata sheets, sign and date the
   errata sheets and signature page.
14
   Within 30 days, please return the errata sheets and
15  signature page to our office for further processing.
16  Your prompt cooperation will be appreciated.
17  Sincerely,
18
19
20
21
22
23  Production Department
   GorePerry Reporting & Video
24  515 Olive Street
   St. Louis, MO  63101
25  (314) 241-6750
```

FAX 314-241-6750                Gore Perry Reporting and Video                www.goreperry.com
                                    314-241-6750

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

**97**

```
1      Page Line Should Read:
2      Reason for change:
3
4      Page Line Should Read:
5      Reason for change:
6
7      Page Line Should Read:
8      Reason for change:
9
10     Page Line Should Read:
11     Reason for change:
12
13     Page Line Should Read:
14     Reason for change:
15
16     Page Line Should Read:
17     Reason for change:
18
19     Page Line Should Read:
20     Reason for change:
21
22     Page Line Should Read:
23     Reason for change:
24
25
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

**98**

```
1      Page Line Should Read:
2      Reason for change:
3
4      Page Line Should Read:
5      Reason for change:
6
7      Page Line Should Read:
8      Reason for change:
9
10     Page Line Should Read:
11     Reason for change:
12
13     Page Line Should Read:
14     Reason for change:
15
16     Page Line Should Read:
17     Reason for change:
18
19     Page Line Should Read:
20     Reason for change:
21
22     Page Line Should Read:
23     Reason for change:
24
25
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

**99**

```
1      Comes now the witness, Shell Sharp,
2      and having read the foregoing transcript
3      of the deposition taken on 4/9/2014,
4      acknowledges by signature hereto that it is a
5      true and accurate transcript of the testimony given
6      on the date hereinabove mentioned.
7
8
9      _____
10     Shell Sharp
11
12     Subscribed and sworn to me before this
13     _____ day of _____,20____.
14     My Commission expires
15
16
17     _____
18     Notary Public
19
20
21
22
23
24
25
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

**100**

```
1      COURT MEMO
2
3
4
5      Michael Holmes vs. Board of Police Commissioners of the
6      City of St. Louis, et al.
7
8      CERTIFICATE OF OFFICER AND
9      STATEMENT OF DEPOSITION CHARGES
10
11     DEPOSITION OF Shell Sharp
12
13     4/9/2014
14     Name and address of person or firm having custody of
15     the original transcript:
16
17     Dowd & Dowd
18     211 North Broadway, Suite 4050
19     St. Louis, MO 63101
20
21
22
23
24
25
```

FAX 314-241-6750

Gore Perry Reporting and Video
314-241-6750

www.goreperry.com

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

101

```
 1    ORIGINAL TRANSCRIPT TAXED IN FAVOR OF:
 2
 3    Dowd & Dowd
 4    211 North Broadway, Suite 4050
 5    St. Louis, MO 63101
 6    Total:
 7    1 ONE COPY - TAXED IN FAVOR OF:
 8
 9    Assistant Attorney General
10    815 Olive Street, Suite 200
11    St. Louis, MO 63101
12    Total:
13
14
15
16
17
18
19
20
21
22
23
24
25
```

FAX 314-241-6750          Gore Perry Reporting and Video          www.goreperry.com
                              314-241-6750

---

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

102

```
 1    Upon delivery of transcripts, the above
 2    charges had not been paid.  It is anticipated
 3    that all charges will be paid in the normal course
 4    of business.
 5    GORE PERRY GATEWAY & LIPA REPORTING COMPANY
 6    515 Olive Street, Suite 700
 7    St. Louis, Missouri 63101
 8    IN WITNESS WHEREOF, I have hereunto set
 9    STATEMENT OF DEPOSITION CHARGES
10    my hand and seal on this _____ day of _____
11    Commission expires
12    _____
13    Notary Public
14
15
16
17
18
19
20
21
22
23
24
25
```

FAX 314-241-6750          Gore Perry Reporting and Video          www.goreperry.com
                              314-241-6750

673dff41-cd10-417a-8877-77706b0cb81f

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 103

| A | | | | |
|---|---|---|---|---|
| **academy** 21:8 | 88:22 90:23,25 | **apprehend** 37:18 | 49:25 69:24 70:12 | 55:4,15 56:22 |
| **accept** 92:7 | 91:7 | **apprehension** 20:8 | 85:17 | 69:14 |
| **accurate** 62:3 99:5 | **alleged** 40:14 48:7 | **approached** 49:17 | **assault** 68:14 | **bags** 58:16,19 |
| **accusation** 90:9 | **allegedly** 84:22 | **approximately** | **assaulted** 21:9 | **bars** 64:3 |
| **acknowledges** 99:4 | **allen** 45:9,11 51:1 | 12:16 20:17 34:21 | **assign** 18:6 19:16 | **barton** 9:13 |
| **additional** 96:11 | 51:25 55:4 62:9 | 35:3 48:1 56:4 | **assigned** 13:18 | **based** 92:11 |
| **address** 77:8 | 62:10 86:12 87:19 | 61:21,22 86:4 | 14:19,25 18:11 | **basic** 7:19 |
| 100:14 | **allied** 9:12 | 92:9 | 22:5,7 32:7,8 | **basically** 33:15 |
| **admin** 11:13 | **allowed** 29:14 | **april** 1:24 2:22 | 39:17,22 84:3 | 66:1 87:3 |
| **administer** 94:5 | **amount** 41:21 44:5 | 73:21 74:2 90:5 | **assignment** 16:21 | **basis** 92:7 |
| **administration** | 53:12 56:5 | 91:5,8 94:15 | 16:24 18:2 | **bathrooms** 16:12 |
| 11:13 | **answer** 7:20 8:15 | 95:12 96:2,6 | **assignments** 17:24 | **beat** 14:25 15:23 |
| **advised** 42:7 55:17 | 9:25 11:23 14:13 | **area** 18:13 37:1 | **assistant** 96:4 | 16:4 68:14 69:13 |
| **affidavit** 77:19,24 | 17:24 23:23 29:12 | 39:3,22 46:3,8 | 101:9 | 69:15 |
| 78:18,22 | 53:25 54:12,18,25 | 60:11 | **assumed** 83:13 | **beating** 68:23 |
| **affidavits** 74:6 75:5 | 58:14 59:8,19 | **areas** 18:8,11 39:5 | **assumes** 63:21 76:5 | **beds** 8:25 |
| 75:10,11 76:3,15 | 63:19 64:19 65:5 | **arent** 47:15 | 79:24 80:23 81:17 | **begged** 75:22 |
| 77:2,8,14,15 | 65:20 74:22 78:4 | **argumentative** | 82:21 | **beginning** 9:19 |
| 78:13 79:3 88:17 | 78:5,6,11,25 79:8 | 26:17 28:17,19 | **attain** 11:10 | **behalf** 2:18 |
| **aforementioned** | 81:4,21 83:2,16 | 40:16 46:22,25 | **attend** 10:20 39:14 | **believe** 40:10 43:5 |
| 94:25 | 89:23 92:24 | 47:12,18 53:23 | **attended** 94:11 | 49:24 50:5 51:23 |
| **aforesaid** 7:4 94:13 | **answered** 25:25 | 54:6,16,23 57:12 | **attention** 40:21 | 55:9,11,25 58:2 |
| 94:14,20 | 28:10 53:17,24 | 57:20 62:5 65:4 | **attorney** 2:19 3:14 | 61:12,18 69:13 |
| **africanamerican** | 54:5 62:24 64:15 | 75:13 76:4 78:3 | 3:23 4:9 78:24 | 71:1,3 85:4 |
| 18:23 68:17 | 64:24 65:1 67:1 | 79:5,25 80:22 | 94:11 95:8 96:4 | **believed** 45:14 |
| **afternoon** 7:12 | 74:24,25 75:1 | 81:16 82:2 84:23 | 101:9 | **bellerive** 15:12 |
| **age** 7:2 68:21 92:9 | 79:6 81:20 86:6,7 | 92:15 | **attorneys** 94:14 | **best** 25:8 26:9 |
| **agent** 35:18 | 89:21 92:16 | **arrest** 30:12,20 | 95:10 | 31:18 36:11 40:6 |
| **ago** 4:3 24:23 46:18 | **answering** 89:19 | 34:7 47:16,23 | **authorized** 94:5 | 88:6 |
| 65:12,14 71:15 | **answers** 36:3 76:11 | 55:13,17,18 59:13 | **available** 21:21 | **big** 41:24 42:24 |
| **agree** 55:20 | 83:2,11 95:4 | 60:16 61:4 62:1,8 | **aware** 16:17 | 43:2 44:1,12 |
| **agreement** 94:7 | **anthony** 3:21 | 62:23 69:18 92:13 | **awhile** 46:18 | **bill** 92:9 |
| 95:6 | **anticipated** 102:2 | **arrested** 73:15 | | **bit** 39:3 |
| **ah** 40:12 | **antoine** 86:22,23 | **arrests** 32:25 37:14 | B | **black** 15:1 19:13 |
| **ahead** 9:24 13:23 | 87:20 | 37:15,21,23 38:3 | **back** 9:19 14:15,22 | 43:19 51:14 92:8 |
| 14:6 19:20 24:17 | **anybody** 45:23 | **articles** 90:13 | 15:17 20:18,18 | **blacks** 19:11,11 |
| 30:15 35:23 40:17 | 46:2 47:6 50:25 | **asked** 21:1,11,12 | 48:17,19 55:4 | **board** 1:11 2:11 4:5 |
| 42:2 50:9 65:25 | 75:16 76:12 86:21 | 21:23 25:25 28:9 | 80:16,20 81:5,8 | 96:7 100:5 |
| 68:11,25 75:14 | 87:10,24 | 53:17,24 54:5 | 81:10 87:21 | **bobby** 42:6 44:9,13 |
| 83:17 91:13 92:23 | **anytime** 36:6 | 58:18 62:24 64:14 | **background** 73:17 | 45:6 49:12,13 |
| **ahold** 25:1 | **appeal** 92:4 | 64:24 65:1 66:2,3 | **backup** 21:12 | 62:14,22 63:5,6,9 |
| **al** 1:12 2:12 96:8 | **appearances** 3:1 | 66:11 67:1 79:6 | 40:24 | 63:15 64:1,1,12 |
| 100:6 | **appeared** 45:22 | 81:20 86:6 89:11 | **bad** 14:7 29:3 | 65:6,8,13 |
| **alert** 46:13 47:2,6 | 46:5 | 89:21 90:3 92:16 | 76:20 | **book** 24:8,15 25:1 |
| **allegation** 74:18 | **applied** 11:3 38:5 | 92:25 | **badgering** 54:6 | 26:9 28:5 |
| | **applying** 37:12 | **asking** 7:11 26:3 | 64:25 78:7 | **booked** 59:3,15 |
| | **appreciated** 96:16 | 28:14 29:19 46:19 | **bag** 43:13 44:1 55:3 | **born** 9:20 |

