IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN JONES, MICHAEL HOLMES AND MATTHEW COX | ) ) ) | |
| Plaintiffs, | ) ) ) ) ) | 4:12-cv-02109-CAS 4:12-cv-02333-HEA/CAS |
| vs. | ) ) ) | 4:13-cv-427-CAS |
| BOARD OF POLICE COMMISSIONERS OF THE CITY OF ST. LOUIS, et al. | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS JONES, HOLMES AND COX SURREPLY IN OPPOSITION
TO DEFENDANTS MOTION TO EXCLUDE THE TESTIMONY
AND REPORT OF ANGELA L. WINGO**

COME NOW Plaintiffs Stephen Jones, Michael Holmes and Matthew Cox by counsel, and for their Surreply in Opposition to Defendants Motion to Exclude the Testimony and Report of Angela L. Wingo, PhD., state as follows:

1. Defendants continue to allege that Dr. Wingo does not have specialized knowledge or a scientific basis for her opinions. Dr. Wingo is a PhD in psychology and a Professor of Psychology (she has taught every psychology class that the university offers). She has a Counselor Education and Supervision Specialty, which is teaching psychologists the clinical skills necessary to diagnose, treat and formulate goals for individuals seeking psychological services. (Exhibit 1 to Plaintiff's Memorandum in Opposition, Deposition of Angela Wingo p. 7, l. 2-21) Dr. Wingo specializes in the psychological assessment of police officers at the hiring and promotion stages, fitness for duty assessments for particular duties such as narcotics assignments, as well as return to duty assessments after "critical incidents" such

1

shootings and motor vehicle accidents, to determine if officers are psychologically capable and qualified to be police officers. (Deposition of Angela Wingo p. 12, l. 18 - p. 13, l. 15)  Dr. Wingo has provided psychological counseling to law enforcement agencies since the mid 90's. (Deposition of Angela Wingo p. 14, l.14-20)

2. Further, and in contrast to the assertions made by Defendants, Dr. Wingo's expertise is not limited to psychology. Dr. Wingo has extensive training and experience working with Police Departments in creating and revising policies and procedures so that they can become CALEA accredited. Dr. Wingo is one of the two founders of Public Safety Specialists Group, that has ongoing contracts and relationships with 42 law enforcement agencies, for many of which she writes and rewrites department policy and procedures manuals. (Deposition of Angela Wingo p.15, l. 7-12; p. 43, l 2-5) Dr. Wingo has also spent years evaluating officers as part of promotion assessment for numerous departments around the country. (Deposition of Angela Wingo p. 419, l. 1 – p. 52, l. 18).  Dr. Wingo is a certified assessor for the Commission on Accreditation for Law Enforcement Agencies which is the only international law enforcement accrediting body. (Deposition of Angela Wingo p. 24, l. 23 – p. 25, l. 23) The St. Louis Metropolitan Police Department began the CALEA accreditation program in 2007.  (Deposition of Angela Wingo p. 43, l. 9 – 15)

3. Defendants represent to the Court that Dr. Wingo has never taught in the Criminal Justice field. This is also incorrect. Dr. Wingo has taught both Criminal Justice Management and Criminal Justice Supervision and interned with a Police Psychologist for 2 years (Deposition of Angela Wingo p. 10, l. 14-25).

4. Again, counsel misrepresents to the Court Dr. Wingo's qualifications by stating she worked exclusively with small rural and suburban departments.  Counsel knows full well Dr.

Wingo has worked extensively with the Washington D.C. and St. Louis County Police Departments. As Dr. Wingo testified, re-writing the Washington D.C. policy and procedures manual took years of working closely with that Department.  (Deposition of Angela Wingo p. 26, l. 7-9; 22-25)  Dr. Wingo is a total law enforcement professional but not a "professional expert." Her qualifications come from working in law enforcement every day for the last 19 years.

5. Opposing Counsel repeatedly claims that Dr. Wingo's opinions are based solely on Plaintiffs' allegations in the Complaints and the assumption that the facts set forth in Plaintiffs' Complaints are all true.  When questioned whether or not anything in the complaint was not in fact true, Dr. Wingo's testimony was that based on all of the documentation that she reviewed the complaint was sound and that constitutional rights were violated. (Deposition of Angela Wingo p. 62, l. 10-24 and p. 63, ll. 12-23)  By relying on this blanket statement, Counsel completely ignores the fact that Dr. Wingo also testified she based her opinions on the thousands of pages of documents disclosed by the SLMPD, as well as thousands of pages of deposition testimony. (Deposition of Angela Wingo p. 62, ll.12-24)  For example, the fact that Dr. Wingo agrees that Officers Carr and Sharp's testimony in the *Jones* prosecution was false (because it is patently absurd), is not a reason to exclude her opinions. As Plaintiffs pointed out in their Memorandum in Opposition, the government itself no longer stands behind the credibility of any of these officers. In *Jones*, Judge Jackson found Defendants Carr and Sharp's testimony so lacking in credibility, because it made no sense, that she found Mr. Jones actually innocent.

