# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

STEPHEN JONES,            )
                                  )
        Plaintiff,          )
                                  )
        v.                   )             No. 4:12-CV-2109 CAS
                                  )
FRANCIS G. SLAY, et al.,       )
                                  )
        Defendants.       )

## MEMORANDUM AND ORDER

This matter under 42 U.S.C. § 1983 is before the Court on a motion for summary judgment filed by defendants Francis G. Slay, Bettye Battle-Turner, Richard Gray, Jerome D. Lee and Thomas Irwin, sued in their official capacities as members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department (collectively the "Board"). The motion is fully briefed and ready for decision. For the following reasons, the motion will be granted.

## I. Background

This action was filed on November 9, 2012 by plaintiff Stephen Jones against the members of the Board and former St. Louis Metropolitan Police Department ("SLMPD") police officers, defendants Vincent Carr and Shell Sharp. Plaintiff alleges that his federal civil rights were violated when he was arrested, convicted and imprisoned for a period of over twelve years based on false evidence manufactured by defendants Carr and Sharp. Specifically, plaintiff alleges that Carr and Sharp conspired with each other and made a false affidavit to obtain a search warrant for plaintiff's parents' apartment, falsely claimed that while executing the search warrant they observed plaintiff holding a plastic bag containing $15,000 worth of cocaine base, stole $5,200 belonging to plaintiff's father during the search of the residence, suppressed exculpatory evidence, arrested plaintiff and

falsely testified against him at trial in order to prevent any complaints concerning the theft, as part of a pattern of illegal activity on their parts. Plaintiff alleges that as a result of Carr and Sharp's illegal conduct, he was found guilty by a jury of one count of possession with the intent to distribute cocaine base and sentenced to 240 months in prison.

During plaintiff's incarceration, the Federal Bureau of Investigation and the United States Attorney's Office for the Eastern District of Missouri began to investigate Carr and Sharp "for the same illegal activities that resulted in [plaintiff's] wrongful conviction and imprisonment." Amended Complaint at 8, ¶ 24. Plaintiff alleges that as a result of this investigation, defendant Carr pleaded guilty in February 2009 to federal criminal charges of conspiracy to commit wire fraud, wire fraud, making a false statement and obstruction of justice based on facts very similar to those in the instant case, including wrongfully accusing a third party of criminal activity in order to deflect investigation into his theft. See United States v. Carr, No. 4:08-CR-703 ERW (E.D. Mo.). Plaintiff also alleges that the investigation led to defendant Sharp leaving the SLMPD in June 2009 "under charges" of fraudulently concocting affidavits in support of search warrants.

Based on Carr's conviction, plaintiff sought permission from the Eighth Circuit Court of Appeals to file a successive habeas corpus motion seeking relief under 28 U.S.C. § 2255. The United States acquiesced in plaintiff's request and the Eighth Circuit issued an order authorizing plaintiff to proceed with his motion, which was filed in September 2010. After reviewing the evidence presented at plaintiff's trial along with new evidence concerning Carr's corrupt practices, the United States in November 2010 joined in plaintiff's motion to vacate his sentence, stating there was no credible independent evidence to corroborate Carr's testimony against plaintiff. The United States also admitted that Sharp's testimony was not reliable or credible. On November 10, 2010, this Court, the Honorable Judge Carol E. Jackson presiding, issued an order vacating plaintiff's

conviction and ordering the United States Bureau of Prisons to release him from custody immediately.[1]  Plaintiff subsequently sought a Certificate of Innocence pursuant to 28 U.S.C. § 2513 which was granted by Judge Jackson on May 12, 2011.  Judge Jackson found that plaintiff was actually innocent of the crime for which he was imprisoned for twelve years and eight months.

Plaintiff asserts federal civil rights claims against the Board pursuant to 42 U.S.C. § 1983.[2] In Count III of the Amended Complaint, plaintiff alleges the existence within the SLMPD of a policy or custom and practice of officers using false testimony, planting evidence, suppressing exculpatory evidence, stealing property from alleged crime scenes, and otherwise manufacturing evidence to convict persons regardless of their guilt or innocence.  In Count IV, plaintiff alleges that the Board  failed to train, supervise, control, instruct or discipline the officers under its control in various respects, despite indications of ongoing corrupt and illegal activities by SLMPD officers.

## II.  Legal Standard

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party.  City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

---

[1]    See Jones v. United States, 4:10-CV-1748 CEJ (E.D. Mo.).

[2]    The Court granted the Board's motion to dismiss plaintiff's supplemental state law claims against it for malicious prosecution, wrongful imprisonment and abuse of process on the basis of sovereign immunity, by Memorandum and Order and Order of Partial Dismissal dated November 7, 2013.  (Docs. 96, 97)

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c); <u>Herring v. Canada Life Assur. Co.</u>, 207 F.3d 1026, 1029 (8th Cir. 2000); <u>Allen v. Entergy Corp.</u>, 181 F.3d 902, 904 (8th Cir. 1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, <u>see</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." <u>Davidson & Assocs. v. Jung</u>, 422 F.3d 630, 638 (8th Cir. 2005).

The Court must view the facts in the light most favorable to the non-moving party, give the non-moving party the benefit of any inferences that can logically be drawn from those facts, <u>Matsushita</u>, 475 U.S. at 587, and resolve all conflicts in favor of the non-moving party.  <u>Robert Johnson Grain Co. v. Chemical Interchange Co.</u>, 541 F.2d 207, 210 (8th Cir. 1976).