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

**boss** 13:2
**bought** 22:10 36:16
**box** 3:16,25 4:11
**boy** 73:19
**boyfriend** 30:1
**break** 67:4 88:9
**brief** 88:13
**bring** 72:16 84:11
  84:14,19
**brison** 89:14,14
**broadway** 3:6
  15:13 100:18
  101:4
**broke** 73:8,10
**brother** 81:11,12
**brought** 40:21
  88:22
**brown** 43:12
**bruce** 79:13
**bs** 66:20,23
**buddies** 64:2
**buddy** 91:12
**building** 77:10
**bunch** 66:20,23
**burn** 34:12,12
**bus** 16:3
**buses** 32:19
**business** 102:4
**buy** 37:1,7 42:22
  46:6
**buyers** 47:7
**buying** 23:12 36:23
  44:4

      **C**

**c** 3:5 94:1,1
**call** 22:16 26:20
  30:3 33:14 40:22
  40:23 41:5,7 47:3
**called** 21:1 24:19
  32:13,15,16 41:9
  41:14,15,24 65:13
  66:8,9
**calling** 29:10 75:2
**calls** 47:19 57:4,11
  57:20
**cant** 7:20 15:12,21

21:3,10 25:13,13
  26:10 39:19 52:16
  53:22 54:1 74:18
**capacity** 39:2,2
**captain** 22:3 69:21
  73:20 88:23 89:12
  89:15
**car** 14:1 16:1,25
  17:13 18:7 19:2,3
  19:14 43:9,11
  44:9,13,17,22,24
  45:2,3,3,10,17
  46:15 63:3 71:10
  73:11,14,16 87:14
  87:16 88:8
**career** 85:12
**carefully** 94:17
**carnaghi** 71:17
**carondelet** 15:11
**carr** 3:20 62:16
**cars** 19:7 45:1
  46:17 47:3 71:13
  85:25
**case** 7:4 25:15
  26:19,25 94:19
  96:7
**cases** 22:17 66:5,10
**cates** 5:5 39:3,20
  40:2,15 41:10
  42:23 43:17 46:3
  48:9 59:5
**caught** 16:3 26:24
**cause** 94:7,10
**caused** 94:22
**cautioned** 94:18
**ccr** 95:16,17
**cell** 47:2
**center** 73:7
**cero** 27:7
**certain** 39:12
**certificate** 100:8
**certification** 91:21
**certified** 2:22 5:1
  94:3
**certify** 59:11 94:6,6
  95:7
**chance** 67:7 81:4

83:2
**change** 77:4,5
  78:13,16 97:2,5,8
  97:11,14,17,20,23
  98:2,5,8,11,14,17
  98:20,23
**changed** 77:2,15,24
  79:3
**changing** 87:2
**charge** 22:1 57:25
  73:25 90:5,6 91:4
  91:6
**charged** 74:3,18
  90:24,25 91:8,17
  92:1
**charges** 74:16,17
  88:20,21,22 90:18
  90:19,21,23 100:9
  102:2,3,9
**chief** 35:11,15 92:8
**christopher** 4:7
**ci** 28:16 35:19
**cira** 27:6,9,10,25
  28:2 29:13 42:9
**cis** 27:24 38:9
**city** 1:12 2:12,21
  4:6 94:12 96:8
  100:6
**citywide** 38:23
**civilian** 45:2
**class** 21:8
**classes** 27:13
**classified** 27:1
**classify** 20:2
**clear** 8:5
**cleared** 16:11
**clerk** 11:13
**close** 46:20
**closed** 8:9 59:6
**closer** 61:22
**closest** 61:19
**clothes** 42:7 44:21
**cocaine** 41:21
  43:13
**college** 11:2
**colonel** 20:25 21:2
  21:4,5,10,25

**come** 7:24 18:14
  21:1,23 25:11
  39:12 50:3
**comes** 99:1
**coming** 51:15 52:1
  52:6,12,13,20,21
  52:25 60:18 61:17
**commission** 99:14
  102:11
**commissioned** 94:5
**commissioners**
  1:11 2:11 4:5
  96:8 100:5
**committed** 47:10
  47:17 76:22
**communications**
  90:8
**company** 9:1 102:5
**compensate** 31:15
**complain** 39:12
**complaint** 67:11,14
  67:20 68:7,8,13
  69:9,21,23 70:6
  70:10,22 71:16,19
  71:23 72:9,18
  73:10,20 79:12,15
  79:22 80:3,6 81:2
  81:9,11,15 82:1
  92:5,7,10,11
**complaints** 72:20
  82:6
**complete** 95:3
**compound** 24:16
  53:9
**concentrated** 39:6
**concluded** 93:14
**conclusion** 47:19
  50:15 57:5,11,21
  76:5 92:22
**conduct** 30:16,21
  31:4,11 44:10
  46:8
**conducted** 45:15
**confidential** 5:4
  22:21 23:18 43:6
  59:4
**conners** 18:22,25

88:5
**consent** 40:3,15
  49:3,19 50:10,12
**console** 73:7,8
**contact** 71:8
**contacted** 42:6 44:9
**continue** 85:2
**conversation** 66:3
  66:15
**convey** 33:11
**conveyed** 33:7
**convicted** 8:9 69:4
  69:5
**conviction** 69:7
**cooperation** 96:16
**copy** 60:22 67:9
  96:11 101:7
**corner** 20:8 31:12
**corporal** 11:11
**corps** 11:5,12,17
**correct** 20:23 23:5
  45:25 47:11 57:7
  62:1 78:22 80:21
  88:17 92:19 95:3
**corrections** 96:12
**correctly** 94:24
**couldnt** 37:1 38:2
  46:15 91:1
**counsel** 3:1 8:12
  65:24 95:1,2,6,7
**counsels** 65:4
**county** 38:24
**couple** 19:6 20:19
  21:14 65:13
**course** 27:15 102:3
**court** 1:1 2:1,23
  65:21 94:3,9,10
  100:1
**cousins** 82:7
**crack** 41:21 43:13
**crew** 22:8,9
**crime** 47:11 76:23
**crimes** 47:16
**criminal** 10:24
  90:19
**criminally** 74:19
**criminals** 76:22

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 105

**cruiser** 59:23
**currency** 45:18
  56:1
**custody** 100:14

**D**

**date** 40:10 78:14
  79:4 96:6,13 99:6
**dates** 77:3,8,16
  82:13
**david** 69:21
**davis** 70:22
**day** 2:21 29:10
  69:19 81:25 94:15
  95:12 99:13
  102:10
**days** 18:13,16 62:1
  77:21,21 96:14
**dea** 27:14,14,16
**deaconess** 12:19
  13:8
**deal** 42:5,20 44:2
  45:21,22
**dealer** 29:25 30:5
  30:18 36:25 46:14
  47:2,8,23 71:9
**dealers** 22:19,24
  24:19 82:5
**dealing** 16:13
**deals** 45:15
**debate** 83:9
**decided** 45:20 49:3
**decision** 29:18
**defendant** 3:11,20
  4:5
**defendants** 1:14
  2:14
**degree** 10:22
**delivery** 102:1
**dennis** 12:22 13:2
**denying** 75:19
**department** 9:17
  11:19 12:3 13:6
  13:13 14:8 19:15
  58:22 70:14 74:15
  74:23 75:5,9
  82:10 84:8,12

**85:10,13 90:22**
  96:23
**depends** 36:24
**deponent** 67:5 95:5
**deposes** 7:4
**deposition** 1:23
  2:18 7:16 60:19
  61:9 93:14 96:6
  96:10,11 99:3
  100:9,11 102:9
**depositions** 94:6
**describe** 45:16
**described** 56:24
**description** 43:18
  62:4 77:5,9,9,20
  77:20
**deshawn** 71:19,21
  72:2
**detached** 20:5 32:8
**detail** 16:7 21:15
**detective** 28:4
**detectives** 22:1,18
  22:21
**determine** 7:25
**determined** 49:21
**didnt** 12:2 13:21
  16:1 17:14,18
  21:11 22:8 24:18
  24:21 25:4 28:25
  33:24 34:15 35:20
  36:3,4 37:18 42:5
  42:20 43:1 44:3
  46:13 47:5,7 48:4
  48:6 53:5,8 57:25
  58:8 60:6,8,14,22
  60:23 61:6,12
  70:4,13 72:4
  73:18 74:4,10,21
  80:15,20 81:5
  89:25 90:5,6,18
  91:4,6,7 92:10
**difference** 90:25
**different** 18:11
  20:12 22:17 27:13
  27:16,19 29:21
  30:11,22 39:11
  41:3 86:20,20