6. Defendants claim that Dr. Wingo's opinions amount to legal conclusions because she testified that the Department was deliberately indifferent (which is Plaintiff's burden in proving municipal liability) in its training, supervision and disciplining of officers.

3

7.      Dr. Wingo testified that this deliberate indifference arose from the failure to train, supervise or discipline its officers despite notice of serious misconduct. (See Wingo Depo., pp. 285-287; 289-291; 292-295) Dr. Wingo repeatedly pointed to incidents set forth in the Department's documentation of specific incidents of improper and often criminal conduct that was not disciplined in accordance with the Department's own disciplinary code.  Some of those incidents are set forth in Plaintiff's Memorandum in Opposition, but the thousands of documents produced by Defendants include many additional examples. Dr. Wingo's opinions regarding the Department's deliberate indifference is further supported by the Department's own statistics that unqualifiedly showed a pattern of increasing complaints due to the foregoing lack of appropriate training, discipline and supervision. The number of complaints both unsustained and sustained were steadily increasing and almost doubled from 1991 (the first year of statistics that were provided) up to 1997, the year of the wrongful conviction and imprisonment of Stephen Jones, an innocent man.

8.      Dr. Wingo testified that complaints from different citizens that allege similar conduct have a stronger likelihood of being true and require investigation and ethics training. Officer Garrett's Internal Affairs file shows the following:

    1992:  Physical Abuse;
    1993:  Theft;
    1993:  Theft;
    1994:  Physical Abuse;
    1994:  Theft;
    1995   Physical Abuse;
    1997:  Theft;
    2006:  Theft;
    2007:  Indicted for theft.

9.      There was nothing in Officer Garrett's personnel file or Internal Affairs file that indicated any kind of investigation/supervision, retraining or discipline as a result of these

4

abuses. Officer Garrett testified he did not recall ever being interviewed about these complaints or writing a memo as required by Department policy. In Dr. Wingo's opinion that failure to train, supervise or discipline was deliberate indifference to a pattern of behavior that resulted in Officer Garrett violating Plaintiff Michael Holmes' civil rights. Dr. Wingo is entitled to testify regarding an ultimate issue like this as an expert, and her opinion is supported by the facts.

10. Defendants' claim that Plaintiffs failed to identify or provide Dr. Wingo's report in a timely manner rings hollow. The attached emails demonstrate that Dr. Wingo's report was produced to counsel for Defendant on January 23, 2014, one week after the January 15, 2014 deadline, and Defendants received her curriculum vitae on January 31, 2014. See attached Exhibit 1, Email Correspondence from January of 2014.

11. Logically, Dr. Wingo could only testify regarding the materials that had been produced to date. As the Court can see, from the discussions just in email form, the parties discussed postponing her deposition primarily so that Plaintiffs could obtain additional documentation and information. See Exhibits 2, 3 and 7 to Plaintiffs' Memorandum in Opposition. The parties were many months from trial, and due to the delay in disclosure of documents, counsel for Plaintiffs attempted to work with Defense counsel to schedule Dr. Wingo's deposition at a time when she had all of the documents the city was to provide. It is important to note that Defendants are still supplementing their Rule 26 disclosures, including as late as April 24, 2014, and are still in the process of producing IAD documents relating to the Department's officers in response to Plaintiffs' discovery requests. Also as was discussed at the time of Dr. Wingo's deposition, Plaintiffs' counsel agreed to an additional deposition in the event that additional disclosures by the Defendants changed or augmented Dr. Wingo's opinions in any way.

12. If the Court excludes Dr. Wingo's testimony it will preclude Plaintiffs from being able to put on Plaintiffs' cases in a clear and cogent manner. It will prevent the jury from hearing Dr. Wingo's explanation of why police department policies exist, and why supervision, training and discipline are critical when complaints arise in order to prevent officers from going down the slippery slope from mere omission of their duties to outright criminal activity and the sort of gross violations of civil rights seen in Plaintiffs' cases.

                DOWD & DOWD, P.C.


By:    /s/ Richard K. Dowd
       RICHARD K. DOWD (33383)
       ALEX R. LUMAGHI (56569)
       211 North Broadway, Suite 4050
       St. Louis, Missouri 63102
       (314) 621-2500 - telephone
       (314) 621-2503 - facsimile

*Attorneys for Plaintiff Stephen Jones*

**CERTIFICATE OF SERVICE**

Plaintiff hereby certifies that the foregoing was filed electronically on May 16, 2014, to be served by operation of the Court's electronic filing system on all attorneys of record.

                /s/ Richard K. Dowd

6