### III. Discussion

Any legal action against the St. Louis Metropolitan Police Department must be brought by naming the members of the Board of Police Commissioners in their official capacities as defendants. Best v. Schoemehl, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983). Plaintiff's claims against the Board are treated as claims against the municipality. See, e.g., S.L. ex rel. Lenderman v. St. Louis Metropolitan Police Dep't Bd. of Commr's, 2012 WL 3564030, at *9 (E.D. Mo. Aug. 17, 2012).

Municipalities cannot be liable under § 1983 on the basis of respondeat superior. Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691 (1978). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'" Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell, 436 U.S. at 691) (internal quotation marks omitted). A municipality may also be liable under § 1983 if it failed to properly supervise or train an offending employee who caused a deprivation of constitutional rights, but only if the failure to train or supervise rises to the level of deliberate indifference to the rights of others or tacit authorization of the offensive acts. See City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989) (failure to train); Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (failure to supervise).

#### A. Count III - Policy and Custom Claims

In Count III, plaintiff asserts § 1983 claims against the Board based both on policy and custom. These claims are analytically distinct and will be discussed separately. The Board moves for summary judgment arguing there is no evidence to support its liability based on either a policy or custom.

*i. Official Policy*

In the context of municipal liability under § 1983, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). With respect to plaintiff's claim based on an unconstitutional policy, the Board asserts that the SLMPD did not have a policy instructing officers to lie, plant or suppress evidence, steal property from crime scenes, or in any other way manufacture evidence. The Board states the evidence is the opposite, as Rule 7, Section 7.004 of the SLMPD Police Manual dictates that all officers "shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in particular." Board Ex. S. The Board asserts that this language would include conviction of a crime, neglect of duty, conduct detrimental to the public peace or welfare, failing to conduct a proper investigation, and accepting bribes.

In opposing the Board's motion, plaintiff does not distinguish between his policy and custom claims, making it difficult to discern exactly what his arguments are. With respect to the existence of an official policy, plaintiff does argue that the Board failed to have a written policy governing the use of confidential informants even though "the use of confidential informants is an invitation to officers to manufacture evidence," Pl.'s Mem. Opp. at 7, and that the Board's written policies failed to "clearly address the problem of false reporting and the manufacture of evidence, or provide clear disciplinary consequences for such conduct." Id.

Plaintiff does not identify an official policy of the Board that affirmatively sanctions unconstitutional actions. As a result, the Board has established that its policy is lawful on its face, is not unconstitutional, and therefore cannot be the "moving force" of any constitutional violation. See Szable v. City of Brooklyn Park, Minn., 486 F.3d 385, 390-91 (8th Cir. 2007) (en banc). The

Eighth Circuit has held that a "written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." Id. at 392. The Board is therefore entitled to summary judgment to the extent plaintiff's claims are based on the existence of an official policy.

### ii. Municipal Custom

Municipal liability under § 1983 based on the existence of a "custom or usage" is shown by:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

Mettler, 165 F.3d at 1204 (quoting Ware, 150 F.3d at 880).

In support of its motion, the Board argues that the evidence in the record does not support plaintiff's claim that it or the SLMPD had a custom of using false testimony to obtain warrants, lying in police reports, to prosecutors and at trial, stealing property from crime scenes, planting and suppressing evidence, or otherwise manufacturing evidence. The Board states the uncontroverted evidence is that as of the date of plaintiff's arrest, neither Carr nor Sharp had any prior sustained IAD complaints related to use of false testimony to obtain warrants, lying in police reports, to prosecutors and at trial, planting and suppressing evidence, stealing property from crime scenes, or otherwise manufacturing evidence. Further, that Carr had no prior sustained complaints and Sharp had only one sustained complaint, for Violation of Department Procedures. The Board asserts that prior unsustained complaints are not enough to create municipal liability if they were investigated and show no pattern of acquiescence to constitutional violations, citing Rogers 152 F.3d at 799, and

contends the record shows the SLMPD "fully investigates" all IAD complaints. Thus, the Board contends that Carr and Sharp's prior non-sustained complaints do not constitute a custom of constitutional violations as a matter of law.

In response, plaintiff argues that the SLMPD has a custom of failing to properly discipline its officers for serious breaches of the law. Plaintiff identifies thirty-two sustained charges against SLMPD officers and employees from 1991 through 1997, the seven-year period leading up to the time of plaintiff's arrest and conviction, relating to criminal misconduct such as false arrest, theft, abuse of authority and violent assaults.[3] Plaintiff contends that officers "routinely received written reprimands or brief suspensions for the most shocking conduct." Pl.'s Mem. Opp. at 7. As an example, plaintiff states that for the majority of the sustained charges that concerned "missing money," the Internal Affairs Division ("IAD") ordered reimbursement of the money along with issuing a written reprimand, even though the SLMPD's written policy at the time was that a criminal charge of stealing would mean dismissal. Plaintiff also points to sustained charges from 1991 against an officer who obtained a relative's bank account information, obtained several thousand dollars from her account and attempted to transfer $210,000 into his own account, but the officer was merely suspended rather than terminated and prosecuted. Plaintiff also states that defendant Sharp had a sustained charge in 1995 of knowingly associating with a known felon for which he received a written reprimand, although the written policy called for at least a ten-day suspension and up to dismissal for a first offense.

---

[3] The Court does not consider plaintiff's evidence of officer conduct or IAD charges that occurred after plaintiff's arrest and trial, because subsequent conduct cannot establish a pattern of constitutional violations sufficient to provide a municipality with notice and "the opportunity to conform to constitutional dictates." Connick v. Thompson, 131 S. Ct. 1350, 1361 n.7 (2011) (quoted case omitted).