**90:3**
**directed** 72:22
**dis** 35:12
**disbanded** 34:19
  34:23 35:12
**discharge** 11:9
**discharged** 11:14
**discussing** 84:12
**discussion** 89:15,18
**district** 1:1,2 2:1,2
  13:18,19 14:21
  15:6 17:1 18:3,13
  18:15 21:7 32:9
  84:3 87:4,13 94:8
  94:9
**division** 1:3 2:3
  34:20
**document** 12:3
  25:10,22 29:14,15
  34:1,3 36:3
**documentation**
  34:6 35:21
**documented** 25:6
  25:22,24 26:5,6
  26:15,22 28:8
  29:1,11
**documenting** 22:25
  23:10 24:7 27:24
  28:16
**doesnt** 85:17
**doing** 9:4 33:20
  36:18,19 66:2,3,4
  66:4,7,17,17 67:3
  84:21 90:8 91:14
**dont** 7:13,18 13:1
  14:7 15:18,19
  17:19 24:3 25:15
  29:5,12 38:6 39:4
  39:23 49:13 50:11
  52:16 53:2,19
  54:8,19,21 55:14
  55:21 58:5,14
  59:9 64:4 68:1,8
  69:17,17 70:1,3,9
  70:15,18,19,21
  71:7,7,9,11,18
  72:13,14,23 73:4

**74:3,8,14 75:23**
  75:24 76:9,11
  80:17,19 83:12,15
  83:20,22 84:18
  85:19
**door** 29:3,23 51:11
  54:15
**dope** 22:10,12
  23:12 24:3 29:25
  30:5,18 31:3
  36:16 37:17 44:1
  56:18 58:1,3 71:3
  73:6,9
**dowd** 3:4,5,5 6:2
  7:7,10 8:14,17,18
  9:25 11:25 12:7
  13:24 14:9,18,21
  16:17 19:18,24
  23:4,23 24:24
  25:17 26:2,8,14
  26:23 27:11 28:11
  28:14,15,18,22
  29:19 30:23 31:22
  36:1 40:12,13,19
  42:9 44:16 45:10
  46:23 47:9,15,24
  50:18 53:10,19,25
  54:7,14,18,25
  57:6,13,17,22
  58:3,15,18,22
  59:8,19 62:7 63:3
  63:17,19,23 64:6
  64:10,16,19,21
  65:1,5,18,20 66:5
  67:7,19 68:12
  69:3 75:16,19,25
  76:7,11,14,18
  78:2,4,10 79:7,10
  80:2,5,11,24 81:1
  81:6,21,24 82:8
  82:24 83:4,8,12
  83:15,16,20 84:11
  85:1 86:7,9 88:11
  88:14 92:3,18,24
  93:1,4,7 100:17
  100:17 101:3,3
**dowdlaw** 3:9

**dowds** 30:18
**downtown** 59:24
**drive** 15:24
**driver** 59:23
**driving** 73:13
**drop** 56:22 58:7,8,9
**dropped** 55:3
**drug** 16:13 22:24
  24:19 30:3 42:5
  42:20 44:2 45:15
  45:20,22 46:13
  47:22 58:16,19
  71:9 82:5
**drugs** 30:7,25
  42:22,24 43:2,10
  47:10
**duly** 7:2 94:4,17
**dusted** 56:19

**E**

**e** 94:1,1
**earl** 72:18 73:14
**earlier** 60:6 87:25
**earnest** 72:9,11
**eastern** 1:2,3 2:2,3
  94:9
**eeoc** 92:5
**eight** 51:9
**either** 39:2 53:20
  93:8 95:8
**eligible** 91:19,22
**enclosed** 96:11
**ended** 21:20
**enter** 51:18
**entered** 13:12
  50:19,20 51:10
  61:16
**entire** 13:8
**equipment** 8:24 9:2
**ernst** 51:6,6
**errata** 96:11,13,13
  96:14
**erratic** 73:13
**escalade** 73:7
**esq** 3:4,12,21 4:7
**establish** 58:11
**estimate** 25:8 26:9

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 106

31:18 36:11 38:1
38:2
**et** 1:12 2:12 96:8
100:6
**ethics** 82:9,17
**evening** 12:14
**events** 62:4
**everybody** 16:9
39:7 50:24 55:6
72:6
**evidence** 30:24
63:21 76:5 79:24
80:23 81:18 82:22
**exact** 67:16 68:21
**exactly** 49:16 50:11
56:5
**examination** 6:2
7:6
**examined** 94:17
**exchange** 45:18,18
**excuse** 88:14
**execute** 40:25
**executed** 40:1
**executing** 37:13
71:25
**execution** 41:6
**exhibits** 6:5,6
**exited** 13:12
**expires** 99:14
102:11
**explaining** 73:6
**eye** 53:22

**F**

**f** 94:1
**face** 15:21
**facilities** 12:17
**fact** 84:20
**facts** 40:9 63:21
76:5 79:23,24
80:23,23 81:17,17
82:21,22 92:23
**fair** 8:1 11:21 12:4
41:1
**false** 76:3,15
**falsification** 75:10
**falsified** 74:5

**family** 30:2 59:10
90:13
**far** 51:17 52:10,14
53:16 91:22
**fargo** 11:18,21
12:11,21 13:4
**fathers** 82:7
**favor** 91:15 101:1,7
**fbi** 27:14
**february** 90:6
**federal** 92:25
**feel** 29:2 30:5
**felons** 8:9
**felony** 69:7
**felt** 92:6,10
**females** 29:25
**fifties** 68:20
**file** 20:23 67:8
79:19 82:1,16
92:3,5
**filed** 67:11 81:1,9
81:10,15 82:6
**filling** 67:19,24
**find** 15:9 24:4 25:1
55:24 74:4 75:3
**fine** 36:11 78:11
**finger** 56:20
**fingerprint** 92:14
**fingerprinted**
57:10,23 58:10
**fingerprints** 57:3
58:4,16,19,24
**firearms** 56:18
**firm** 100:14
**first** 7:2 12:7,9
13:19 14:21 15:2
15:4,5 16:25 18:4
20:3,4,19 21:7
22:6 31:4,6,9 32:8
34:25 38:13 39:25
40:13,18 50:10
51:18 56:20 76:19
84:3 88:3 94:17
**five** 10:21 24:14
25:9 62:19 87:23
88:9 90:3
**flights** 53:4

**floor** 3:15,24 4:10
55:11
**follow** 33:7
**follows** 7:5
**foot** 14:25 15:23
16:4,21 17:5 29:2
29:23 71:10
**football** 10:15
**force** 11:3
**foregoing** 94:21,23
99:2
**forfeiture** 56:17
**forget** 15:15
**form** 34:4
**forth** 94:24
**found** 30:1 55:10
55:25 56:21 78:16
85:4,5 90:10,11
**foundation** 11:23
40:10 57:4 63:21
79:24
**four** 62:19 89:9
90:3,4 91:1
**frequent** 71:8
**fresh** 21:19,19
**friend** 21:7
**friends** 19:22
**front** 50:3,5 51:11
51:17,22 54:15
**full** 43:13 95:2
**further** 95:7 96:15

**G**

**gamble** 63:24
**gambled** 63:14
64:23 65:6
**gambling** 63:10,11
64:10,22
**ganaway** 72:18
73:1,14
**garrett** 42:6 44:9
44:13 45:6 49:12
62:14,22 63:6,9
65:8
**garretts** 44:16
45:10
**gate** 13:11

**gateway** 102:5
**general** 66:3,15
96:4 101:9
**generals** 2:20 3:14
3:23 4:9 94:11
**generated** 61:4
**getting** 29:2 30:21
34:16 73:13 80:8
83:23
**gilbert** 70:22
**girl** 72:8
**girlfriend** 30:2 72:3
72:5
**give** 22:16 24:10,13
24:20,22 25:8,13
26:11 29:6 31:18
38:1 39:7 42:25
43:18 59:9 81:4
83:2
**given** 30:16 78:6
95:4 99:5
**giving** 31:2 35:19
76:20
**go** 9:19,24 10:5
13:23 14:6 17:9
19:20,22 20:16
22:15 24:3,16
27:18,22 30:14,19
30:20,20 31:4,11
35:23 37:17 40:17
42:2,22 50:9,12
53:5,8 56:17,18
64:3 65:25 68:11
68:25 75:13 76:24
82:7 83:17 91:12
92:23
**going** 16:11,13
40:25 51:19 89:10
90:12 93:1
**gold** 43:19,23,24
51:16
**gonna** 7:11 24:22
42:8 47:23 49:3
54:12 57:14 59:8
78:4,5 83:9 88:9
93:6
**good** 25:9