Plaintiff cites the testimony of his expert witness Dr. Angela Wingo that the SLMPD did not follow its own discipline code or hold its officers accountable for their actions, and that this failure created an environment that led to increased misconduct by officers and ultimately to criminal acts. In support, plaintiff identifies a "series of scandals" in the SLMPD between 1994 and 1996, the years leading up to plaintiff's arrest. In the first, SLMPD officers Finerson, McFerren and Billups were "caught carrying out a plan to rob two drug dealers for personal gain of $108,835.00" in 1994. Pl.'s Opp. at 10. Plaintiff asserts that the three officers resigned and pleaded guilty to criminal charges, but the IAD reports produced by the Board do not show any sustained charges against them. In the second, SLMPD officers Butler, Chandler and Mack resigned in 1996 "after being investigated for shaking down drug dealers," id., but again the IAD reports do not show any sustained charges against them. Third, officer Robert M. Baker was convicted in 1994 of "extorting money from motorists by seizing guns and money from motorists in return for not arresting them or charging them with a crime," and there was testimony this scheme had been going on for ten years. Id. Plaintiff states that Baker's IAD file shows he was investigated by the DEA from 1992 to 1994, had a sustained charge in 1994 where he and other unidentified officers prepared false statements to the IAD regarding an incident in which a police pursuit resulted in an accident, and in 1994 prepared a false report to cover up that a clerk had tested positive for cocaine. Id. at 10-11. Finally, plaintiff states the IAD file of former SLMPD officer Bobby Lee Garrett "shows a similar litany of allegations of misconduct" predating plaintiff's arrest that were not acted on by the Board or SLMPD, but Garrett was not terminated and remained an officer until he was convicted many years later of a felony arising from his corrupt practices. Id. at 11.

Plaintiff asserts that the SLMPD's custom of corrupt practices is also demonstrated by IAD statistics that show a dramatic increase in the number of sustained and unsustained charges of

"Conduct Unbecoming an Officer" during the period between 1995 and 1997, the period immediately leading up to and including plaintiff's wrongful arrest and conviction.[4] Plaintiff states that the number of such complaints increased from 35 sustained and unsustained complaints in 1995 to 167 sustained and unsustained complaints in 1997, an increase of over 470% in two years. The number of total charges of Conduct Unbecoming for all disposition categories (including charges that were "Exonerated," "Unfounded," or "Withdrawn") went from 36 in 1995 to 222 in 1997, an increase of 616%. Similarly, plaintiff states the number of total charges of Improper Performance of Duty for all disposition categories, referring to violations of Department administrative rules, went from 13 charges in 1995 to 89 charges in 1997, an increase of approximately 685%.

Plaintiff argues that the IAD attempted to "conceal the scope of the problem" by "systematically charging officers with non-specific violations to cover up the seriousness of the misconduct and the scope of corruption" within the SLMPD, i.e., by charging officers with "Violation of Department Procedures" instead of false reporting or corruption, as in the case of former officer Baker. Plaintiff also points to the following evidence: (1) Sharp received a sustained charge in 1995 for knowingly associating with a felon who was living on his property, but IAD statistics for 1995 show no charges of "Knowingly Associating with Criminals" and the charge against Sharp was identified as a "Violation of Department Procedure;" and (2) no IAD investigations ever occurred with respect to the six officers who left the department or were convicted for corruption in 1994 and 1996.

_____

[4]     The charge of "Conduct Unbecoming" refers to serious "criminal behavior" by officers, including misdemeanor and felony violations. Nocchiero Dep. at 103-04. A finding that a charge was "not sustained" is not an exoneration of the officer, but is defined as there being "Insufficient evidence available to either prove or disprove the allegations in the complaint." Rule 7, SLMPD Manual. Instead, if the Complaint "was not based on fact, as shown by the investigation," the proper finding is "Unfounded." Id.

Plaintiff also offers evidence that there were 1,337 total charges for Violation of Department Procedures between 1991-1997 and 643 total charges for Conduct Unbecoming an Officer in the same period, but no charges for violations specifically indicating corruption, such as "False Reporting" or "Accepting Anything of Value for Permitting/Ignoring Illegal Acts," even in situations where IAD records reflect sustained allegations that officers lied in reports or to the IAD. There were also no charges for "Use of Position for Personal Gain" or "Knowingly Associating with Criminals" between 1991 and 1997. Plaintiff's expert Dr. Wingo testified it does not appear the SLMPD handled complaints seriously, based on the number that were sustained and the uncharacteristically low number of violations reported in multiple categories year after year, when compared to other police departments of similar size.

Plaintiff contends the reasonable inference is that the IAD was "looking the other way" by not using charges that accurately reflected corrupt practices by officers, such as false reporting and accepting bribes, and instead lumped them under the vague headings of "Conduct Unbecoming" and "Violation of Department Procedures." Plaintiff argues this constitutes a department-wide custom of intentionally concealing evidence of officer misconduct. Plaintiff states that under Rule 7 of the Police Manual, the Inspector of Police decides whether a complaint against an officer will be sustained or not, and the Board is only informed about complaints where (1) an officer is given 16 or more days disciplinary leave, disciplinary suspension or reduction in rank, or (2) an officer declines to accept the recommended discipline and opts for a Board trial. Plaintiff contends that because the Board never sees the vast majority of complaints, even those that are sustained, "the result is the 'blind eye' described by the Court in Rohrbough [v. Hall, 2008 WL 4722742 (E.D. Mo. Oct. 23, 2008)], in which, due to the policies and customs of the SLMPD, the corruption never bubbles to the surface[.]" Pl.'s Opp. at 14.