**gordon** 86:22,24
87:20
**gore** 102:5
**goreperry** 96:1,23
**gotcha** 9:4 16:13
27:21 31:15 32:6
36:20
**gov** 4:3
**grade** 10:5
**graduated** 10:11
11:1
**grand** 10:1,2
**grandmother** 49:22
**gravois** 15:16
**group** 51:18
**grow** 9:22
**guess** 11:19 19:23
32:4 33:14 44:20
49:21 60:11 65:14
71:4
**guesstimate** 26:12
**guesstimating**
16:22
**gun** 55:25 56:1
**guns** 56:17
**guy** 13:1 17:16,18
19:22 26:18 28:4
28:25 30:17,20
31:5 41:20,22
42:3,4,18,19,24
43:12 44:10,11
52:25 68:19 73:5
73:6,11,17 77:5,9
77:20 87:15 88:3
**guys** 21:13,14
22:15 24:18 25:14
25:14 26:20,21,24
29:1,3 30:3,5,9
31:7 32:18 41:21
86:20 90:14

**H**

**h** 3:21
**halt** 91:10
**hand** 95:11 102:10
**handle** 28:24,24
**hands** 58:12

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 107

**happened** 44:8
   45:13 51:13
**harassing** 73:16
**hard** 7:24
**hardison** 42:10,12
   42:13 49:1
**hardship** 11:8
**harmed** 59:10
**harmon** 35:17
**harold** 67:12 68:5
   68:17
**hatband** 71:3,4
**havent** 61:7 64:19
   64:20,22 67:9
**hayden** 73:21 74:9
   74:20 75:22 88:23
   88:24 89:12,16
   90:15,18 91:11,11
**head** 7:20 69:14
**hear** 7:13,14 38:13
   64:6
**heard** 12:8 39:25
   63:23 64:16,19,20
   64:22 66:18 85:9
**hearsay** 65:17
**heath** 69:22 70:3
**heather** 2:22 94:3
   95:16
**heavyset** 43:19
**help** 87:9
**helped** 22:3
**henderson** 35:16
**hereinabove** 99:6
**hereto** 99:4
**hereunto** 102:8
**heroin** 56:2,3
**hes** 8:11 30:18 43:9
   43:10 66:6 68:20
   78:6
**hey** 47:4 91:12
**hidden** 73:6
**high** 10:7,10,11
**highway** 73:13
**hiring** 11:4
**hodiamont** 31:4
**hoell** 4:7 28:13,21
   29:17 47:21 80:1

**81**:19 82:4,23
   93:11
**hold** 14:16
**holmes** 1:5 2:5
   38:12,13,19 40:1
   44:12 45:15 46:8
   56:21 59:2,13
   60:25 61:5,16
   62:8,23 88:14
   92:13 96:7 100:5
**homosexuality**
   16:11
**honesty** 11:21 12:4
**honorably** 11:14
**hopefully** 23:25
**hospital** 8:20,21,25
   12:19
**hospitals** 9:2
**hostagetrained**
   86:15,18
**hotels** 27:20
**house** 24:3 31:12
   43:17 48:14 50:9
   50:14 52:8,15,17
   52:18 54:22 61:16
   67:18 69:22 77:20
**huh** 81:7

**I**

**iad** 67:8 68:3,6
   79:19 89:7
**id** 17:17 37:7
**idea** 25:23 38:7,9
   48:13 53:14 54:3
   54:9 68:2 69:6
   85:8
**identification** 48:2
**ignore** 65:23
**ill** 11:9 59:11
**im** 7:11 8:4,20 15:9
   15:9 16:16,16,22
   19:21 20:24,24
   22:2 23:11 24:18
   25:17 26:3,12,24
   27:2 28:14,22
   29:19 34:12,18
   35:16,17 36:10

**37**:25 38:3 39:4
   39:19,23,23 40:5
   40:20 41:12 43:10
   43:24 44:5,21,23
   45:3,17 46:17,19
   48:11,15,22 49:9
   49:13 50:17,24
   51:5,7,9,23 52:12
   52:24,24 53:12,12
   53:18 55:8 56:4
   57:18 58:5,9
   59:23 61:24 62:13
   63:22 64:1,9,21
   65:6,13 67:16,22
   68:7,20,21 69:5
   69:24 70:3,12
   71:15 73:23 75:7
   75:7 78:4,4 80:18
   82:11,13,15 83:9
   83:18,18 84:24
   85:7,14,15,17,24
   86:10,14 87:1
   88:1,9 89:18 90:4
   91:3,20 92:1,17
   93:1
**immediate** 12:22
**important** 85:20
**incarceration** 65:9
**incident** 61:20,23
   69:20
**include** 78:22
**including** 96:12
**index** 6:1
**indicates** 72:8
**individual** 52:1,11
   53:11 77:16 78:13
**individuals** 39:13
   48:5
**informant** 5:4
   22:23 23:13 24:1
   24:10 25:1,16,21
   26:21 33:16 36:24
   41:11,13 42:19
   43:6 59:4 75:3
   78:15 90:10
**informants** 22:15
   22:18,22 23:1,10

**23**:19 24:7,14,20
   25:19 27:1 28:5
   29:11,24 31:16,17
**information** 5:5
   22:16 23:19 24:20
   24:22,25 30:16,21
   31:14 33:4,8,12
   33:16,18,19,20,25
   34:2,11,13 35:19
   35:24 38:19 42:1
   46:10 47:7 49:18
   50:13 59:5,15
   74:12 75:3 76:21
   77:7 78:12,17
**informed** 49:17
**initially** 81:14
**inside** 52:8,14,18
   54:22
**instruct** 96:12
**instructed** 28:11
**instructing** 8:14
**instructors** 27:17
**interested** 95:9
**interior** 73:11
**internal** 88:20
**internally** 74:19
**interrogatories** 7:5
**interrupting** 83:4
**introduce** 22:18,20
   22:21,24 33:15
   37:6
**investigate** 30:13
   47:16 81:7
**investigated** 90:10
**investigation** 30:17
   30:21 33:21 63:1
   75:2,5,10 76:3,15
   84:25 85:3 88:16
   91:10
**investigator** 89:7
**involvement** 30:24
**isom** 92:8
**issue** 90:17
**items** 56:8,11,19,21
   56:24 58:23 77:25
   78:18,20,21 92:14
**iv** 8:25

**ive** 29:12 34:12,13
   82:5

**J**

**jail** 22:16
**jamison** 69:10,16
**january** 71:19
   79:13
**jennifer** 74:20
   75:24 77:17 78:8
   90:17
**jimmy** 17:17 88:2
**joachimstaler** 22:2
**job** 57:9,13 91:14
**jobs** 9:8
**john** 71:16 73:20
   74:9,19 75:22
**join** 28:21 29:17
   47:20,21 80:1
   81:19 82:4,23
**joined** 11:4
**jones** 40:11 61:2,6
   71:19,21 93:2,4
**joplin** 10:17,19
**joyce** 74:20 75:24
   77:18 78:8 90:17
**jr** 72:10
**judge** 79:1
**julius** 18:22 88:5
**july** 70:23 71:17
**jump** 30:20
**justice** 10:24

**K**

**k** 3:4
**keep** 28:5 35:25
   70:13 91:16
**ken** 89:14
**kilos** 24:2,4
**kind** 8:23 27:11
   28:24 44:22 92:3
**klein** 20:13
**knew** 11:24 12:1
   31:9 42:6 63:5
   89:10
**know** 7:11 11:23
   14:5 15:19,21

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

16:22 17:3,24
18:12 19:3,4
20:16 24:14 28:12
30:18,19 31:7,10
32:5,19 34:25
37:20 38:4 39:20
41:6 46:19 51:24
53:1,1,2 54:14
58:25 63:14 64:4
66:2 68:1 69:16
69:17,17 70:3,13
71:9,18 72:23
73:16 74:3,4
80:17,19 83:8,23
84:1,7 85:1,19
89:25 91:22
**known** 29:5
**knows** 31:6

## L

**l** 2:22 94:3 95:16
**lab** 56:12,14,15
58:18
**laboratory** 56:18
**lady** 49:17,20,21
51:20 92:6
**large** 41:21
**late** 67:6
**laterryl** 72:19,20
**lawful** 7:2
**lawsuits** 66:1,14,19
**lawyer** 88:15 89:13
90:16
**lead** 52:8,20
**leading** 54:20 61:8
**leaking** 76:19
**learned** 83:14
**leave** 9:16
**leaving** 46:3
**left** 10:10 11:16
26:14 29:18 48:12
74:15 84:7 87:4,5
87:7 88:23
**legal** 47:19 50:15
57:5,11,21 76:5
92:22
**lent** 63:3

**les** 13:1
**letting** 67:17 69:1
**license** 46:11
**lie** 73:9 82:7 85:4,6
89:20 90:1
**lies** 82:6 90:1,2
**life** 64:5 66:7
**light** 17:21
**liked** 20:25 63:23
**line** 5:3 96:13 97:1
97:4,7,10,13,16
97:19,22 98:1,4,7
98:10,13,16,19,22
**lipa** 102:5
**list** 96:12
**listen** 54:12
**little** 10:2 13:9
14:22,22 39:3
60:11 86:22
**live** 8:7
**lived** 10:1
**living** 8:18
**locate** 22:11,13
**located** 43:14 52:4
**location** 31:2,11
41:20 42:4 77:16
78:14 79:4
**locations** 77:3
**locked** 72:7 81:11
81:12
**long** 9:4 10:20 13:3
16:20 17:25 18:25
20:14 31:23 34:17
36:20 48:9,13,15
62:12,18 65:12
86:2,9,13,25 87:5
87:22
**look** 67:7
**looked** 61:3,7 67:10
**lot** 13:9,11,12 16:10
25:4 31:7 37:1
38:2 44:6 71:13
78:17,21 85:25
**louis** 1:12 2:12,21
3:7,17 4:1,6,12
9:21 10:1,6 39:18
75:4,9 82:9 85:12