The Board replies that the IAD "face sheets" on which plaintiff relies as evidence that the SLMPD had a custom of failing to properly discipline officers for criminal conduct are inadmissible hearsay and, even if considered, do not demonstrate such a custom. The Board argues the evidence is that the SLMPD fully investigates all Internal Affairs complaints by interviewing the complainant, the accused officer and any witnesses and reviewing any physical or video evidence, and that the burden of proof for adjudging guilt in an IAD investigation is a preponderance of the evidence. Board Ex. I, Hayden Aff. ¶¶ 5-6, Board Ex. M, Nocchiero Aff. ¶¶ 6-7. The Board asserts that prior complaints must have merit to support the existence of a municipal custom, citing Rogers, 152 F.3d at 799, and the mere existence of previous complaints does not suffice to show a custom of permitting unconstitutional misconduct, citing Mettler, 165 F.3d at 1205. The Board argues that even if the conclusions plaintiff draws from the face sheets were correct, and even if the face sheets were admissible, they do not support a pattern "so persistent and widespread as to have the force and effect of law" as required to prevail on a § 1983 municipal liability, as required by Rogers, 152 F.3d at 799. The Board also asserts that plaintiff's evidence concerning the six officers who were either convicted or resigned in 1994 and 1996 consists solely of newspaper articles, which are "rank hearsay" that cannot be considered on summary judgment, citing Nooner v. Norris, 594 F.3d 592, 603 (8th Cir. 2010).

The Board also replies that plaintiff's statistical evidence fails to support his custom claim. The Board argues plaintiff fails to show a pattern of corrupt practices based on an increased number of "Conduct Unbecoming" complaints in the years 1995 through 1997 because (1) plaintiff has no evidence regarding the factual background of the sustained or unsustained complaints or to show that the investigations or discipline were inadequate, (2) there is no showing the complaints had merit, and (3) many of the complaints were unsustained. The Board also argues that the lack of

complaints in the categories of "False Reporting" or "Accepting Anything of Value for Permitting/Ignoring Illegal Acts" is not evidence of a departmental custom, and instead reasonably leads to the opposite conclusion, that there was no pattern or practice of that type of misconduct occurring.

The Eighth Circuit recently discussed the parameters of municipal liability under § 1983 based on pervasive employee misconduct:

> A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by . . . misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'" Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978) (internal quotation marks omitted)). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Parrish, 963 F.2d at 204. A plaintiff must establish (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a "moving force behind the constitutional violation." Thelma D. v. Bd. of Educ. of St. Louis, 934 F.2d 929, 932–33 (8th Cir. 1991) (quoting Jane Doe "A" v. Special Sch. Dist. of St. Louis, 901 F.2d 642, 646 (8th Cir. 1990)). A city will be liable "only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 392 (8th Cir. 2007).

Doe ex rel. Doe v. Gay, 719 F.3d 679, 686-87 (8th Cir. June 20, 2013), reh'g en banc granted, vacated, aff'd by an equally divided court, No. 12-2052 (8th Cir. Oct. 29, 2013) (en banc).

As a threshold matter, "At summary judgment, the requisite 'genuine dispute,' Fed. R. Civ. P. 56(a), must appear in *admissible* evidence." Crews v. Monarch Fire Prot. Dist., __ F.3d __, 2014 WL 6435027, at *5 (8th Cir. Nov. 18, 2014) (cited case omitted). The Board contends the IAD face sheets are inadmissible hearsay, including double hearsay. Plaintiff argues that the IAD face sheets

are admissible under either the business records exception to the hearsay rule, Rule 803(6), Fed. R. Evid.; the public records exception, Rule 803(8); or as admissions of a party opponent, Rule 801(2). With respect to Rule 803(6), plaintiff states the face sheets were created by the SLMPD, maintained in the ordinary course of its business, and were produced in response to plaintiff's discovery requests for these specific documents maintained by it. Also, Captain Hayden testified that IAD statistics are created and kept in the regular course of the SLMPD's business and are a normal part of the police inspector's responsibility to maintain. Plaintiff asserts that sustained IAD complaints are admissions of a party opponent because sustaining a complaint against an officer clearly indicates the SLMPD adopted and believed the complaint to be true, and the SLMPD authorized the IAD to make the statements in IAD records, on matters within the scope of its work for the SLMPD. Plaintiff also asserts that IAD card files, sustained complaints and statistics are admissible as public records under Rule 803(8) because they constitute factual findings from a legally authorized investigation into officer conduct. Finally, plaintiff states that he will be able to provide admissible evidence at trial of the criminal convictions and resignations of the six officers for corruption in 1994 and 1996.

A party objecting to admission of public records under Federal Rule of Evidence 803(8) or business records under Rule 803(6) bears the burden to "prove inadmissibility by establishing sufficient indicia of untrustworthiness" after the offering party has met its burden to establish the foundational requirements of the exception. Shelton v. Consumer Products Safety Comm'n, 277 F.3d 998, 1010 (8th Cir. 2002). The Board's assertion that the IAD face sheets are inadmissible hearsay, as presented in its reply brief, is conclusory and not supported by citation to relevant case law. The surresponse and surreply filed by the parties, however, primarily address the admissibility of the IAD records. In its surreply, the Board argues the face sheets are not trustworthy under

Federal Rule of Evidence 803(6)(E) and 803(8)(B) based on both the source of information and other circumstances. Specifically, the Board asserts it is very difficult to tell from a face sheet alone what misconduct was being alleged against an officer, much less what was sustained, and because the information shown is so limited and the source and circumstances largely unknown, there is no way to test the reliability or trustworthiness of the information. The Board also asserts that because the summaries include information received from a witness or complainant, that information is double hearsay.