94:13 95:11 96:5
96:8,24 100:6,19
101:5,11 102:7
**louverture** 10:6

## M

**machine** 55:25 56:1
**mad** 29:25,25 72:7
**maintain** 88:19
**male** 43:19 51:14
92:8,9
**malottke** 89:2,5
90:2
**mama** 73:10
**man** 15:11,18 21:3
21:10 47:4 52:16
73:17 91:12,13
**march** 72:12
**marine** 11:4,16
**marines** 11:7
**marked** 6:6
**matter** 61:25 85:17
96:10
**matthews** 72:24
73:7,9 85:22 86:3
87:18
**maury** 51:1,2,4
**mckinley** 10:8
**mean** 16:9 19:4
28:3 30:19 34:8
34:14 35:1 37:15
40:20 43:10 52:18
58:1,7,7 72:23
84:18 91:6
**meet** 25:14 33:15
42:3 48:21
**meeting** 89:3
**meetings** 39:11,15
**member** 22:7
**members** 49:8,10
50:21
**memo** 67:20 68:3,6
70:1,5,10,11,14
70:17,20 72:22
75:1 100:1
**memory** 72:17
**memos** 90:3

**mentioned** 99:6
**merit** 2:24
**met** 48:20,22
**metropolitan** 75:9
82:10 85:12
**michael** 1:5 2:5
38:12,13,19 39:25
44:12 45:15 46:7
59:1,13 60:25
61:5 92:13 96:7
100:5
**mike** 41:24 42:24
43:2 44:12
**mind** 94:16
**minds** 53:22
**mine** 21:8
**minute** 90:16
**minutes** 88:10
**missouri** 1:2 2:2,19
2:21 3:7,13,17,22
4:1,8,12 6:10 9:21
10:14,16,19,20
94:4,9,11,13
95:11 102:7
**misstates** 26:16
28:13,20 35:22
40:9 44:14 45:7
54:24 63:18 68:10
68:24 79:23 80:22
81:17 82:22 91:24
92:23
**mmhmm** 32:21
86:17
**mo** 4:3 96:5,24
100:19 101:5,11
**mobile** 38:14,16,17
40:24 41:2,8,9,14
49:8,10,14 50:21
60:12 63:1 86:15
87:1,7,7
**model** 44:23 45:4
46:17,24
**monday** 96:2
**money** 30:3 31:16
42:4,5,21,22,25
43:1,9 44:3,6
56:17 79:16 80:10

**81:14,23
**month** 74:1
**months** 16:22 17:4
17:9 18:1 20:15
21:20 61:8 65:13
87:6,8 89:9 90:4,7
91:1
**moore** 72:9,11
**mother** 11:9
**mothers** 73:7 82:7
**motor** 71:6
**move** 36:5 65:4
93:1
**moved** 9:8 36:13

## N

**name** 7:8 13:2
15:18,22 21:3,10
24:9 25:5 29:6
31:6,7,9 41:22,23
42:11 48:25 51:5
59:9 76:21 77:8
77:15 78:13 79:3
100:14
**named** 13:1 17:16
**names** 7:10 15:12
28:5 77:2
**narcotic** 22:19
26:20
**narcotics** 20:20,21
21:22,23 22:3,5,7
23:8 27:4 31:24
32:5,13,17 34:20
38:23 39:1 40:25
41:5 46:5 87:5,21
**nature** 67:16 73:25
**necessary** 34:5
**need** 67:3 87:14
**needed** 19:2 74:13
**negative** 7:25 14:7
**neighborhood** 29:6
39:8,11,18,20
71:9
**neighborhoods**
9:22 39:12
**net** 3:9
**never** 11:24 12:1,6

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 109

23:12 29:9 38:18
47:1,1 60:4,4
62:15 63:23 64:16
64:23 74:4,7,18
74:19 75:4 77:1,7
77:14,22 79:2,2
79:10 82:17,18
85:5 88:22 89:20
90:24 91:8,17
92:1
**new** 35:11 93:6
**newspaper** 90:2,12
**nickname** 31:3
**nicknames** 31:8
**nine** 37:6
**nineties** 31:23
**nonhostagetrained**
86:16
**nonresponsive**
81:13
**noonan** 83:24 84:7
84:21 92:9
**normal** 102:3
**normally** 68:6
**north** 3:6 10:1 39:3
39:3,18 100:18
101:4
**notary** 99:18
102:13
**notes** 34:8,11
**notice** 94:7
**number** 24:10
25:10,13 26:11
38:3 96:13

**O**
**o** 3:16,25 4:11
**oaths** 94:6
**object** 8:8 9:24
23:22 65:24 67:15
83:1,3,6,10
**objecting** 65:2
**objection** 11:22
14:20 16:15 19:17
23:2 28:9 30:14
31:20 35:22 40:9
40:16 42:2 44:14

45:7 46:22 47:12
47:18 50:15 53:17
53:23 54:11,16,23
57:4 58:13,17,20
59:6,18 62:5,24
63:16,25 64:14,24
65:16 68:10,24
75:13,18,21 76:4
78:1,3 79:5,23
81:16,22 82:21
84:9,23 86:6
88:12 91:24 92:15
92:22
**objections** 12:5
26:7,10 29:16
57:15,24 63:25
64:8 65:3,19,21
76:8,13,16 78:7
79:9 80:4,7,25
81:3 82:25 83:5
83:17 88:11 95:1
**observe** 48:9
**observed** 45:14
48:18 55:3
**obtain** 31:5
**obtained** 33:20
**occasion** 40:1
**october** 40:8
**office** 2:20 3:14,23
4:9 26:20 29:10
60:12,12 77:18
78:8 94:12 96:15
**officer** 8:10 9:15
13:16 14:19 17:2
17:8,10 18:17,23
18:25 19:8,13
35:18 51:2,22
56:9 57:6 71:5
72:21,24 76:24
83:23 84:7,21
85:21 87:18,19,19
87:20 92:18 100:8
**officers** 19:16
27:16 35:2,4
51:18
**oh** 10:18 15:18 21:3
21:4 73:17

**okay** 7:19,22 8:3,6
8:14,17 9:4,9,16
9:19,22 10:3,7,18
11:6,25 12:2,10
12:13 13:3,13
14:1,9,24 15:3,7,9
15:14 16:2 17:4,7
17:9,12,23 18:17
18:20 19:15,24
20:4,9 21:6,17
23:7,9 24:6 25:3,8
25:23 26:14,23
27:2 28:7 29:8,12
30:4,8,10,23
31:13 32:6,10,17
33:1,22 34:6 35:5
36:1,5 38:4 39:1,5
39:9,22 40:7 41:4
41:7,9 42:15
43:25 44:8,22
45:5,23 49:12
50:7,18 51:13,21
52:14 56:8,16,19
56:24 59:11,25
60:4,10,13,15,18
61:1,3 62:3 64:6
65:8,22 66:13
67:3,11,24 68:4
68:15 72:14 75:25
77:6 79:15,22
85:23 86:5 88:9
89:8,13 93:1
**old** 68:19 77:2,15
**older** 17:16,18 88:2
**olive** 2:20 3:15,24
4:10 94:12 96:4
96:24 101:10
102:6
**once** 19:8 28:4
30:16 47:3 81:8
90:9
**oneman** 19:14
85:25 87:16 88:8
**ones** 29:14 87:17
**opening** 21:21
**opinion** 47:10
**opposed** 25:24

**oral** 7:5
**ordered** 96:11
**original** 100:15
101:1
**ounce** 56:4
**outside** 43:17 51:15
**owned** 49:23 50:14
50:17

**P**
**p** 3:5,16,25 4:11
**packages** 32:19
**page** 5:3 6:1 96:12
96:12,13,15 97:1
97:4,7,10,13,16
97:19,22 98:1,4,7
98:10,13,16,19,22
**pages** 94:23
**paid** 31:17 102:2,3
**painful** 14:14
**paired** 19:12
**paper** 43:12 76:21
76:23
**paperwork** 35:25
89:22
**park** 15:3,8,8,11,12
15:15,25
**parking** 13:9
**parks** 15:2,5,10,24
16:10,11,14
**part** 26:18 32:4,23
69:3
**particular** 84:2
**particularly** 72:23
**parties** 95:8,9
**partner** 13:20,21
13:22 14:19 17:13
17:14,15 18:17,20
19:9 20:2 22:5
62:7,12 85:21
**partners** 19:1,16
22:8 62:14,17
85:11,18 86:2,2,5
87:10,15,18
**parts** 32:18
**pass** 33:4 35:25
**passing** 35:20

**patrol** 14:1 16:21
17:5,13 18:11
**patrolled** 14:3 15:2
15:5
**patrolling** 15:3
16:25
**patrolman** 13:24
**patrols** 16:18
**patterson** 86:8
87:19
**paying** 31:16
**pending** 94:8
**pension** 91:13,16
**people** 12:15,16
19:3 20:12 21:18
21:19 22:17 24:2
24:21 25:4,4
29:10,22 30:22
34:8,12,13,25
35:9 47:2 75:2
**percentage** 24:13
31:19
**period** 19:19 23:3
31:21 38:21
**pernell** 21:8,11
**perry** 102:5
**person** 23:16,25
30:13 45:19 47:9
56:21,25 57:23
69:14 100:14
**personnel** 82:16
**persons** 24:9 30:24
69:14
**philanda** 69:9,16
**philip** 3:12 96:3,9
**phones** 47:2
**photograph** 31:5,8
**pick** 21:13
**picked** 21:14
**picture** 53:22 54:1
**pictures** 72:3,4,5,6
72:7
**place** 60:10
**placed** 55:16
**places** 27:19
**plain** 42:6,7 44:20
**plaintiff** 1:7 2:7,19