The evidence before the Court is that under SLMPD policy, IAD records of sustained complaints are kept for five years, after which time all documents relating to the complaint are destroyed except for the front cover sheet (i.e., the face sheet), titled "Administrative Reports Transmittal Sheet." The face sheets typically list the name or classification of the first allegation against the officer(s) involved, a short one- or two paragraph summary of the complaint, the IAD's recommended finding on the allegations (i.e., "sustained," "not sustained," "exonerated," or "unfounded"), and any resulting disciplinary or corrective action. The face sheets do not show the extent of the investigation, any findings of fact, or the names or classifications of other allegations lodged against the officer. The findings that appear on the face sheets are entirely summary, and do not provide any facts or identifying information about the underlying allegation(s). Although there are variations among the documents, a typical finding is as follows:

> Recommendation: Allegation A: [officer name] - Sustained - written reprimand
> Allegation B: [officer name] - Not Sustained
> Allegation C: [officer name] - Sustained - one day suspension

As a result, it is impossible to determine with certainty from a face sheet alone exactly what conduct was being alleged, much less what charge was sustained.

The Board did not cite any case law holding that IAD reports are hearsay, and it appears most courts have concluded that at least portions of IAD reports fall within either the business records or public records exception of Federal Rule of Evidence 803.[5] Although the evidence here consists of IAD face sheets as opposed to reports, the Court concludes the face sheets are admissible as business records under Rule 803(6). These documents are official SLMPD records made and kept in the regular course of business by SLMPD personnel with knowledge of the facts, at or near the time of IAD investigations into complaints against SLMPD officers. Although the lack of detail and omissions from the IAD face sheets limit their evidentiary value as discussed *infra*, the Court finds the face sheets have sufficient indicia of trustworthiness to be considered on summary judgment on the issue of a departmental custom with respect to officer discipline, as they do indicate the general

---

[5]    See, e.g., Dobyns v. United States, 118 Fed. Cl. 289, 307 n.26 (Fed. Cl. 2014) (concluding IAD reports of Bureau of Alcohol, Tobacco and Firearms "fall within the exception to the hearsay rule for public records and reports."); Johnson v. City of Youngstown, Ohio, 2014 WL 667636, at *8 (N.D. Ohio Feb. 20, 2014) (concluding evidence in IAD investigative files was not hearsay and was admissible under either business or public record exceptions); Mapp v. Mobley, 2013 WL 5350629, at *1 (S.D. Ga. Sept. 23, 2013) (Internal Affairs investigation report falls under public records exception to general hearsay exclusion); Smith v. Dixon, 2013 WL 1651813, at *1 (M.D. Fla. Apr. 16, 2013) ("factual findings" in Internal Affairs reports are generally admissible under the public records exception to the hearsay rule, Fed. R. Evid. 803(8), although summaries of interviews contained in the reports were double hearsay that could not be admitted at trial or considered on summary judgment); Murphy v. Metropolitan Transp. Auth., 2009 WL 1044604, at *2 (S.D.N.Y. Apr. 14, 2009) (Internal Affairs file was not hearsay under Rule 803(8)); Escobar v. City of Houston, 2007 WL 2900581, at *13 (S.D. Tex. Sept. 29, 2007) (Internal Affairs investigatory file fell under Rule 803(8)(A) and (B); Internal Affairs investigation report fell under Rule 803(8)(C)); Rodriguez v. City of Houston, 250 F.Supp.2d 691, 700 n.2 (S.D. Tex. 2003) (Internal Affairs report contained "factual findings resulting from an investigation made pursuant to authority granted by law," Fed. R. Evid. 803(8), and was admissible); Owens v. City of Philadelphia, 6 F.Supp.2d 373, 377 n.3 (E.D. Pa. 1998) (Internal Affairs report, containing witness accounts that were credited in the conclusion of the investigator's report, was admissible as public records under Rule 803(8)(C); because the statements were iterated in support of the investigator's conclusion, they were "factual findings" under the Rule); Puglise v. Cobb County, Ga., 4 F.Supp.2d 1172, 1177-78 (N.D. Ga. 1998) (Internal Affairs report could be considered on summary judgment); Bosley v. Foster, 1992 WL 123823, at *3 (D. Kan. 1992) (Internal Affairs report setting forth factual findings exonerating was excepted from hearsay prohibition as a public record).

nature of complaints against officers and show the final outcome as determined by IAD. Further, to the extent the IAD face sheets contain hearsay, the Court does not consider them.[6]

The newspaper articles plaintiff offers concerning the six officers who allegedly resigned and/or were convicted for criminal conduct in 1994 and 1996 are indeed "rank hearsay." Crews, __ F.3d __, 2014 WL 6435027, at *5. Because the Court must consider the evidence in the light most favorable to the non-moving party, it will consider this evidence on summary judgment based on the reasonable likelihood plaintiff can produce at trial, from public records or otherwise, admissible evidence about these six former officers.[7]

The Eighth Circuit "has held municipalities liable under Monell when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct." Mettler, 165 F.3d at 1205. "Evidence that a police department failed to investigate previous incidents *similar to the incident in question* may support a finding that a municipal custom exists[.]" Id. (emphasis added). In Rohrbough v. Hall, 2008 WL 4722742, at *13 (E.D. Mo. Oct. 23, 2008), involving claims of police brutality, the plaintiff provided evidence of 322 complaints of physical abuse against the SLMPD in the five years prior to the 2002 incident at issue, but only one complaint was sustained. Judge Webber found the Board had "either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching" it because complaints of physical abuse only reached the Board if (1) a punishment of more than fifteen (15) days suspension was imposed by the Inspector of Police and approved by the

---

[6]   As a result of this ruling, the Court need not address whether the IAD face sheets are admissible as public records under Federal Rule of Evidence 803(8), or as admissions of a party opponent.