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 110

3:3
planted 71:4
plate 46:11
platoon 18:14 19:6
play 10:15
plaza 27:19
please 45:16 96:12
96:14
plus 91:14
po 17:3,6
point 8:13 19:15
39:7
police 1:11 2:11 4:5
9:15,17 11:3,19
12:3 24:22 29:2
29:22 34:4,9
44:25 45:2 47:4
61:3,13 75:4,9
76:24 82:10 85:12
91:21 96:7 100:5
policy 58:23 70:14
porch 50:4,5
position 89:6
positive 7:25
postdispatch 76:20
ppo 17:8
practically 75:22
precinct 48:19
prejudice 19:10
prejudiced 14:23
present 89:1
press 29:9
pretty 85:20
primary 16:7
prior 26:16 54:24
63:20 71:2
prisoner 59:16,22
private 64:4
probably 16:16
17:18 37:3 45:3
58:8 66:1 67:23
68:20
probationary
13:16 14:19 17:2
17:8,10
problem 64:11,22
problems 12:10

procedure 23:9,13
33:6,9 67:21,23
procedures 22:25
processing 59:16
59:22 96:15
production 96:23
professional 2:23
prompt 96:16
proper 21:12 80:9
property 56:13
propounded 7:5
95:1,4
prosecutor 92:25
protection 21:12
prove 74:18 91:1,2
provide 8:24 33:17
33:23 42:25 59:15
provided 74:12
77:17
providing 12:17
30:2
public 99:18
102:13
pulled 45:17 47:5
pulling 47:3
pumps 8:25
purchased 30:6
47:10
purchases 30:6
48:7
pursuant 94:7
pushing 90:17
put 17:12 19:3
23:16 24:15,25
35:9 69:14 73:9
76:21 78:9
putting 26:8 90:12

_____
        Q
_____
qualified 94:5
quantity 30:6
question 7:12 8:15
14:17 28:14 29:13
55:14 58:13,14
74:24,25 77:13
78:2 80:5 81:13
81:14 83:1,10

86:1 88:15 89:21
90:2
questioned 60:4
74:22
questions 5:1 7:7
7:11 14:13 74:22
89:19,23 93:9,10
93:11 94:25 95:3
quick 88:9

_____
        R
_____
r 94:1
race 92:11
racist 14:22
radio 16:5 17:24
18:7 40:22 45:25
raised 9:20
rank 11:10
ranked 12:4
rated 11:20
ray 45:9,11 51:1,25
55:5 62:9,10
86:12 87:19
rayray 31:3
rdowd 3:9
read 61:13 93:12
96:10,12 97:1,4,7
97:10,13,16,19,22
98:1,4,7,10,13,16
98:19,22 99:2
really 15:18 23:11
23:12,24 26:19
39:23 60:23
rear 52:8
reason 58:6 97:2,5
97:8,11,14,17,20
97:23 98:2,5,8,11
98:14,17,20,23
recall 12:24 15:18
15:21 38:20 39:4
40:6,13 41:9
50:11 52:16 54:19
55:21 56:7 58:5
69:21 71:7 76:9,9
receipt 80:9
receive 23:18 82:8
received 49:18

recess 88:13
recollect 88:6
recollection 51:21
87:9
record 7:8 8:5,9
59:7
recovered 58:1
recruits 15:1
red 17:21,22
reduce 35:14
reduced 35:13
36:12
referenced 96:10
reflects 82:16
refuse 74:21
refused 60:13
74:11 89:23
regard 11:21 12:4
23:18 24:6 27:24
28:7,15 29:13
33:11 35:19 38:18
38:22 40:14 55:12
59:1,12 60:16
61:4 72:18 88:15
92:13
registered 2:23,24
rehire 91:19,23
related 95:9
released 80:21
relevance 9:24
24:16 30:14 47:13
50:16 54:17 57:21
58:17 63:18 65:16
67:15 76:6 81:17
82:3 84:9
reliable 24:1,5
30:17
relys 3:21 4:3 47:20
81:20 88:12 93:10
remain 16:21
remarks 95:1
remember 13:1
15:12 21:3 39:19
39:24 49:25 50:25
53:19 54:21 66:25
67:11,19,24 68:4
68:8,12 69:3,10

69:24 70:1,4,5,8,9
70:12,15,16,19,21
70:24 71:11,22
72:13,14 73:3,4
74:8,9 76:12
79:12,17 80:2,6
80:24 81:24 82:14
83:21 87:18
remind 8:3
rent 9:3
rental 45:3
repeat 7:14
reply 7:4
report 33:22,24
34:4,5,9 45:23,24
46:2 60:22,24
61:3,15,19,25
70:4 72:14
reported 94:22
reporter 2:23,23,24
94:3
reporting 96:1,23
102:5
reports 61:13
represent 8:8,10
88:15
represented 8:12
reprimand 67:17
68:23 69:1
request 20:23
92:21
requested 20:21
required 47:15
58:23 77:18 78:8
reserve 38:14,16
40:24 41:2,10,14
49:8,10,15 50:22
60:12 63:1
residence 41:10
42:23 48:10 49:4
49:17,23 50:19,20
51:11,14 55:23
71:14 72:1 77:19
resign 76:2
resigned 75:6,12
88:20 89:3
respects 95:2

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 111

**response** 8:1 70:5
**responsible** 37:22
  39:8
**rest** 55:23
**retire** 75:23 76:14
  76:18 85:2,5
  91:10,13
**retired** 89:4
**retrieved** 55:4
**return** 80:11 81:14
  96:14
**returned** 79:20
  80:9 81:23
**review** 60:18,20,23
  61:9
**richard** 3:4 7:10
  30:18 54:11 64:18
  82:25 83:7,9
**ride** 19:7,13,23
  87:15
**riding** 37:16
**right** 8:10 12:20
  13:10,24 15:12
  17:22 29:4 31:10
  34:10 37:2 39:5
  39:14 40:8 42:20
  42:24 43:3,17,17
  81:6 92:21 96:10
**rights** 55:17
**rmr** 95:16
**rode** 17:16 18:21
  18:22 85:25 86:22
  87:21 88:5
**roger** 86:8 87:19
**ron** 20:12
**rotate** 21:18
**rotated** 18:8
**rpr** 95:16
**rude** 8:4
**rules** 7:19
**rumors** 85:9
**running** 64:2

      **S**

**saddler** 72:19,20
**safe** 16:9
**sal** 27:6 28:5,24

**sat** 90:7 91:1
**saw** 43:12 48:11
  51:14,15 52:1,5
  52:11,23,25,25
  53:11,16 54:1,2
  56:22 58:7,9
  61:16 73:11,12
  77:10
**saying** 28:23 30:18
  64:16 68:22 70:13
  75:7 80:15
**says** 7:4
**scat** 20:5,7,25 21:9
  21:15 32:4,8
**scds** 8:25
**scene** 62:22
**scholarship** 10:14
**school** 10:5,7,10,11
**se** 19:1 23:25 24:19
  26:19 87:14
**seal** 102:10
**search** 32:24 37:18
  38:4 40:4,15 41:1
  41:3 49:4,19 50:8
  50:12 71:25 74:5
  75:11 77:18,22
  84:10,12 88:16
  90:9
**searched** 55:23
  71:2,3
**searching** 71:2
**second** 14:16 51:19
**securing** 16:10
**security** 9:12 11:18
  12:18
**see** 12:2 18:9 24:4
  27:2 30:17 37:16
  45:17 46:15,20
  54:15 58:8 59:14
  61:15 74:10 89:22
**seen** 34:12,13 72:5
  72:6
**seized** 92:14
**seizing** 56:9 57:6
  92:18
**sellers** 22:12

**selling** 31:3 37:17
**sells** 9:1
**sense** 33:13
**sent** 12:2
**september** 69:22
**sergeant** 19:10
  20:12 27:25 28:2
  29:13 42:7,15
  71:16 89:1,2,5
**serve** 11:6
**set** 13:11 37:17
  39:10 94:24 102:8
**seven** 51:9
**seventh** 87:8
**shake** 7:20
**shallow** 2:22 94:3
  95:16
**sharp** 1:23 2:18
  3:11 7:1,9,10 8:11
  77:11 96:6 99:1
  99:10 100:11
**sheets** 96:11,13,13
  96:14
**shell** 1:23 2:18 3:11
  7:1,9 91:12 96:6
  99:1,10 100:11
**shift** 12:14 19:2
**sholtz** 3:12 8:8,16
  9:24 11:22 12:5
  13:23 14:6,16,20
  16:15 19:17,19
  23:2,22 24:16
  25:11,25 26:7,10
  26:16 27:9 28:9
  28:17,19 29:16
  30:14 31:20 35:22
  40:9,16 42:2
  44:14 45:7 46:22
  46:25 47:12,18
  50:15 53:9,17,23
  54:5,11,16,23
  57:4,11,15,20,24
  58:13,17,20 59:6
  59:18 62:5,24
  63:16,18,20,25
  64:8,14,18,24
  65:3,16,19,24