[7]   The undersigned presided over the 1994 federal criminal case against former SLMPD police officers Finerson, McFerren and Billups. See United States v. Finerson, et al., No. 4:94-CV-171 CAS (E.D. Mo.). See also United States v. Reginald Chandler, 4:98-CR-32 RWS (E.D. Mo.)

Chief of Police, or (2) a non-probationary officer requests a Board trial. Rohrbough, 2008 WL 4722742, at *11.

In the instant case, the evidence is that the same procedures were in place in 1991 through 1997 as were described in Rohrbough. In that case, Judge Webber held that although Mr. Rohrbough introduced evidence of numerous complaints of excessive use of force filed against officers, he had no evidence the Board had notice of the complaints. Id. at *11. In fact, as in this case, the plaintiff produced evidence the Board had *no* notice of the complaints. Id. As a result, the Board was entitled to summary judgment on Rohrbough's claim based on the existence of a municipal custom. Rohrbough, 2008 WL 4722742, at *11.

In contrast, in S. L. ex rel. Lenderman v. St. Louis Metropolitan Police Department Board of Commissioners, 2012 WL 3564030, at **9-10 (E.D. Mo. Aug. 17, 2012), which concerned an incident of unlawful arrest and false reporting from 2010, Judge Jackson found sufficient evidence existed from which a jury could find the Board had notice of and ignored a widespread pattern of unlawful arrest and false reporting. In Lenderman, the plaintiff submitted 19 IAD investigation reports from the preceding five-year period in which a charge of false reporting was sustained, and also 23 instances of false reporting during the same time period in which officers were found to have submitted false reports to conceal unlawful conduct, but no IAD investigations were conducted.[8] Id.

Here, plaintiff does not offer evidence the Board had notice of defendants Carr or Sharp's bad conduct prior to plaintiff's arrest, or that other officers had sustained or unsustained complaints concerning false testimony to prosecutors or at trial, stealing from crime scenes, or planting,

---

[8]    The additional 23 instances were based on newspaper reports.

suppressing or otherwise manufacturing evidence. Plaintiff's case rests most strongly on 32

sustained IAD complaints from a seven-year period preceding his arrest, but those complaints are

dissimilar from the claims in this case as *none of them* concerned officers testifying falsely to

prosecutors or at trial, stealing from crime scenes, or planting, suppressing or otherwise

manufacturing evidence.[9] Plaintiff does not have evidence that the SLMPD did not investigate

complaints, and instead relies on his expert's testimony that the disposition of the complaints

indicates the SLMPD did not adhere to its discipline code and was too lenient, leading officers to

conclude they could engage in illegal behavior without fear of reprisal or correction, and that the

SLMPD hid evidence of corruption by reporting complaints using general categories of "Conduct

Unbecoming" and "Violation of Departmental Policies" instead of specific categories.

The Court concludes the Board is entitled to summary judgment on plaintiff's municipal

custom claim. When the evidence is viewed in the light most favorable to plaintiff, the 32 dissimilar

sustained complaints from 1991 through 1997 and the evidence of the seven officers who were

convicted or resigned in 1994 and 1996, do not show the existence of a continuing, widespread,

persistent pattern of unconstitutional misconduct for false reporting, stealing from crime scenes,

planting evidence or otherwise manufacturing evidence, that the Board had notice of but ignored.

The Court also finds that the IAD face sheets for the 32 prior sustained complaints do not

provide a factual basis for plaintiff's expert's opinion that the SLMPD had a custom of failing to

follow its own discipline code and adequately discipline officers for misconduct. It is not possible

to determine the IAD's fact findings or the nature of the sustained charges from the face sheets, as

---

[9] The Board states that 14 of the 32 complaints concern money or property going missing from a property room or office at the SLMPD, and most of those were sustained against unknown "employees," not officers; 9 complaints concern off-duty criminal conduct (5 assaults, 2 DUIs, 2 leaving the scene of an accident); and at least 2 more involved civilian employees, not officers.

the expert admitted.[10]  As a result, Dr. Wingo's opinion that SLMPD discipline was inadequate and led to a culture of unconstitutional acts is speculation and conjecture.  See Livers v. Schenck, 700 F.3d 340, 357 (8th Cir. 2012) (rejecting as "speculation and argument" plaintiff's allegation that supervision was inadequate because sheriff did not discipline his employees for possible mishandling of evidence).  Similarly, plaintiff's theory that it is reasonable to infer the Board hid evidence of false reporting and manufacture of evidence by categorizing it as "Conduct Unbecoming an Officer" or "Violations of Department Procedures" is speculation, which cannot be a basis for municipal liability and is insufficient to withstand summary judgment.  See Livers, 700 F.3d at 357.

Plaintiff's statistical evidence of an increase in "Conduct Unbecoming" complaints filed in the period 1995 through 1997 also cannot support his municipal custom claim because he has no evidence regarding the factual background of any of the complaints, sustained or unsustained.  As a result, he cannot show the complaints had merit, were similar enough to the conduct at issue in this case to put the Board on notice, or that the investigations conducted or discipline imposed were inadequate.  In the absence of such evidence "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging" unconstitutional misconduct.  Mettler, 165 F.3d at 1205.