**67**:1,3,15 68:10
  68:24 75:13,18,21
  76:4,8,13,16 78:1
  78:3,6 79:5,9,23
  80:4,7,22,25 81:3
  81:16,22 82:2,21
  82:25 83:6,9,13
  83:17 84:9,23
  86:6 91:24 92:15
  92:22 93:3,5,8,12
  96:3,9
**short** 34:24
**shorted** 30:5,7
**shortened** 34:24
  35:6
**shorthand** 94:22
**shot** 82:5
**shotgun** 56:1
**show** 31:9
**shown** 94:20
**side** 39:3
**sidebar** 65:4,24
**sign** 49:18 96:10,13
**signature** 95:5
  96:11,13,15 99:4
**signed** 50:10 78:23
  79:1 93:15
**silas** 42:10 49:1
**silly** 83:5,8
**simple** 80:5
**sincerely** 96:17
**sir** 8:22 9:12 10:23
  10:25 11:15 13:7
  13:17 16:19 17:11
  18:5,19,24 19:25
  20:3 22:23 23:6
  25:7 28:1 29:20
  33:2,5,21 35:11
  35:14 36:7,14,19
  37:14 38:6,8,11
  38:25 39:16 40:6
  43:8 45:12 46:4,7
  46:13 47:14 48:4
  48:6,8,24 50:1
  51:12 52:3 53:15
  53:21 54:8,13
  55:1,19 56:10,23

**57**:1,8 58:25 60:9
  61:21 62:2,6,11
  67:2,9,13,21,23
  68:18 69:8,11,25
  70:7,18,21,24
  72:25 76:17 77:17
  79:14,18,21 80:12
  82:11,15 83:22,25
  88:18 89:17 91:17
  92:20
**sisters** 82:7
**sit** 17:21 50:13 83:6
  87:17
**sitting** 46:16 70:16
  89:9 90:4
**situation** 28:25
**six** 16:22 17:4,9
**size** 35:13 36:12
**smith** 17:17 18:17
  88:2
**snitch** 29:6
**somebody** 20:1
  24:23 36:24 37:5
  37:6,17 57:14
  71:1 86:19
**sorry** 27:2 40:5
  41:12 43:10 49:9
  55:8 64:21 67:22
  73:23 80:18 85:15
**sort** 40:24
**sound** 40:8 94:16
**south** 10:1,6
**southern** 10:14,16
  10:20
**speak** 89:11
**speaking** 19:8
**specialty** 11:12
**specifically** 68:4
  70:12,16 83:20
**speculation** 11:22
  13:23 14:6,20
  16:15 19:17 25:11
  26:1 28:9,19
  50:16 57:5,12
  82:2
**speeding** 17:20
**spell** 27:7

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 112

**spelling** 51:5
**st** 1:12 2:12,21 3:7
  3:17 4:1,6,12 9:21
  10:1,6 39:18 75:4
  75:9 82:9 85:12
  94:13 95:11 96:5
  96:8,24 100:6,19
  101:5,11 102:7
**stairs** 52:2,6,7,8,15
  52:20 54:3,15
  55:15 61:17
**stairwell** 52:19
  54:19
**standing** 63:8
**start** 19:2 93:6
**started** 88:3
**state** 2:19,21 3:13
  3:22 4:8 7:8
  10:15,16 94:4,11
  94:13
**stated** 60:6 61:15
  61:18 79:19
**statement** 41:1
  55:20 100:9 102:9
**states** 1:1 2:1 94:8
**stating** 12:3
**station** 59:3,14
  60:5,8,9
**statutes** 8:10
**stay** 19:11,12 27:22
  67:17 69:2
**stayed** 55:6,15
**staying** 21:20
**stephen** 40:10 61:2
  61:6 93:4
**steps** 51:15,20
  52:12,21,22,22,25
  53:2,4,6,10,13
  54:10,20 55:4,7
**stop** 65:2 71:6
  76:15 83:4
**stopped** 71:1,13
  73:5,14
**stopping** 47:6
**street** 2:20 3:15,24
  4:10 20:8 31:7,12
  32:16,23,23,25

33:1,4,8,12,23
  34:19,23 35:1,9
  35:20 36:5,15,20
  37:10,11,14,15,16
  43:4 48:20 90:6
  94:12 96:4,24
  101:10 102:6
**strictly** 37:8
**strike** 65:4
**stuck** 63:4
**stuff** 16:12 27:14
  28:6 29:7 32:24
  34:8 35:25 58:1
  76:20 78:19
**subdivision** 32:17
**subscribed** 99:12
**suffering** 90:13
**suit** 95:8
**suite** 2:20 3:6 94:12
  96:4 100:18 101:4
  101:10 102:6
**sullivan** 10:2
**sumner** 10:8,9
**superior** 89:11
**supervise** 12:15
**supervisor** 12:12
  12:14,23 15:17
  19:22 20:13 27:3
  48:17,23
**supervisors** 12:20
**support** 75:11
**supposed** 33:10
  78:22
**sure** 8:4 16:9,16
  19:21 20:24,24
  22:2 23:11 24:18
  26:12,24 34:12,18
  35:16,17 36:10
  37:25 38:3 39:4
  39:19,23 40:20
  43:24 44:5,21,23
  45:3,17 46:17
  48:11,15,22 49:13
  50:17,24 51:5,7,9
  51:23 52:12,24
  53:12,12,18 56:5
  57:18 58:5,9

59:23 61:24 62:13
  63:22 64:1,9 65:6
  65:13 67:16 68:7
  68:20,21 69:5
  71:15 75:7 82:11
  82:13,15 83:18,19
  84:24 85:7,14,24
  86:10,14 87:1
  91:20 92:1,17
**surprise** 82:19,24
**surveillance** 31:4
  31:12 37:17 44:10
  45:5 46:9 77:12
  77:19,21
**sustained** 79:22
  80:3,6,8
**sweatsuit** 43:20,20
  43:23 51:16
**switch** 18:15 87:2
**switching** 86:15
**sworn** 7:2 94:18
  99:12

———————

**T**

**t** 94:1,1
**take** 31:8 34:8
  58:15 60:10 72:4
  88:9
**taken** 1:24 2:18
  7:16 79:20 90:5
  99:3
**talk** 50:3 60:7,8,13
  63:9 66:11 74:11
  77:13 84:20 90:16
**talked** 28:4 65:8,10
  65:14 66:9,10,14
  66:15 74:12 88:23
**talking** 23:4 25:18
  31:22 44:4 51:20
  91:11
**tambo** 51:6,7
**taxed** 101:1,7
**team** 20:8
**teamed** 86:19
**tech** 8:20,21
**technician** 8:23
**tell** 11:20 14:12,13

24:2,22 29:3 30:3
  30:9 41:19,23
  42:3,17 43:25
  47:4 55:10 72:16
  75:17 83:12 84:24
  91:7
**telling** 24:1 25:1
  74:9 75:25 76:10
  76:12 79:7
**ten** 12:16 25:9 37:6
**terminate** 76:2
**terminated** 75:6,12
**test** 58:18
**tested** 57:2 58:3,8
  58:23
**testified** 66:8 90:21
  94:20
**testify** 7:2 94:18
**testimony** 26:16
  28:13,20 35:23
  44:15 45:8 54:24
  61:11,23 63:20
  68:11,25 74:21
  76:1 77:1,6,14
  91:25 94:21,24
  99:5
**thank** 79:12
**thats** 14:9 19:9
  25:14 29:19,25
  31:10 36:11,13
  40:10 54:7 59:6
  60:3 61:5,18
  64:18 66:18,23,25
  67:21,23 74:15
  77:6 78:2,11,11
  79:21 81:1,13
  85:20,20 87:2
  88:7 89:20
**theres** 7:19 23:24
  24:2 26:20 29:1
  29:10 78:17,21
  90:24
**thereto** 95:2
**theyre** 25:15 40:25
  66:23 83:8
**thing** 7:23 17:20
  26:2 40:13,18

76:9 84:21
**things** 8:3
**think** 7:18 17:11
  18:1 21:10,24
  22:3 23:13,13,14
  24:21 27:8 29:12
  32:1,12 35:3 36:9
  36:9,22 38:17
  41:2,24 43:9,10
  43:19,22,24 48:1
  49:14 51:6,8 56:4
  60:3 62:21,21,25
  63:7,7 65:6 67:17
  69:19 73:9 84:16
  84:17 86:4 93:3
**thinking** 67:5
**third** 55:11 87:6,7
**thompson** 55:25
  56:1
**thought** 21:4 82:20
  83:18
**thousands** 44:7
**threatened** 73:1
**threatening** 73:4
**three** 9:13 10:9
  18:12,16 32:18
  34:18 37:9 48:1
  53:4,7 77:21,24
  78:18 86:4
**throw** 34:15
**thrown** 69:15
**ticket** 67:6
**tickets** 17:19
**tied** 24:21
**till** 32:11 34:17
  36:22 78:5
**time** 7:12 8:11,19
  11:4 16:8 18:18
  19:19 22:2 23:2
  27:3,23 31:20
  32:14,15 33:7
  34:7 35:17 38:21
  39:25 41:2 46:20
  47:22 52:4 54:12
  61:19,23,25 62:8
  62:22 65:7 70:4
  70:10 73:5 88:7