The fact that the Board was insulated from and only learned of complaints in limited circumstances cannot by itself be a basis for § 1983 liability.  In the Rohrbough and Lenderman cases, in addition to evidence that the Board was insulated from the complaint process, there was

---

[10]  For example, plaintiff's statement that defendant Sharp was found guilty of knowingly associating with a felon cannot be verified from the IAD face sheet for that complaint, and therefore it cannot be determined that the SLMPD did not follow its own discipline code in imposing Sharp's punishment.  Similarly, plaintiff's assertion that sustained complaints concerning "missing money" actually reflected criminal charges of stealing, for which termination was the proper punishment, cannot be verified by reference to the face sheets.

also evidence of prior, similar complaints that would have put the Board on notice of widespread misconduct had it not been so insulated. No such evidence of numerous, prior similar complaints exists here, so there is no fact issue as to notice. Further, assuming the Board had notice of the seven officers who resigned or were convicted in 1994 and 1996, plaintiff has not established that their conduct was sufficiently similar to Carr and Sharp's in this case, as the seven were accused of armed robbery of drug dealers and drug trafficking (Pl.'s Ex. 10), shaking down drug dealers on the street (Pl.'s Ex. 11), and extorting money from motorists found in possession of guns (Pl.'s Ex. 12). Although those actions fall within the general category of police corruption, there was no evidence of false testimony, stealing from a crime scene, or planting or manufacturing evidence as is present in this case. Further, plaintiff does not make a showing of a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." Andrews v. Fowler, 98 F.3d 1069, 1076-77 (8th Cir. 1996) (quoting Monell, 436 U.S. at 691). If plaintiff's theory of municipal liability were accepted based on the evidence presented, any type of violation of constitutional rights by SLMPD officers during the years leading up to 1997 could constitute a municipal custom.

Finally, even if there were a pattern of false reporting, stealing from crime scenes, or planting or otherwise manufacturing evidence, plaintiff does not have any evidence the Board had notice of it, as required to establish liability based on a municipal custom. See Mettler, 165 F.3d at 1204. As in Rohrbough, the evidence is to the contrary because plaintiff's own evidence and arguments are that the Board was insulated from citizen complaints. As a result, the Board's motion for summary judgment should be granted on plaintiff's municipal custom claims.

B.  <u>Count IV - Failure to Train and Supervise Claims</u>

In Count IV, plaintiff asserts § 1983 claims against the Board based on its failure to train and supervise Carr and Sharp.  The Board moves for summary judgment arguing there is no evidence to support its liability based on either a failure to train or a failure to supervise.

*i.  Failure to Train*

The Supreme Court has held "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."  City of Canton, 489 U.S. at 387.  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Id. at 388.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).  To establish a failure to train claim, a plaintiff must show that the defendant had notice its procedures were inadequate and likely to result in a violation of constitutional rights.  See City of Canton, 489 U.S. at 396 (O'Connor, J., concurring).  A failure to train claim may also arise from a pattern of constitutional violations that put the municipality on notice its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens.  Id. at 397 (O'Connor, J., concurring); see also Thelma D. ex rel. Delores A. v. Board of Educ. of City of St. Louis, 934 F.2d 929, 934-35 (8th Cir. 1991).

In support of its motion for summary judgment, the Board submits evidence that from 1980 until 1995,[11] the SLMPD Police Academy training was four months long and contained blocks of instruction in areas including constitutional law, criminal investigations, patrol, traffic, juveniles,

_____

[11]    Defendant Carr joined the SLMPD in 1986, defendant Sharp in 1989.

first aid, physical fitness, Special Orders and the Police Manual, and report writing. The constitutional law block included instruction on confidential informants, narcotics, how to apply for and execute search warrants, and courtroom testimony. Since at least 1980, part of the Police Academy training has involved active Narcotics officers and officers with experience in narcotics investigations speaking to Academy recruits regarding that type of investigation. After graduation from the Academy, SLMPD officers are required to attend annual training on a variety of topics related to police work, and acknowledge receipt of changes to policy and Special Orders.

The Board also submits evidence that defendant Carr attended training every year from his Academy graduation until his resignation from the SLMPD. Carr's training included Courtroom Procedures (11/15/93), Courtroom Testimony (11/23/2004), Gangs & Drugs (7/14/1992), Ethics Training (4/5/1995), Search Warrant Preparation (11/08/1996), Search Warrant/Raid Training (8/29/1995), Surveillance (4/29/1997) and Racial Profiling (4/2/2002, 2/26/2003, 11/23/2004, 12/14/2005, 11/17/2006, 12/06/2007, 4/15/2008). Defendant Sharp also attended training every year from his Academy graduation until his resignation. Sharp's training included Cultural Diversity (2/20/1992), Gangs and Drugs (7/14/1992), Ethics Training (4/05/1995), Search Warrant/Raid Training (8/29/1995), Search Warrant Preparation (11/08/1996), Surveillance Course (4/29/1997), and Racial Profiling (5/22/2002, 10/20/2003, 10/02/2006, 12/14/2007). The Board also submits the lesson plans from its constitutional law and criminal investigation training with its reply memorandum.

In order for his failure to train claims to survive summary judgment, plaintiff must provide evidence the Board was on notice its training procedures "were inadequate and likely to result in a violation of constitutional rights." Thelma D., 934 F.2d at 934. As stated above, there are two ways plaintiff may prove notice. "First, notice may be implied where failure to train officers or

23

employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." Id.  Second, "a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens." Id. at 935.

Plaintiff argues the SLMPD training procedures were inadequate because there was no indication of ongoing ethics training in the personnel files of the officers, even though Carr and Sharp had prior serious allegations of misconduct based on unsustained complaints filed in May 1995 and August 1997.  Plaintiff also argues that the Board has failed to demonstrate the actual content of the training Carr and Sharp received, but the Court notes plaintiff did not develop this argument further or offer any other evidence in his surresponse after the Board submitted constitutional law and criminal investigation lesson plans with its reply.