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

| | | | |
|---|---|---|---|
| **times** 37:6 65:14 66:9 73:5 76:22 76:23,23 77:10 85:25 | **true** 95:2 99:5 **truth** 7:3,3,3 14:13 24:1 90:11 94:18 94:19,19 | 32:16,22,23 33:1 33:4,8,12,23 34:19 35:1,20 36:6,15,21 37:10 38:23 39:2 40:25 49:11 63:2 84:2 | 46:13 47:5 59:9 60:6,14 61:12 78:10 |
| **tinted** 73:12 | **truthful** 24:5 | **united** 1:1 2:1 94:8 | **wanted** 19:9 21:13 22:18 25:22 26:15 29:14,22 42:4,4 42:20,22,25 44:2 44:7 47:8 74:20 |
| **tired** 89:10 90:12 | **try** 31:14 37:7,17 47:7 49:3 | **units** 41:3 | |
| **title** 44:21 | **trying** 15:9 22:17 29:23 47:22 70:3 75:3 88:1 91:3,12 | **unknown** 69:14 **unmarked** 44:25 | **wanting** 29:11 |
| **today** 46:19 50:13 61:6,14 76:1 87:15,17 | | **ups** 32:20 **upstairs** 52:9,20 **use** 23:18 30:12 78:12 | **warned** 46:7 **warrant** 40:2,3 41:1,6 71:25 74:5 77:18,22 88:16 |
| **told** 19:8,10 40:7 41:20,21,22 42:18 43:6,12 48:17 73:17,19 74:13 75:4,8,15,20 76:1 76:7 85:1 87:23 87:25 89:4 90:1,2 90:11,15,16 91:9 92:6,6 | **turn** 17:22 **turned** 59:21 **twice** 81:11 **two** 11:8 19:3,16 27:22 31:25 53:7 61:13 73:12 86:10 90:7 | **usually** 21:15 47:6 68:3 _____  **V** **vague** 19:19 23:2 | **warrants** 32:24 33:1 37:12,13,19 38:4 41:3 75:11 84:10,13 90:9 **wasnt** 11:4 18:19 19:1,1,14 22:6 24:19 26:19 32:7 37:4 40:3 45:2 64:2 72:21,22 74:17 86:18 87:5 |
| **tomorrow** 87:16 **tony** 4:3 | **twoman** 19:2,6 87:14 | 23:22 31:20 40:17 42:2 59:18 **vehicle** 46:3,11,12 46:21 71:6,12 73:12 | |
| **total** 101:6,12 **traffic** 81:12 | **twoweek** 27:15,15 **type** 17:20 26:2 30:11,22 | | **watched** 48:13,15 |
| **training** 23:17,20 23:25 24:6 27:12 27:13,15 33:11 82:9,17 | **types** 29:24 **typewriting** 94:23 _____  **U** | **vehicles** 47:25 48:3 **verbally** 7:20 **verify** 30:19 31:6 31:14 | **way** 83:1,10 **wednesday** 1:24 96:6 **week** 90:4 **weeks** 20:19 27:23 73:12 |
| **trains** 32:19 **transactions** 48:12 **transcribed** 94:22 | **uhhuh** 7:23 **uhuh** 7:23 **ultimately** 28:18 **undercover** 22:7,9 | **vernita** 79:13 **video** 96:1,23 **viewed** 61:13 **vincent** 3:20 62:16 | **wells** 11:18,20 12:10,21 13:4 **went** 10:8,9 13:13 |
| **transcript** 7:24 93:5 94:21 95:3 96:12 99:2,5 100:15 101:1 | 27:3 32:16,22 33:3,12 34:17 35:18 37:5,8,10 44:19 | 62:17 87:21 **von** 89:1,4 90:2 **vs** 1:9 2:9 96:7 100:5 | 15:8 20:5,18,18 23:8 27:3,13 38:15 48:17 49:13 51:14 55:4,5,7,9 55:16 73:8,18 87:6,8 92:5 |
| **transcripts** 61:11 102:1 | **understand** 7:13,14 24:24 25:17 26:3 28:22 55:14 66:16 | _____  **W** | |
| **transfer** 20:21 **transferred** 20:20 20:22 21:21 32:11 | 84:18 86:1 91:3 **understanding** 38:22 | **waive** 96:10 **waived** 95:5 **walked** 15:23,24 16:3 | **westport** 27:19 **whatd** 10:10 48:16 50:2 51:10 55:22 |
| **transfers** 34:1 **transported** 59:16 **traveled** 38:23 52:14 | **undertook** 45:5 **undetermined** 94:8 **unfounded** 69:15 73:22,24 | **want** 8:4 14:7 17:19 19:23 21:1 21:19 24:21 25:4 26:21 28:25 29:1 | **whatevers** 25:9 **whats** 42:11 78:19 78:19 **whered** 10:5 20:16 |
| **trial** 61:23 94:10 **tried** 42:3 47:1 | **uniform** 35:10 **unit** 20:6 21:10,15 | 29:5 34:15 44:6 | **whereof** 102:8 |
| **truck** 13:11 **trucks** 13:12 | 27:12 31:24 32:13 | | |
| | | | **white** 15:20 19:8 44:25 67:12 68:5 68:17 73:19 89:2 92:9 |
| | | | **whites** 19:11,12 **whos** 25:1 35:19 **whyd** 35:8 76:18 **wilkerson** 12:22 **william** 83:24 **windows** 73:13 **wit** 7:5 **withdraw** 8:11 **witherspoon** 21:9 **witness** 72:8 93:15 94:14,16,25 95:4 95:6,11 96:10,12 99:1 102:8 **wont** 29:6 85:2 **work** 8:12 9:1 19:18 20:11 22:17 24:4 37:1 **worked** 9:10,12 11:18 12:25 26:25 64:2,3 **workhouse** 9:10 **working** 25:15 26:19 38:9 66:7,7 **works** 83:1,10,12 **wouldnt** 30:20 35:25 57:19,22 58:6 59:15 64:3 72:6 84:24 92:7 **write** 17:19 68:3,6 70:10,11,14 72:22 **writing** 68:5 70:1,5 70:8,17 72:14 **written** 25:5 68:22 69:1 80:9 **wrong** 74:4,10 88:19 89:11 90:14 **wrote** 62:6 68:1,7 70:9,15 90:3 _____  **X** _____  **Y** _____  **yeah** 10:13 12:9 |

Michael Holmes v. Board of Police Commissioners of the City of St. Louis, et al.

Shell Sharp
April 9, 2014

Page 114

14:12 17:6,21
19:5 21:5 22:14
23:21 25:20 27:5
27:10 31:9,10
33:10 34:4 36:11
37:3,24 40:19
42:14 45:25 50:9
59:21 60:9,21
62:17 63:6,7,12
63:17 64:13 65:10
66:24 80:15 84:15
86:20 87:12 88:4
93:7
**year** 9:6,10,16 10:8
11:18 13:5,8 17:3
17:10 20:17 36:8
36:10 38:15 85:14
85:16,18 86:10,14
**years** 9:13 10:9,21
11:6,8 24:23
34:18 37:9 62:19
62:20 71:15 84:5
86:4,10 87:23
**yellow** 43:20
**youd** 19:14 65:2
83:4 87:16
**young** 15:1
**youre** 8:14 14:12
14:12 17:10 35:20
64:16 75:7,25
78:22 79:7 87:12
87:13,14
**youve** 12:7 29:21

___
**Z**
___

___
**0**
___
**0442** 95:17
**09** 96:6

___
**1**
___
**1** 101:7
**12** 71:17
**12cv02333hea** 1:9
2:9
**12th** 71:19
**13** 35:7 76:21

**14** 35:6 71:15 73:21
**1500** 79:19 80:11
**18** 20:15 21:20
**1992** 23:4
**1995** 67:12
**1999** 69:22,22
**19th** 74:2

___
**2**
___
**20** 53:6 79:20 99:13
**200** 96:4 101:10
**2000** 32:12 36:22
36:23 37:4,21
38:17,18 62:21
70:23 71:15 79:13
**2001** 71:17
**2005** 38:17
**2006** 71:20
**2008** 72:12
**2009** 9:18 73:21
74:2
**2014** 1:24 2:22
94:15 95:12 96:2
96:6 99:3 100:13
**20something** 35:4
**21** 34:25 35:2 96:2
**210** 2:20 94:12
**211** 3:6 100:18
101:4
**21st** 95:11
**22** 72:12
**2416750** 96:25
**24th** 69:22
**25** 26:5 70:23
**29** 40:8
**2nd** 3:15,24 4:10

___
**3**
___
**30** 96:14
**314** 3:8,18 4:2,13
96:25
**3407827** 3:18 4:2
4:13
**3rd** 79:13

___
**4**
___
**4** 1:9 2:9 5:3 99:3

**100:**13
**4050** 3:6 100:18
101:4

___
**5**
___
**50** 25:24,24 26:5,5
26:12,12
**5010** 31:3
**515** 96:24 102:6
**59** 5:3

___
**6**
___
**60** 17:18
**60day** 21:15
**6212500** 3:8
**63101** 96:5,24
100:19 101:5,11
102:7
**63102** 3:7
**63188** 3:17 4:1,12

___
**7**
___
**7** 6:2
**700** 102:6
**75** 26:5

___
**8**
___
**815** 2:20 3:15,24
4:10 94:12 96:4
101:10
**861** 3:16,25 4:11
**89** 13:15,16 14:19
84:6

___
**9**
___
**9** 1:24 99:3 100:13
**90** 13:14
**91** 20:10 32:1,4
84:6
**92** 20:18 32:2,3,11
34:17 37:21 38:18
**95** 34:21 36:10
37:20 62:21
**97** 40:8
**9th** 2:21 94:14