The Court concludes there is no evidentiary basis for determining that the training offered by the SLMPD was constitutionally deficient or evidenced deliberate indifference to the rights of citizens.  The evidence indicates that Carr and Sharp received significant initial Police Academy training and yearly ongoing training.  In light of the regular law enforcement duties of a police officer, plaintiff cannot establish that there was a patently obvious need for additional ethics training to instruct Carr and Sharp not to offer false testimony or prepare false reports, steal property from a crime scene, plant evidence or otherwise manufacture evidence.  Compare Livers, 700 F.3d at 356 (no "patently obvious need" existed to train employees whose job was to "identify, document, collect, and preserve evidence from crime scenes" not to fabricate evidence); Andrews, 98 F.3d at 1076-77 (where officer raped and sexually assaulted women, two weeks of on-the-job training with another officer and attendance at the police academy within one year of employment was constitutionally adequate training and there was no "patently obvious need . . . to specifically train

officers not to rape young women."); <u>Williams-El v. Johnson</u>, 872 F.2d 224, 230 (8th Cir. 1989) (finding training was adequate against a charge of excessive force and denial of medical care where the city provided on-the-job training and required attendance at the police academy).

Plaintiff also does not present evidence sufficient to establish liability based on a pattern of constitutional violations putting the Board on notice that its officers' responses to a "regularly recurring situation are insufficient to protect the constitutional rights of its citizens." <u>Thelma D.</u>, 934 F.2d at 935. As discussed above with respect to plaintiff's municipal custom claim, neither Carr and Sharp's disciplinary history nor that of the SLMPD police force as a whole demonstrates a pattern of testifying falsely or preparing false reports, stealing property from a crime scene, or planting or otherwise manufacturing evidence, that existed prior to the time of plaintiff's arrest. Finally, again as discussed with respect to plaintiff's custom claim, plaintiff has not introduced evidence that the Board had notice of the citizen complaints filed prior to plaintiff's arrest, but instead presented evidence that the Board did not have such notice. For these reasons, the Board is entitled to summary judgment on plaintiff's failure to train claims.

> ### ii. Failure to Supervise

"Under § 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.' <u>Robinette v. Jones</u>, 476 F.3d 585, 591 (8th Cir. 2007) (citing <u>Liebe v. Norton</u>, 157 F.3d 574, 579 (8th Cir. 1998)). Neither claim can succeed without evidence the municipality '[r]eceived notice of a pattern of unconstitutional acts committed by [its employees].' <u>Parrish v. Ball</u>, 594 F.3d 993, 1002 (8th Cir. 2010)." <u>Atkinson v. City of Mountain View, Mo.</u>, 709 F.3d 1201, 1216-17 (8th Cir. 2013). A failure to supervise claim may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts. <u>Liebe</u>, 157 F.3d at 579.

The Board moves for summary judgment on plaintiff's failure to supervise claim, arguing the evidence does not show a pattern of misconduct on the part of Carr and Sharp or other SLMPD officers as a whole prior to plaintiff's arrest sufficient to support a failure to supervise claim. The Board asserts that in the absence of such a pattern, it could not have been on notice or have been deliberately indifferent to the rights of persons with whom SLMPD officers came into contact.

Plaintiff responds that the Board failed to adequately supervise the SLMPD by having an insulating barrier that prevents notice of complaints from being provided to it, as complaints against officers only come to the Board's attention if (1) a punishment of more than fifteen (15) days suspension was imposed by the Inspector of Polices and approved by the Chief of Police, or (2) a non-probationary officer requests a Board trial. Plaintiff quotes Judge Webber's statement that the Board "has either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching the Commissioner Defendants. This is tantamount to turning 'a blind eye' which can be the basis for supervisory liability under 42 U.S.C. §1983." Rohrbough, 2008 WL 4722742, at *11.

Plaintiff argues that this "insulating barrier" created a situation in the SLMPD "where a culture of illegality and mendacity was allowed to thrive; a culture in which stealing by officers was overlooked and ignored, in which the Department's own disciplinary code was ignored, and in which charges relating to false reporting and corrupt practices were down-played and white-washed." Pl.'s Opp. at 6. In support of this argument, plaintiff relies on the same evidence he offers in support of his municipal custom claims, specifically the 32 sustained complaints from the seven years prior to plaintiff's arrest, the seven officers who resigned or were convicted in 1994 and 1996, his expert's opinion testimony concerning the inadequacy of discipline, the SLMPD's failure to adhere to its disciplinary code and the resulting culture of criminality in the SLMPD, and

the "cover up" of complaints relating to corruption by failing to identify and report them in the appropriate categories.

For the same reasons discussed above with respect to plaintiff's municipal custom claim, this evidence is insufficient to show that a genuine issue of material fact exists with respect to plaintiff's failure to supervise claim. As previously stated, unlike Rohrbough, in which 322 citizen complaints of physical abuse were filed but only one was sustained in the five years preceding Rohrbough's arrest, and unlike S.L. ex rel. Lenderman, in which 19 sustained complaints of false reporting and 23 additional instances of false reporting took place in the five years prior to the plaintiff's injury, here there were no prior sustained complaints of similar misconduct, i.e., false reporting, false testimony, stealing from crime scenes, planting evidence or otherwise manufacturing evidence. As a result, plaintiff cannot establish an issue of fact as to whether the Board turned a "blind eye" to complaints that would have given it notice of similar officer misconduct. The Board's motion for summary judgment should be granted on plaintiff's failure to supervise claim.

**IV. Conclusion**

For the foregoing reasons, the Court concludes that the Board's motion for summary judgment should be granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Slay, Battle-Turner, Gray, Lee and Irwin's Motion for Summary Judgment is **GRANTED**. [Doc. 200]

An appropriate partial judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  2nd  day of December, 2014.